## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNNY DUNCAN**<br>        **Plaintiff** | **CIVIL ACTION NO. 15-5486** |
| **VERSUS** | **SECTION: "B"** |
| **STATE OF LOUISIANA, LOUISIANA SECRETARY OF STATE OFFICE, SECRETARY OF STATE TOM SCHEDLER, TANGIPAHOA PARISH COUNSEL,** | **JUDGE: IVAN L.R. LEMELLE** |
| **TANGIPAHOA PARISH CLERK OF COURT OFFICE, CLERK JULIAN DUFRECHE, TANGIPAHOA PARISH REGISTRAR OF VOTERS OFFICE, AND** | **MAG.: SALLY SHUSHAN** |
| **TANGIPAHOA PARISH REGISTRAR OF VOTERS JOHN RUSSELL**<br>        **Defendants** | **TRIAL BY JURY DEMANDED** |

### MEMORANDUM IN SUPPORT OF
### RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
### UPON WHICH RELIEF CAN BE GRANTED, RULE 12(f) MOTION TO STRIKE AND
### RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**MAY IT PLEASE THE COURT:**

### FACTS ALLEGED

Plaintiff, Johnny Duncan ("Duncan"), alleges that he is a black disabled military veteran who presented a black female polling worker two forms of identification when he went to vote in the Louisiana primary election on October 24, 2015 in Tangipahoa Parish. (Rec. Doc. 1, ¶ 14, 16 & 17). Duncan alleges that one of the identifications he presented to the polling worker was a picture identification. (Rec. Doc. 1, ¶ 16 & 17). Duncan claims that his picture identification was rejected and he was denied the right to vote by the polling worker. (Rec. Doc. 1, ¶ 19). The polling worker is alleged to have been an employee of the Tangipahoa Clerk of Court, but plaintiff does not identify the polling worker. (Rec. Doc. 1, ¶19).

Duncan's Complaint is replete with conclusory allegations and legal conclusions for which insufficient factual support is offered to support claims against the Tangipahoa Parish Clerk of Court Office ("Tangipahoa Clerk of Court") and Julian Dufreche, individually, and in his official capacity as Clerk of Court of Tangipahoa Parish ("Dufreche").   For example, Duncan alleges that Dufreche rejected Duncan's picture identification, but there are no facts alleged to support that allegation. Duncan alleges that it was an unidentified polling worker who rejected the identification he presented. Yet, Duncan then makes the conclusory allegation that Dufreche denied him the right to vote.   Duncan does not allege that Dufreche was even at the polling location on October 24, 2015, much less that Dufreche took any steps on October 24, 2015 to reject Duncan's identification.   Duncan does not allege any interaction between himself and Dufreche on October 24, 2015 Additionally, Duncan alleges that the request made to him for picture identification resulted from the Tangipahoa Clerk of Court and Dufreche failing to effectively train employees on voter picture identification requirements.  (Rec. Doc. 1, ¶ 24).  Duncan does not identify any facts to support the conclusory allegation of ineffective training by the Tangipahoa Clerk of Court and Dufreche. Duncan does not allege what training should have been provided, how training that was provided was deficient or how any inefficient training led to what he claims happened on October 24, 2015.

Duncan alleges the existence of a conspiracy amongst the various defendants, including the Tangipahoa Clerk of Court and Dufreche, yet Duncan fails to provide any specific facts in support of collusion or concerted action on the part of the defendants. (Rec. Doc. 1, ¶ 1).  See *Tang v. State of R.I. Department of Elderly Affairs,* 904 F.Supp. 55 (D. Rhode Island 1995) (plaintiff claims under 42 U.S.C. §1985 dismissed because of failure to provide

any specific facts in support of collusion or concerted action on the part of defendants). Duncan asserts 42 U.S.C. § 1983 claims arising out of the alleged deprivation of his right to vote, but he does not allege that he was deprived of that right because of his race, or color.

