UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY DUNCAN | CIVIL ACTION NO. 15-5486 |
| Plaintiff | SECTION: "B" |
| VERSUS | JUDGE: IVAN L.R. LEMELLE |
| STATE OF LOUISIANA, LOUISIANA SECRETARY OF STATE OFFICE, SECRETARY OF STATE TOM SCHEDLER, TANGIPAHOA PARISH COUNSEL, TANGIPAHOA PARISH CLERK OF COURT OFFICE, CLERK JULIAN DUFRECHE, TANGIPAHOA PARISH REGISTRAR OF VOTERS OFFICE, AND TANGIPAHOA PARISH REGISTRAR OF VOTERS JOHN RUSSELL | MAG.: SALLY SHUSHAN TRIAL BY JURY DEMANDED |
| Defendants | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)

MAY IT PLEASE THE COURT:

Defendants, the Louisiana Secretary of State Office and Secretary of State Tom Schedler, in his official capacity (hereinafter collectively the "***Secretary of State***"), file this memorandum in support of their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) regarding the Section 1983 claims asserted against them by Plaintiff, Johnny Duncan.

### I.   FACTUAL BACKGROUND

Plaintiff, an African-American, filed a Complaint on October 27, 2015, alleging at least seventeen (17) causes of actions against the named Defendants, the State of Louisiana, Louisiana Secretary of State Office, Secretary of State Tom Schedler, Tangipahoa Parish Council, Tangipahoa Clerk of Court Office, Clerk Julian Dufreche, Tangipahoa Registrar of Voters

1

Office, and Tangipahoa Registrar of Voters John Russell. [Doc. 1]. Plaintiff seeks declaratory and injunctive relief, as well as monetary and punitive damages, in order to "redress the racial harassment and refusal to accept [Plaintiff's] government issued picture identification and demanding a second form of picture identification in order [for Plaintiff] to vote in the Louisiana October 24, 2015 Primary Election." [Doc. 1, p. 2, ¶ 1].

Specifically, Plaintiff states that on October 24, 2015, he visited his usual polling place at the Amite City Hall. [Doc. 1, p. 7, ¶ 14]. He states that he presented a "United States Government issued picture identification card," though Plaintiff does not indicate whether the card contained his signature as required pursuant to La. Rev. Stat. § 18:562, nor does he provide any details regarding the quality or condition of the identification he presented. [Doc. 1, p. 8, ¶ 16]. However, an African American female polling commissioner rejected Plaintiff's government-issued picture identification. [Doc. 1, p. 3, n.1]. Plaintiff also states that he presented a second identification in the form of a "Veterans Department identification card" to verify his identity, but he does not specify whether the card included his signature or his picture. [Doc. 1, p. 8, ¶ 17]. He also notes that he "wore a military jacket to which his name and rank were visibly affixed." [Doc. 1, p. 8, ¶ 18]. Yet, the polling employee again rejected the identification presented by Plaintiff, thus prohibiting him from voting. [Doc. 1, p. 8, ¶ 19]. Plaintiff alleges that the Louisiana Secretary of State Office was complicit in the alleged violation of Plaintiff's civil and constitutional rights because it is "responsible for promulgating and enforcing the picture identification law and other voting and election requirement [sic] for the State of Louisiana through its agents and representatives in the offices of the parish clerks of court and registrar of voters" and that it "at all times acted under the color of state law." [Doc. 1, p. 4, ¶ 6]. In addition, Plaintiff contends that Louisiana Secretary of State Tom Schedler was

complicit in the purported violation of Plaintiff's rights because he "heads the Office of Louisiana Secretary of State and is responsible for enforcing the voting requirements of the State of Louisiana, including but not limited to the use of voter picture identification that is mandated by Louisiana Revised Statutes, a task that he and/or his agents and representatives failed to perform with plaintiff in the October 24, 2015, election" and that he also "at all times acted under the color of state law." [Doc. 1, p. 4, ¶ 7].