## PLAINTIFF'S CLAIM FOR RELIEF

Duncan prays that the court order i) that one of the eight defendants – plaintiff does not say which one – be ordered to provide every qualified voter in Louisiana with a pictured voter registration card, ii) that the State of Louisiana include voter registration on all forms of identification issued by the State, iii) that Tangipahoa Parish appropriate funds to the Tangipahoa Registrar of Voters to install equipment capable of making voter id cards, and iv) that all eight defendants (State, Secretary of State Office, Secretary of State Tom Schedler, Tangipahoa Parish Council, Tangipahoa Clerk of Court, Dufreche, Tangipahoa Registrar of Voters Office and  Tangipahoa Registrar of Voters, John Russell) verify physically the residency and address of every citizen issued a new picture identification card.  (Rec. Doc. 1, ¶27 (1), (2), (3), & (4)).  Alternatively, Duncan prays for over a billion dollars for a variety of compensatory and punitive damages.  (Rec. Doc. 1, ¶27 (5)). Duncan does not state a claim for an order commanding the Tangipahoa Clerk of Court or Dufreche to do things that they have no legal authority or responsibility to do (i.e. providing voters with voter registration cards, putting voter registration information on all forms of id issued by the State, appropriating funds to be used by the Tangipahoa Registrar of Voters and verifying the residency and address of every person to whom voter registration cards are issued.). Duncan also fails to state a claim for damages pursuant to 42 U.S.C. §1983.

## LAW ON 12(B)(6) MOTION TO DISMISS

Under Rule 12(b)(6), a claim must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. *McConathy v. Dr.Pepper/Seven Up Corp.,* 131 F.3d 558, 561 (5th Cir. 1998). To survive a Rule 12(b)(6) motion, the plaintiff must plead sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint states "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". *Iqbal,* 556 U.S. at 678.  The plaintiff must, therefore, assert more than just "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" for entitlement to relief. *Twombly*, 550 U.S. at 555.

In considering whether the complaint states a claim under Rule 12(b)(6), the Court must accept all well-pleaded facts and inferences from those facts as true. *American Waster & Pollution Control v. Browing-Ferris, Inc.* 949 F.2d 1384, 1386 (5th Cir 1991). However, conclusory allegations and unwarranted deductions of fact are not accepted as true. *Kaiser Aluminum & Chemical Sales v. Avondale Shipyard* 677 F.2d 1045, 1050 (5th Cir 1982), citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir 1974). Similarly, the court should not accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. 544, 555 (2007).

## VOTER ID LAW IN LOUISIANA (LSA-R.S. 18:562)

In 1997, the Louisiana legislature amended and reenacted LSA-R.S. 18:562 and LSA-R.S. 40:1321(c) to require an applicant to vote to identify himself by presenting to the polling commissioners a i) Louisiana driver's license, ii) a Louisiana special identification

card issued pursuant to R.S. 40:1321, or iii) other generally recognized picture identification card, prior to voting. *La. Atty Gen Op.* No 97-0458.  If the applicant does not have such picture identification, he shall sign an affidavit and provide further identification requested by the commissioners. *Id*. The 1997 legislative act was submitted by the Louisiana Attorney General to the United States Department of Justice for review under the 1965 Voting Rights Act. *Id.*  The Act was cleared by the USDOJ in September 1997 and became binding law and legally enforceable at that time. *Id.*

In Louisiana, the chief election officer of the State is the Secretary of State. LSA-R.S.18:421. The chief election officer of each parish is the clerk of court for that parish. LSA-R.S. 18:422.  However, it is the Parish Board of Election Supervisors which is charged with responsibility for supervising the preparation for and the conduct of all elections held in the Parish. LSA-R.S. 18:423. The Parish Board of Election Supervisors carries out its responsibility by manning the polling locations on election day with polling commissioners. It is the commissioners who shall conduct primary and general elections at each polling place, enforce the election laws, and maintain order at the polling place during the election and the counting and tabulation of votes. LSA-R.S. 18:425.

The polling commissioners are not employees of the local clerk of court. These commissioners are not paid by the clerk of court, nor are they supervised by the clerk of court. The clerk of court's responsibility with regard to polling commissioners is to conduct a general course of instruction for commissioners. LSA-R.S. 18:431.  In conducting the course of instruction, the clerk of court is to provide commissioners with a copy of an informational pamphlet provided by the Secretary of State, instruct them in the use of voting machines and instruct them that is it their duty to offer any voter who does not have

picture identification as required by LSA-R.S. 18:562 an affidavit to sign to that effect. LSA-R.S. 18:431. The Commissioners are required to achieve a satisfactory score on a test issued by the Secretary of State. LSA-R.S. 18:431. If a person attends the course of instruction for commissioners and achieves a satisfactory score on the test issued by the Secretary of State, the clerk is required to issue that person a certificate of instruction. LSA-R.S. 18:431. After conducting the course of instruction, the Clerk of Court files a report with the Parish Board of Election Supervisors to identify the individuals who attended the course. LSA-R.S. 18:431. The Parish Board of Election Supervisors then prepares a list of commissioners available to serve at upcoming elections.