Additionally, Plaintiff avers that the Secretary of State, through their representatives, failed to explain the picture identification requirements to the Tangipahoa Parish Clerk's Office and their employee, and that the Secretary of State, through their representatives, denied Plaintiff of his constitutional right to vote by rejecting his government-issued picture identification. [Doc. 1, p. 8, ¶ 20]. Plaintiff also accuses the Secretary of State of failing to enforce the provision of La. Rev. Stat. § 18:562 that pertains to the picture identification requirements for voting and of failing to provide Plaintiff and "other similarly situated voters of Louisiana" with an acceptable form of picture voter identification. [Doc. 1, pp. 8−9, ¶ ¶ 21−22]. Plaintiff states, "With all the resources of the Louisiana State Government at their disposal, the Defendants required the use of picture identification in order to vote, yet had provided not [sic] picture identification with the voter registration card." [Doc. 1, p. 10, ¶ 27].

Among the remedies he is seeking, Plaintiff demands that the Secretary of State "[p]rovide each qualified voter with a pictured voter registration card that can be used in all federal, state, and local election [sic]; or…be ordered to include a picture and voter registration information on any and all forms of identification issued by the State of Louisiana or though the State of Louisiana, i.e., driver's license [sic], identification cards, food stamp cards, etc." [Doc. 1, p. 11, ¶ 27(1)]. Plaintiff also demands that the Secretary of State "be made to verify

3

physically the residency and address of each and every citizen who is issued the new picture voter identification card;" or that the Defendants, including the Secretary of State, be ordered to pay Plaintiff "the total sum of one billion dollars ($1,000,000,000.00) for punitive damages, pain, suffering, mental anguish, public embarrassment and humiliation caused…by the defendants' denial of [Plaintiff's] right to vote." [Doc. 1, p. 11, ¶ 27(4−5)].  Plaintiff concludes his argument by indicating that he may be willing to negotiate the monetary amount of damages he is claiming if Defendants "act in good faith" to implement the additional remedies he is seeking. [Doc. 1, p. 11, n. 3].

In an effort to simplify and better organize Plaintiff's claims, which consist mostly of mere generalizations and conclusory allegations, the Secretary of State herein categorizes Plaintiff's claims as follows: [1]

1. **Claims brought under the Civil Rights Act**
    a. 42 U.S.C. § 1981
    b. 42 U.S.C. § 1983
        i. Fourteenth Amendment
        ii. Fifteenth Amendment
    c. 42 U.S.C. § 1985
    d. 42 U.S.C. § 1986
    e. 42 U.S.C. § 1988

2. **Claims brought under the Voting Rights Act**

---

[1] Plaintiff also notes that he is asserting claims for damages pursuant to
- 18 U.S.C. § 96, which is not a statute that has been enacted;
- 42 U.S.C. § 207(a), which pertains to the grades and ranks that are given to certain commissioned officers;
- 42 U.S.C. § 407(a), which pertains to the assignment of social security benefits; and
- 42 U.S.C. §1915, which is not a statute that has been enacted. [Doc. 1, pp. 1, 2].

    **3. State Law Claims**

        a. La. Civ. Code art. 2315

        b. La. Civ. Code art. 2317

        c. La. Rev. Stat. § 18:562

    **4. Claim for Injunctive Relief**

## II. SUMMARY OF ARGUMENT

This Court lacks jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 against Secretary of State Tom Schedler, in his official capacity, and against the Louisiana Secretary of State Office because the Secretary of State stands in the place of the State of Louisiana. Because the State has not waived its Eleventh Amendment right to sovereign immunity, Plaintiff's Section 1983 claims against Louisiana Secretary of State Tom Schedler, in his official capacity, as well as Plaintiff's claims against the Louisiana Secretary of State Office, are barred by the Eleventh Amendment, and thus, they should be dismissed in accordance with Fed. R. Civ. P. 12(b)(1).

## III. ARGUMENT

At the outset, the Secretary of State notes that in addition to filing the instant Motion to Dismiss the claims against Louisiana Secretary of State Tom Schedler, in his official capacity, and the Louisiana Secretary of State Office, the Secretary of State is simultaneously filing a Motion to Dismiss Plaintiff's remaining claims against the Secretary of State, in his individual capacity, on the grounds that, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff has failed to state a claim against Secretary Schedler upon which relief may be granted.