Duncan does not allege that Dufreche failed to comply with the foregoing obligations. Even if there were sufficient facts alleged in that regard, the allegations would raise exclusively state law issues for which this court does not have subject matter jurisdiction.

## 42 U.S.C. §1983 CLAIMS SHOULD BE DISMISSED

Section 1983 confers no substantive rights, but merely provides a remedy for the violation [by a person acting under color of state law,] of rights secured under the Constitution and laws of the United States." *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir.2008) quoting *Kirchberg v. Feenstra*, 708 F.2d 991, 1000 (5th Cir.1983) (emphasis in original). Therefore, an underlying constitutional or statutory violation is a predicate to any theory of liability under § 1983. *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir.1989). The plaintiff must establish in a § 1983 action that there has been: (1) a violation of rights secured by the Constitution or laws of the United States, (2) that was committed by a person acting under color of state

law. *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d at 260; *Bass v. Parkwood Hospital,* 180 F.3d 234, 241 (5th Cir. 1999); *Tyson v. Reed,* 2010 W.L. 360362 (E.D. La. 2010).

A municipality or other local government may be liable under §1983 if the governmental body itself subjects a person to a deprivation of rights or "causes a person to be subjected to such deprivation. *Connick v. Thompson,* 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). But, under §1983, local governments are responsible only for their own illegal acts. *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L.Ed.2d 452 (1986). They are not vicariously liable under §1983 for their employee's acts. *Connick, supra* at 1359.

To the extent that plaintiff asserts a vicarious liability claims against the Tangipahoa Clerk of Court or Dufreche for the alleged acts of the polling commissioner, jurisprudence clearly indicates that plaintiff cannot assert such a vicarious liability claim under §1983. *Hardesty v. Waterworks District No. 4 of Ward Four* 954 F. Supp 461 (W.D. La. 2013). Accordingly, all vicarious liability claims asserted against the Tangipahoa Clerk of Court and Dufreche should be dismissed.

In order to hold a local government entity liable under § 1983 for the misconduct of one of its employees, a plaintiff must allege that an official policy or custom of the entity was a cause in fact of the deprivation of rights inflicted. *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). To satisfy the cause and fact requirement, a plaintiff must allege that the custom or policy served as moving force behind the constitutional violation at issue or that his injuries resulted from the execution of an official policy or custom. *Spiller, supra* at 167. The description of a policy or custom and its

relationship to the underlying constitutional violation, cannot be conclusory; it must contain specific facts. *Spiller, supra.*

A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity. *Colle v. Brazos County, TX*, 981 F.2d 237, 245 (5th Cir. 1993); *McCloud v. Craig, Civ. Act.* No. 09-3287, 2009 W.L. 2515609 at *6 (E.D. La. 08/17/2009). Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. See e.g. *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *McCloud*, 2009 W.L. 2515609 at *6.

Duncan does not allege that he suffered a constitutional violation resulting from an identified official policy or custom of the Tangipahoa Clerk of Court. Accordingly, no official capacity claim against either the Tangipahoa Clerk of Court or Dufreche has been properly stated.

Duncan asserts §1983 claims against Dufreche, individually, but he does not allege any conduct on the part of Dufreche to support individual liability. Plaintiffs suing government officials in their individual capacities . . . must allege specific conduct giving rise to constitutional violations. *Tyson v. Reed,* 2010 W.L. 360362 (E.D. La. 2010). This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the Constitutional claims. *Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir. 2002).

In order to assert a valid claim against an official in his individual capacity, "[a] § 1983 claimant must 'establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the

constitutional deprivation.' " *Jones v. Lowndes County,* Miss., 678 F.3d at 349 quoting *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). Personal involvement is an essential element of a civil rights cause of action. *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011), quoting *Gates v. Texas Department of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). There is no allegation in the Complaint that Dufreche personally participated in the event at issue in this litigation. There is also no allegation that Dufreche personally implemented an unconstitutional policy that resulted in constitutional injury to plaintiff. The fact that Dufreche holds an elected supervisory position is not a basis to hold him liable in a federal civil rights action under any theory of strict liability or vicarious liability. *Reed, supra* at *5; *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir. 1987); *Oliver, supra* at 742; *Harris v. Greer,* 750 F.2d 617, 618 (7th Cir. 1984).