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of a lawsuit on the basis that the court in which the suit is filed lacks subject matter jurisdiction. In

the instant matter, Plaintiff has alleged claims against Secretary of State Tom Schedler as well as the Louisiana Secretary of State Office. The Eleventh Amendment of the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language expressly encompasses not only suits brought against a state by citizens of another state, but suits against a state by citizens of that same state. *See Hall v. Louisiana*, 974 F. Supp. 2d 978, 986−87 (M.D. La. 2013), reconsideration denied, No. CIV.A. 12-00657-BAJ, 2014 WL 1248161 (M.D. La. Mar. 25, 2014), citing *Hans v. Louisiana,* 134 U.S. 1 (1890); *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98, (1984); and *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). "A state's Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the state." *Hall*, 974 F. Supp. 2d at 987, quoting *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). In general, therefore, a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. *Hall*, 974 F. Supp. 2d at 987, citing *Lewis v. Univ. of Texas Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011); *Pennhurst State School & Hosp.*, 465 U.S. at 100. This jurisdictional bar applies regardless of the nature of the relief sought. *Id.*

In addition, the Eleventh Amendment bars a suit against a state official when "the state is a real, substantial party in interest." *Hall*, 974 F. Supp. 2d at 987, citing *Pennhurst State School & Hosp.*, 465 U.S. at 101–02 (citations omitted). Thus, the general rule is that relief sought against an officer is in fact against the sovereign if the decree would operate against the latter. *Id.* And, as when the state itself is named as the defendant, a suit against state officials that is in

6

fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief. *Hall*, 974 F. Supp. 2d at 987, citing *Pennhurst State School & Hosp.*, 465 U.S. at 101–02 (citations omitted); *Okpalobi v. Foster*, 244 F.3d 405, 412 (5th Cir. 2001) (plaintiff cannot evade Eleventh Amendment immunity by naming an individual state officer as a defendant in lieu of the state itself).

While a state may expressly waive this Eleventh Amendment sovereign immunity, the State of Louisiana has not done so. *Harris v. City of Hammond*, No. CIV.A. 07-3890, 2008 WL 4469112, at *3 (E.D. La. Sept. 30, 2008), citing *Edelman*, 415 U.S. at 673; *Welch v. State Dep't of Highways & Pub. Transp.*, 780 F.2d 1268, 1271−73 (5th Cir. 1986), aff'd sub nom., *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468 (1987). To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state ... shall be instituted in any court other than a Louisiana state court." However, Congress has abrogated the states' sovereign immunity for claims arising under the Voting Rights Act. *Hall*, 974 F. Supp. at 988, citing *Mixon v. State of Ohio*, 193 F.3d 389, 398–99 (6th Cir. 1999); *Reaves v. U.S. Dep't of Justice*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005); *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997).

On the other hand, Congress has not abrogated the states sovereign immunity for claims arising under 42 U.S.C. § 1983. *Hall*, 974 F. Supp. 2d at 988, citing *Inyo County, Cal. v. Paiute–Shoshone Indians of the Bishop Community of the Bishop Colony,* 538 U.S. 701, 709 (2003). Nevertheless, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity, thereby permitting suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute. *Hall*, 974 F. Supp. 2d at 988, citing *Okpalobi*, 244 F.3d at 411; *Ex parte Young*, 209 U.S. at 157. This exception applies when the state official: (1) has some connection with the enforcement of the

7

statute; or (2) is specifically charged with the duty to enforce the statute and is threatening to exercise that duty. *Hall*, 974 F. Supp. 2d at 988, citing *Okpalobi*, 244 F.3d at 411; *Ex parte Young,* 209 U.S. at 157 ("[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional ... such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.").

In *Ex parte Young,* the United States Supreme Court held that enforcement of an unconstitutional law is not an official act because a state cannot confer authority on its officers to violate the Constitution or federal law. *Hall*, 974 F. Supp. 2d at 988−89, citing *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); citing *Am. Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920–21 (5th Cir. 1993). The *Ex parte Young* exception "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.' " *Hall*, 974 F. Supp. 2d at 989, citing *Pennhurst State School & Hosp.*, 465 U.S. at 105. Under this exception, an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Hall*, 974 F. Supp. 2d at 989, citing *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 169–70 (5th Cir. 1985). For *Ex parte Young* to apply, the "suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Hall*, 974 F. Supp. 2d at 989, citing *Aguilar*, 160 F.3d at 1054; *Saltz v. Tennessee Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). Notably, in *Papasan*, 478 U.S. 265, the Supreme Court opined:

> [*Ex parte Young*] has been focused on cases in which a ***violation*** of federal law by a state official ***is ongoing as opposed to*** cases in which federal law

> has been violated at *__one time or over a period of time in the past__*, as well as on cases in which the relief against the state official *__directly ends the violation__* of federal law *__as opposed to__* cases in which that relief is intended *__indirectly to encourage compliance__* with federal law *__through deterrence or__* directly to meet third-party interests such as *__compensation__*. As we have noted: *__Remedies designed to end a continuing violation of federal law are necessary__* to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.
>
> Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is *__barred even when the state official is the named defendant__*. *__This is true if the relief is expressly denominated as damages. It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else.__* On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.

*Id.* at 277–78 (emphases added). The Supreme Court recently explained more succinctly that in determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Hall*, 974 F. Supp. 2d at 989, citing *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 247 (2011) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)).

In the instant matter, Plaintiff has accused the Secretary of State of violating his civil rights under Section 1983 on the grounds that the Secretary of State violated its responsibility to "promulgate[] and enforce[] the picture identification law and other voting and election requirement [sic] for the State of Louisiana through its agents and representatives in the offices of the parish clerks of court and registrar of voters." [Doc. 1, p. 4, ¶ 6]. Plaintiff also contends and that the Secretary of State "was complicit in the purported violation of Plaintiff's rights

9

because he heads the Office of Louisiana Secretary of State and is responsible for enforcing the voting requirements of the State of Louisiana, including but not limited to the use of voter picture identification that is mandated by [La. Rev. Stat. § 18:562]." [Doc. 1, p. 4, ¶ 7]. Moreover, Plaintiff alleges that the Secretary of State, through its representatives, "failed to explain the picture identification requirements to the Tangipahoa Parish Clerk's Office and its employee" and "denied Plaintiff of his constitutional right to vote by rejecting his government-issued picture identification." [Doc. 1, p. 8, ¶ 20]. Finally, Plaintiff asserts that the Secretary of State violated his rights, along with the rights of "other similarly situated voters of Louisiana," by "failing to enforce the provision of La. Rev. Stat. § 18:562, pertaining to the picture identification requirements for voting" and by "failing to provide Plaintiff with an acceptable form of picture voter identification." [Doc. 1, pp. 8−9, ¶¶ 21−22]. For the following reasons, the Ex Parte Young Doctrine does not apply in the instant matter, and thus, Plaintiff's Section 1983 claims against the Secretary of State should be dismissed with prejudice at Plaintiff's cost.

### A. The Secretary of State does not have a connection with the enforcement of La. Rev. Stat. § 18:562.

As explained by the United States Court of Appeal for the Fifth Circuit,

> *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) provides an exception to [a state entity's Eleventh Amendment immunity]: "state officers c[an] be sued in federal court despite the Eleventh Amendment ... [if] the officers have 'some connection with the enforcement of the act' in question or [are] 'specially charged with the duty to enforce the statute' and [are] threatening to exercise that duty." *Okpalobi v. Foster,* 244 F.3d 405, 414–15 (5th Cir.2001) (en banc) (quoting *Ex parte Young,* 209 U.S. at 157, 158, 28 S.Ct. 441). <u>**The required "connection" is not "merely the general duty to see that the laws of the state are implemented," but "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."**</u> *Id.* at 416.

*Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir.), cert. denied, 134 S. Ct. 2734 (2014), reh'g denied, 135 S. Ct. 28 (2014), cert. denied, 134 S. Ct. 2734 (2014), reh'g denied, 135 S. Ct. 28 (2014) (emphasis added).  Moreover,

> The connection requirement exists to prevent litigants from misusing the exception. ***There are plenty of state actors. A plaintiff must show that the defendant state actors "have the requisite 'connection' to the statutory scheme to remove the Eleventh Amendment barrier to suits brought in federal court against the State.***" *Okpalobi,* 244 F.3d at 410–11.

*K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (emphasis added).