Even if there was personal involvement by Dufreche, to establish supervisor liability for constitutional violations committed by subordinate employees, Duncan would have to show that Dufreche acted or failed to act with deliberate indifference to the violation of Duncan's constitutional rights committed by one of Dufreche's subordinates. *Porter v. Epps*, 659 F.3d at 446; *Gates v. Texas*, 537 F.3d at 435. Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Porter v. Epps*, 659 F.3d at 447, quoting *Connick v. Thompson*, supra at 1360, 179 L.Ed.2d 417 (2011). There are no such allegations in Duncan's Complaint.

Duncan makes no allegation that Dufreche personally took any action with respect to him.  Duncan does not allege that Dufreche was present at the polling location at the time of the alleged incident. There is no allegation that Dufreche was personally involved in the incident. There is no allegation that Dufreche asked Duncan for two forms of picture identification, or that Dufreche personally rejected the identification that Duncan allegedly provided.  Duncan does not allege that Dufreche turned him away from the polling location or that Dufreche had knowledge that Duncan was even at the polling location at the time of the alleged incident.   The Complaint, thus, fails to state a claim against Dufreche, individually.

### SPECIFIC FEDERAL STATUTES AND CONSITUTIONAL PROVISIONS RELIED UPON BY PLAINTIFF PROVIDE NO BASIS FOR RELIEF IN THIS CASE

1. **18 U.S.C. § 96**

A review of the United States Code reveals that there is no law referred to as 18 U.S.C. § 96. Plaintiff can obviously not state a claim for relief and damages under a non-existent statute.

2. **42 U.S.C. § 207(a)**

A review of 42 U.S.C. §207(a) reveals that it addresses the grades of certain commissioned officers such as the United States Surgeon General, Deputy Surgeon General, the Chief Medical Officer of the United States Coast Guard and other similarly situated officers. It obviously has nothing to do with the allegations set forth in the Complaint. Plaintiff's Complaint does not allege facts that are remotely related to 42 U.S.C. § 207(a) and there is no basis in the Complaint for a claim arising under that statute.

3. **42 U.S.C § 407(a)**

This statute is found in 42 U.S.C.A. Ch. 7, Subchapter II entitled *Federal Old Age, Survivors and Disability Insurance Benefits.* 42 U.S.C. § 407 ,entitled "Assignment of Benefits" pertains to the prohibition against assignment of benefits under the Federal Old Age, Survivors and Disability Insurance Benefits law. It obviously has nothing to do with the allegations set forth in plaintiff's Complaint.  Plaintiff's Complaint does not allege facts that are remotely related to 42 U.S.C. § 407 and there is no basis in the Complaint for a claim arising under that statute. Accordingly, to the extent plaintiff's Complaint seeks relief pursuant to 42 U.S.C. § 407, it should be dismissed for failure to state a claim upon which relief can be granted.

4. **42 U.S.C. § 1915**

A review of the United States Code Annotated reveals that there is no statute designated as 42 U.S.C. § 1915. Obviously, there can be no claim for relief under a non-existent statute.

5. **42 U.S.C. § 1981**

This statute provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

In order to prevail on an action brought pursuant to section 1981, a plaintiff must allege and prove discrimination based upon race. *McDonald v. Santa Fe Trial Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed. 493 (1976); *Pollard v. City of Hartford,* 539 F.Supp.

1156, 1164-65 (D. Conn. 1982).  Duncan has not asserted in his Complaint that he was the victim of racial discrimination by any of the defendants, much less by the Tangipahoa Clerk of Court or Dufreche, who had nothing to do with the October 24, 2015 event described by Duncan.   Duncan alleges that he was improperly asked for two forms of picture identification by an unidentified black female polling commissioner. There is no allegation that Duncan was asked for the identification by a black female polling worker because he was black.  He has failed to allege that he was treated any differently by the polling worker from similarly situated persons of other races. The court should not infer allegations of racial discrimination by reading between the lines of the Complaint. As one district court aptly stated, such an inference would run contrary to the rule that requires allegations of facts showing the deprivation of civil rights. *Holt v. Continental Group Inc.,* 631 F. Supp. 653 (D. Conn 1985); *Fine v. City of New York,* 529 F.2d 70, 73 (2d Cir. 1975). It is no more appropriate to infer that plaintiff was deprived of the right to vote because he was black than it would be to infer that he was deprived of the right to vote because he was disabled, or because he was a military veteran or because he was male.