In order for Plaintiff to demonstrate that the Secretary of State has the requisite connection with the enforcement of La. Rev. Stat. § 18:562, he must show that the Secretary of State has the particular duty to enforce that specific statute and has demonstrated a willingness to exercise that duty.  *Morris*, 739 F.3d at 746.  The statute provides, in pertinent part,

> A. Identification of voters.
>
> (1) A person who desires to vote in a primary or general election shall give his name and address ***to a commissioner***, who shall announce the applicant's name and address to the persons at the polling place.
>
> (2) Each applicant shall identify himself, in the presence and view of the bystanders, and ***present to the commissioners*** a Louisiana driver's license, a Louisiana special identification card issued pursuant to R.S. 40:1321, or other generally recognized picture identification card that contains the name and signature of the applicant. If the applicant does not have a Louisiana driver's license, a Louisiana special identification card, or other generally recognized picture identification card that contains the name and signature of the applicant, the applicant shall complete and sign an affidavit, which is supplied by the secretary of state, to that effect ***before the commissioners***, which affidavit shall include the applicant's date of birth and mother's maiden name. If the applicant is unable to read or write or is otherwise unable to complete the affidavit due to disability, the applicant may receive assistance in completing the affidavit and ***the commissioner*** shall make a notation on the affidavit. The applicant may receive the assistance of any person of his choice, ***including a commissioner***, except a candidate, ***commissioner-in-charge***, the applicant's employer or employer's agent, or the applicant's union agent. The commissioners shall place the affidavit in the envelope marked

> "Registrar of Voters" and attach the envelope to the precinct register. However, an applicant who is allowed to vote without the picture identification required by this Paragraph is subject to challenge as provided in R.S. 18:565.
>
> ***
>
> C. Handwritten signature of the applicant. If the applicant is able to sign his name, he shall sign his handwritten signature in ink in the space for his signature on the precinct register. When the applicant has submitted picture identification to the commissioners, the applicant's signature shall be compared to his signature on the picture identification. If the applicant is unable to sign his name, he shall make his mark in ink in the proper space on the precinct register.
>
> D. Procedure after identification. If satisfied that the applicant has identified himself as the voter named on the precinct register and that he is qualified to vote, ***a commissioner*** shall initial the precinct register opposite the voter's signature or mark. The voter then shall be allowed to vote. (Emphases added).

The plain language of the statute clearly indicates that it is the commissioner, ***not*** the Secretary of State, that is responsible for enforcing La. Rev. Stat. § 18:562. Indeed, La. Rev. Stat. § 18:425(C)(1) expressly states, "The ***commissioners*** shall conduct primary and general elections at each polling place, ***shall enforce the election laws***, and shall maintain order at the polling place during the election and the counting and tabulation of votes." (Emphasis added).

In addition, the Secretary of State does not participate in the selection or supervision of commissioners. La. Rev. Stat. § 18:434 indicates that the commissioners are selected by each respective parish board of election supervisors, which, pursuant to La. Rev. Stat. § 18:423(C)(1), consists of each parish's registrar of voters and clerk of court, along with the chairman of the parish executive committee of each recognized political party (or his designee) and one member appointed by the governor. Furthermore, La. Rev. State. § 425(B)(3) provides, "A person shall not serve as a commissioner, except pursuant to R.S. 18:434(D), unless ***he has attended a course of instruction for commissioners, has received a certificate of instruction during the term of***

***office of the clerk who conducted the school***, and has provided his correct party affiliation to the clerk." (Emphasis added).   Thus, the Secretary of State does not serve as a member of the parish board of election supervisors and, accordingly, plays no role in the selection or supervision of commissioners, who are responsible for enforcing La. Rev. Stat. § 18:562.  Because the Secretary of State does not have the particular duty to enforce the statute in question, the *Ex Parte Young* exception does not apply in the instant matter, and thus, Plaintiff's claims against the Secretary of State are barred due to the Secretary of State's Eleventh Amendment immunity.

### B. The Secretary of State is not specifically charged with the duty to enforce La. Rev. Stat. § 18:562 and, accordingly, is not threatening to exercise any such duty.

As explained above, the Secretary of State does not have the requisite connection to the enforcement of the statute in question.  Therefore, he is not threatening to exercise any such duty because he does not have any such duty.

### C. Plaintiff's Section 1983 claims against the Secretary of State are barred because his alleged claim for injunctive relief is tantamount to his claim for an award of damages for a past violation of federal law.