Section 1981 affords a federal remedy against intentional racial discrimination in making and enforcing contracts and in securing equal benefit of all laws and proceedings. It can only be violated by purposeful discrimination. *Blari v. Philadelphia Housing Authority,* 609 F. Supp. 276 (E.D. Penn. 1985).  Duncan has not alleged facts establishing that the Tangipahoa Clerk of Court or Dufreche purposefully discriminated against Duncan because of his race.

Even if the Complaint is liberally construed to allege that Duncan was deprived of his right to vote because of his race, that alleged deprivation resulted from the alleged acts

of an unidentified poll worker. Even if the polling worker was an employee of the Tangipahoa Clerk of Court – which she was not – neither the Clerk's Office, nor Dufreche, are vicariously liable for a §1983 claim arising out of that conduct.

6. **42 U.S.C. § 1985 – Conspiracy to Interfere with Civil Rights**

To prove existence of a civil rights conspiracy to deprive persons of rights or privileges, plaintiff must prove i) existence of conspiracy, ii) for purpose of depriving plaintiff either directly or indirectly, of equal protection of the laws, or of equal privileges and immunities under the laws, iii) act in furtherance of conspiracy and iv) injury in his person or property or depravation of any right of a citizen of the United States.  *Night v. City of New York,* S.D.N.Y. 303 F.Supp. 2d 485 (S.D.N.Y. 2004 affirmed 147 Fed. App'x. 221, 2005 W.L. 2759787.  The conspiracy must be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind conspirator's actions.  To state a civil rights conspiracy claim, a plaintiff must allege facts establishing each of the above elements.  *Suttles v. U.S. Postal Service,* S.D. Texas 1996, 927 F.Supp. 990.

A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is agreement between parties to inflict a wrong against, or injury upon another, and an overt act that results in that damage.  *Graves v. U.S.,* 961 F.Supp. 314 (D.D.C. 1997), reconsideration denied 967 F.Supp. 572, appeal dismissed 1998 W.L. 202177, rehearing denied.  The allegations of the conspiracy element in a § 1985 action, must be supported by material facts, not merely conclusory statements.  *Tang v. State of R.I. Dept. of Elderly Affairs,* 904 F.Supp. 55 (D.R.I. 1995).  As noted by one court, a plaintiff's single allegation that the defendants acted in concert to deprive plaintiff of his civil rights is too conclusory

to meet the requirement that a complaint alleged facts indicating the deprivation. *Holt v. Continental Group,* 631 F.Supp. 653 (U.S.D.C. Conn. 1985).

Numerous courts have granted motions to dismiss for failure to state a claim on the grounds that the plaintiff's civil rights claims consisted of bald conclusory statements devoid of factual basis. *Arsenaux, V. Roberts et al,* 726 F.2d 1022 (5th Cir. 1982); *McClure v. Espara* 556 F. Supp. 569, 571 (E.D. Mo. 1983), aff'd 732 F.2d 162 (8th Cir. 1984); *Dubray v. Rosebud Housing Authority*, 565 F. Supp. 462, 465 (D.S.D. 1983); *Cole v. Gray* 638 F.2d 804, 811 (5th Cir) *cert denied* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed. 2d 120 (1981).

In *Brown v. Southeastern Pennsylvania Transportation Authority*, 519 F.Supp 864, 866 (E.D. pa. 1981), the Court granted defendant's motion to dismiss for failure to state a cause of action under §1985 where the complaint alleged no specific conduct indicative of a conspiracy, but, instead, made only a conclusory statement that a private and public entity conspired to deprive him of his due process rights.

Duncan's Complaint includes a conclusory allegation that one or more of the eight defendants conspired to deny plaintiff the right to vote; however, the Complaint is devoid of any specifics regarding exactly what acts any defendant engaged in as part of the conspiracy. Plaintiff alleges only that named and unnamed defendants conspired with, between and among themselves. (Rec. Doc. 1, ¶ 1). But the Complaint offers no specifics regarding which parties agreed among themselves, when such an agreement was reached, the terms of the agreement, the reason for the agreement or any other facts upon which a claim for relief has been stated for conspiracy to deprive plaintiff of his civil rights.