In addition, Plaintiff's claim for injunctive relief is essentially indistinguishable from his claim for an award of damages for the "pain, suffering, mental anguish, public embarrassment and humiliation caused…by the defendants' denial of [Plaintiff's] right to vote." [Doc. 1, p. 11, ¶ 27(4−5)].   The other purported injunctive measures Plaintiff is requesting do not specifically address whatever objections he has to the manner in which La. Rev. Stat. § 18:562 is being enforced.  Plaintiff requests that the Court order all the Defendants to "[p]rovide each qualified voter with a pictured voter registration card that can be used in all federal, state, and local election [sic]" or to "include a picture and voter registration information on any and all forms of identification issued by the State of Louisiana or though the State of Louisiana, i.e., driver's

license [sic], identification cards, food stamp cards, etc." [Doc. 1, p. 11, ¶ 27(1)]. However, the statute expressly provides a voter with several options from which he may choose in order to verify his identity. In his Complaint, Plaintiff has not alleged that the harm he has incurred is continuing to occur on an ongoing basis, and thus, he has set forth no facts or arguments explaining why the current perquisites implemented by La. Rev. Stat. § 18:562 are insufficient. Indeed, in his Complaint, Plaintiff represents that the alleged denial of his right to vote – an apparently isolated incident – occurred at "his usual place at the Amite City Hall, where he had voted for the last twenty (20) years." [Doc. 1, p. 7, ¶ 14]. Thus, Plaintiff's Complaint is primarily founded on **_one_** incident that allegedly cause him "pain, suffering, mental anguish, public embarrassment and humiliation" totaling the amount of one billion dollars ($1,000,000,000.00). [Doc. 1, p. 11, ¶ 27 (4−5)]. Such claims are not concerned primarily with deterring wrongful conduct and preventing future infractions but are instead focused solely on recovering monetary compensation for the purported damages Plaintiff sustained as a result of his alleged inability to vote during the October 24, 2015, election. Therefore, Plaintiff's Section 1983 claims against the Secretary of State do not fall within the ambit of the *Ex Parte Young* exception, and thus, such claims are precluded based on the Secretary of State's Eleventh Amendment immunity.

### D. The remedies Plaintiff is seeking are not designed to end a continuing violation of federal law.

As discussed hereinabove, Plaintiff is not seeking to prevent a continuing violation of his civil rights in relation to the enforcement of La. Rev. Stat. 18:562 but is instead attempting to recover one billion dollars ($1,000,000,000.00) in damages for the "pain, suffering, mental anguish, public embarrassment and humiliation" he allegedly suffered as a result of the one incident in which he claims he was not allowed to vote. [Doc. 1, p. 11, ¶ 27(4−5)]. Plaintiff does

14

not assert that he had any difficulties voting in the twenty (20) years preceding October 24, 2015, during which he apparently voted at the Amite City Hall without encountering any obstacles. Therefore, the *Ex Parte Young* doctrine does not apply in the instant matter because Plaintiff is not attempting to end a continuing violation of federal law but is instead seeking to recover for alleged damages arising out of one isolated incident. Accordingly, Plaintiff's Section 1983 claims against the Secretary of State are barred by the Eleventh Amendment.

### IV.    CONCLUSION

Secretary Tom Schedler, in his official capacity, and the Louisiana Secretary of State Office pray that their Motion to Dismiss pursuant Fed. R. Civ. P. 12(b)(1) be granted and that this Court dismiss Plaintiff's Section 1983 claims against the Secretary of State with prejudice at Plaintiff's cost.

*Signature on next page.*

SHOWS, CALI & WALSH, L.L.P.

　*/s/ Grant J. Guillot*
E. Wade Shows, La. Bar Roll No. 7637
John C. Walsh, La. Bar Roll No. 24903
Grant J. Guillot, La. Bar Roll No. 32484
Kathryn A. Dufrene, La. Bar Roll No. 35759
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, Louisiana 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-1467

*Attorneys for Defendants, Louisiana Secretary of State Office and Secretary of State Tom Schedler*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of January, 2016, a copy of the foregoing has this date been served upon all parties through their respective counsel of record by operation of the Court's electronic filing system and has been filed electronically with the Clerk of Court using the CM/ECF system. A copy of the foregoing has been mailed to the following:

Johnny Duncan
P.O. Box 723
Amite, LA 70422

　*s/ Grant J. Guillot*
GRANT J. GUILLOT