7. **42 U.S.C. § 1986 – Action for Neglect to Prevent**

A cause of action under 42 U.S.C. § 1986, which provides action for neglect to prevent conspiracy to interfere with civil rights, fails absent a valid claim for relief under 42 U.S.C. § 1985. 42 U.S.C. §1986 protects against conspiracies to interfere with civil rights. As noted above, plaintiff's Complaint fails to state a valid claim for relief under 42 U.S.C. § 1985. As such, the Complaint likewise fails to state a cause of action under 42 U.S.C. § 1986. *Trerice v. Pedersen,* 769 F.2d 1398 (9th Cir. 1985). Since plaintiff's allegations are too generalized and conclusory to state a claim for conspiracy on which relief can be granted, they are likewise insufficient to state a claim for neglect to prevent the conspiracy. *Risley v. Hawk,* 918 F.Supp. 18 (D.D.C. 1996); *McIntosh v. Arkansas Republican Party – Frank White Election Committee,* 766 F.2d 337 (8th Cir. 1985) (black political activist claims under 42 U.S.C. § 1986 regarding neglecting to prevent conspiracy to interfere with civil rights, was properly dismissed where he failed to state a claim under 42 U.S.C. § 1985).

8. **42 U.S.C. §1988**

This statute, which includes an attorney fee provision, does not entitle plaintiff to relief in this instance in which plaintiff has not otherwise validly stated claims for deprivation of his civil rights.

9. **15th AMENDMENT OF THE CONSTIUTION AND VOTING RIGHTS ACT OF 1965 (52 U.S.C §10101)**

The Fifteenth Amendment of the United States Constitution provides:

> The right of citizens of the United States to vote shall not be denied or abridged by the Unites States or by any State on account of race, color, or previous condition or servitude.

The Voting Rights Act of 1965 protects the right to vote guaranteed by the Fifteenth Amendment of the United States Constitution. Section 2 of the Voting Rights Act simply states that:

(a) No voting qualification or prerequisites to voting or standard practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the Unites States to vote on account of race or color. . .

The Voting Rights Act prohibits any practice or procedure which, either by design or effect, operates to deny or impair the right to vote in any election, federal or state, solely because of an otherwise qualified elector's race, color or previous condition of servitude. *Gremillion v. Rinaudo* 325 F.Supp 375 (W.D. La 1971).  The focus of the Voting Rights Act is not alleged garden variety election irregularities

The purpose of the Voting Rights Act was to enforce the Fourteenth and Fifteenth Amendments of the United States Constitution.  An examination of the language of the Voting Rights Act reveals that Congress used the same language in the Voting Rights Act as that which appears in the Fifteenth Amendment (i.e. securing to all citizens the right to vote without distinction of race, color, or previous condition of servitude).  *Gremillion*, *supra* at 378. The voting rights statutes and the Fourteenth and Fifteenth Amendments to the United States Constitution are directed against discrimination.  *Gremillion*, *supra* at 378. Federal courts have protected voters from an actual or potential denial or abridgement of their right to vote only where the basis for the infringement was racial discrimination. *Gremillion*, *supra* at 378. Alleged ministerial errors and omissions on the part of a local official charged with the conduct of an election is simply not covered by the Voting Rights Act.  *Gremillion*, *supra* at 378.

Duncan's Complaint is devoid of factual allegations that he was deprived of the right to vote because of his race.  There is nothing in the Complaint to suggest that any persons, otherwise qualified by law to vote, were denied that right in Tangipahoa Parish on October 24, 2015 because of their race or color. Indeed, rather than alleging that he was denied the right to vote because of his race, plaintiff alleges that he was deprived of the right because of the negligence of various entities or persons and the failure to follow Louisiana – not Federal – law regarding presentation of picture identification in order to vote. Plaintiff does not allege that he was treated differently from any other person who voted or attempted to vote in the Parish of Tangipahoa on October 24, 2015.   Duncan alleges that his identification was rejected in violation of LSA-R.S. 18:562.   Plaintiff alleges that the violation resulted from a lack of proper training of the polling commissioner who allegedly rejected plaintiff's identification. While that allegation is disputed, even if accepted as true, it does not constitute an allegation that plaintiff was deprived of the right to vote because of his race or color.

10. **14th AMENDMENT OF THE CONSTIUTION**

The Fourteenth Amendment of the Constitution provides in pertinent part as follows:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The claims under the Fourteenth Amendment should be evaluated under the due process (substantive and procedural) and equal protection clauses.  Plaintiff has failed to specify which is applicable in this instance.  Accordingly, defendants will address both.

a. Due Process

Any claim for due process violations requires a showing that the plaintiff had a property interest which was arbitrarily terminated (in violation of substative due process rights), *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir. 1993), or terminated without a hearing an opportunity to be heard (in violation of procedural due process rights).  *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 538 (1985); *Matthews v. Eldridge,* 424 U.S. 319, 333 (1976).  Absent a property interest, plaintiff cannot recover for alleged due process violations.  Plaintiff has not asserted any allegation supporting the conclusion that he had a property interest.

b. Privileges and Immunities Clause

 A claim under the Fourteenth Amendment's Privileges and Immunities Clause is to be narrowly construed.  *Deubert v. Gulf Federal Savings Bank,* 820 F.2d 754, 760 (5th Cir. 1987).  The clause protects only uniquely federal rights, such as the right to petition Congress, the right to vote in federal elections, the right to interstate travel, the right to enter federal lands, or the rights of a citizen in federal custody.  Therefore, the key inquiry is whether the privilege claimed is one that arises by virtue of national citizenship.  *Mitchell v. Beaumont Independent School Dist.,* #1:05-cv-195, 2006 W.L. 2092585 at *15-16, 2006 U.S. Dist. Lexus 55862 at *48-49 (E.D. Tx. 7/24/2006).

The right to vote for state officers is a right or privilege of state citizenship, not of national citizenship which alone is not protected by the Privileges and Immunities Clause.  Here, defendants' alleged actions have no bearing on plaintiff's national

citizenship rights, and, hence, did not deprive him of any federal privileges and immunities protected by the Privileges and Immunities Clause.

c.   Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." To make out an equal protection claim, the plaintiff must prove that similarly situated individuals were treated differently. *Bryan v. City of Madison, Miss.*, 213 F. 3d 267, 276, (5th Cir 2000). To state a claim of racial discrimination under the Equal Protection Clause, the plaintiff must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *Price v. Jefferson Cnty.*, 470 F.Supp 2d 665, 686-87 (quoting *Priester v. Lowndes Cnty.*, 354 F. 3d 414, 424 (5th Cir 2004). Duncan has made no such allegations.

11. **Qualified Immunity of Julian Dufreche, individually**

Qualified immunity protects government officials sued in their individual capacities from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *James v. Dallas Housing authority,* 526 Fed. Appx. 388, 391-392 (5th Cir. 2013) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.E. 2d 396 (1982); See also *Kentucky v. Graham,* 473 U.S. 159, 166-67, 105 S.Ct. 3099, 87 L.E. 2d 114 (1985) (holding that officials in their individual capacities may . . . be able to assert personal immunity defenses, including qualified immunity that are not available in official capacity suits.)  Here, Duncan has sued Dufreche both individually and in his official capacity.  However, Dufreche is

entitled to qualified immunity against those claims asserted against him in his individual capacity. *Procunier v. Nevarette,* 434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978). There are no allegations that Dufreche individually engaged in any conduct violative of a clearly established statutory or constitutional right of plaintiff or any other person. As stated previously in this brief, Dufreche was simply not involved in the incident complained of and did not individually do anything to deprive plaintiff of his right to vote.

**CLAIMS AGAINST THE TANGIPAHOA CLERK
OF COURT AND DUFRECHE IN HIS OFFICIAL CAPACITY
ARE REDUNDANT AND SHOULD BE STRUCK PURSUANT TO RULE 12(f)**

The Unites States Supreme court has held that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. In this case, Duncan has named the Tangipahoa Parish Clerk of Court Office and Julian Dufreche in his official capacity. The naming of both the Clerk of Court Office and Dufreche in his official capacity is duplicative and redundant. As such, the claims against Dufreche in his official capacity should be struck.

A judgment in a §1983 lawsuit against an official in his official capacity imposes liability against the entity he represents. *Broussard v. Lafayette City-Parish Consolidated Government*, 45 F. Supp 3d 553 (W.D. La 2014), citing *Deshotels v. Village of Pine Prairie,* No 11-CV-2052, 2012 WL 1712358 at *4 (W.D. La. April 13, 2012). A suit against a state official in his official capacity is treated as a suit against the state. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361 (1991). Therefore, it is well settled that a suit against a governmental official in his official capacity is simply another way of alleging liability of the office he holds. *Howell v. Town of Ball,* No. 12-951, 2012 WL 3962387 at *4 (W.D. La. Sept 4,

2012), citing *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978).  When the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant and for that reason, courts in this circuit have found it is appropriate to dismiss them. *Broussard, supra* at 571; *Castro Romero v. Becken,* 256 F.2d 349, 355 (5th Cir 2001); *Flores v. Cameron County Tex,* 92 F.2d 258, 261 (5th Cir 1996).

Federal Rule of Civil Procedure Rule 12(f) allows the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).  In this case striking of Duncan's claims against Dufreche in his official capacity are appropriate as they are redundant and duplicative of the claims against the Tangipahoa Clerk of Court.

## THE CLAIM FOR PUNITIVE DAMAGES AGAINST THE TANGIPAHOA CLERK OF COURT AND DUFRECHE IN HIS OFFICIAL CAPACITY SHOULD BE STRUCK PURSUANT TO RULE 12(f)

Here, Duncan's claims for punitive damages against the Tangipahoa Clerk of Court and Dufreche in his official capacity should be stricken from the pleadings because punitive damages are not recoverable against a governmental entity nor its officers in Section 1983 actions. The Supreme Court has held unequivocally that "[a] municipality is immune from liability for punitive damages in a § 1983 action." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981).  It has also been held that punitive damages are also not recoverable in official capacity suits.  *Shabazz v. Coughlin*, 852 F.2d 697, 700 (2nd Cir 1988); *Pride v. Does,* 997 F.2d 712, 715 (10th Cir 1993); *Hardesty, supra* at 472.

It has been stated:

. . . an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in intent is the entity.  As such, a plaintiff is barred from recovering punitive damages against an official acting in his official capacity.

*Broussard, supra* at 578, citing to *Givs v. City of Eunice*, No. 6:05-cv-0788, 2006 W.L. 1831528 at *1 (W.D. La. June 29, 2006) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L. Ed. 2d 114 (1985).

Since Duncan cannot recover such punitive damages under § 1983 against the Tangipahoa Clerk of Court or Dufreche in his official capacity, his claims for such damages should be struck.

### LAW ON SUBJECT MATTER JURISDICTION

Plaintiff alleges that jurisdiction is vested in this court under 28 U.S.C. §1331 and/or 1343(3) and (4). §1331 provides this court with jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States. §1343(3) provides jurisdiction over civil actions authorized by law to be commenced by any person to redress deprivation, under color of any State law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States  or any Act of Congress providing for equal rights of citizens. §1343(4) provides jurisdiction over actions to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

Plaintiff does not specifically allege a basis for jurisdiction over the plaintiff's state law claims. While this federal court would not typically have jurisdiction over state law claims asserted by a plaintiff, it does possess supplemental jurisdiction over such claims when they are so related to claims over which the court has original jurisdiction that they form part of the same case or controversy. 28 U.S.C. §1367.   Here, since plaintiff's

Complaint fails to properly state a claim for relief under the U.S. Constitution or any federal laws all of plaintiff's federal claims should be dismissed. Once those claims are dismissed, there will be no basis for jurisdiction over the state law claims, so those claims should be dismissed as well.

Respectfully submitted,

**HUVAL VEAZEY FELDER & RENEGAR, LLC**

_____/S/ THOMAS H. HUVAL_____
**THOMAS H. HUVAL (#21725)**
Stefini W. Salles (#25857)
532 East Boston Street
Covington, Louisiana 70433
Telephone:    (985) 809-3800
Facsimile:     (985) 809-3801
Email:          thuval@hvfr-law.com

**Attorneys for Tangipahoa Parish Clerk of the Court Office and Tangipahoa Parish Clerk of Court, Julian Dufreche**

## CERTIFICATE OF SERVICE CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was electronically filed with the Clerk of Court by using the CM/ECF system.  A Notice of this electronic filing will be sent by the Court to all counsel of record who have consented to email notification and electronic service and will be sent to Johnny Duncan, _pro se,_ via United States mail, properly addressed and stamped.  This document is available for viewing and downloading from the Court's ECF system.

Covington, Louisiana this 29th day of December, 2015.

_____/S/ Thomas H. Huval_____
THOMAS H. HUVAL