UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY DUNCAN | CIVIL ACTION NO. 15-5486 |
| **Plaintiff** | SECTION: "B" |
| **VERSUS** | JUDGE: IVAN L.R. LEMELLE |
| STATE OF LOUISIANA, LOUISIANA SECRETARY OF STATE OFFICE, SECRETARY OF STATE TOM SCHEDLER, TANGIPAHOA PARISH COUNSEL, TANGIPAHOA PARISH CLERK OF COURT OFFICE, CLERK JULIAN DUFRECHE, TANGIPAHOA PARISH REGISTRAR OF VOTERS OFFICE, AND TANGIPAHOA PARISH REGISTRAR OF VOTERS JOHN RUSSELL | MAG.: SALLY SHUSHAN TRIAL BY JURY DEMANDED |
| **Defendants** | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

MAY IT PLEASE THE COURT:

Defendants, (1) the Louisiana Secretary of State Office, (2) Secretary of State Tom Schedler, in his official capacity, and (3) Secretary of State Tom Schedler, in his individual capacity (hereinafter collectively the "***Secretary of State***"), file this memorandum in support of their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) the claims asserted against them by Plaintiff, Johnny Duncan.

## I.    FACTUAL BACKGROUND

Plaintiff, an African-American, filed a Complaint on October 27, 2015, alleging at least seventeen (17) causes of actions against the named Defendants, the State of Louisiana, Louisiana Secretary of State Office, Secretary of State Tom Schedler, Tangipahoa Parish Council,

1

Tangipahoa Clerk of Court Office, Clerk Julian Dufreche, Tangipahoa Registrar of Voters Office, and Tangipahoa Registrar of Voters John Russell. [Doc. 1].  Plaintiff seeks declaratory and injunctive relief, as well as monetary and punitive damages, in order to "redress the racial harassment and refusal to accept [Plaintiff's] government issued picture identification and demanding a second form of picture identification in order [for Plaintiff] to vote in the Louisiana October 24, 2015 Primary Election."  [Doc. 1, p. 2, ¶ 1].

Specifically, Plaintiff states that on October 24, 2015, he visited his usual polling place at the Amite City Hall.  [Doc. 1, p. 7, ¶ 14].  He states that he presented a "United States Government issued picture identification card," though Plaintiff does not indicate whether the card contained his signature as required pursuant to La. Rev. Stat. § 18:562, nor does he provide any details regarding the quality or condition of the identification he presented. [Doc. 1, p. 8, ¶ 16].  However, an African American female polling commissioner rejected Plaintiff's government-issued picture identification.  [Doc. 1, p. 3, n.1].  Plaintiff also states that he presented a second identification in the form of a "Veterans Department identification card" to verify his identity, but he does not specify whether the card included his signature or his picture. [Doc. 1, p. 8, ¶ 17].  He also notes that he "wore a military jacket to which his name and rank were visibly affixed." [Doc. 1, p. 8, ¶ 18].  Yet, the polling employee again rejected the identification presented by Plaintiff, thus prohibiting him from voting.  [Doc. 1, p. 8, ¶ 19].

Plaintiff alleges that the Louisiana Secretary of State Office was complicit in the alleged violation of Plaintiff's civil and constitutional rights because it is "responsible for promulgating and enforcing the picture identification law and other voting and election requirement [sic] for the State of Louisiana through its agents and representatives in the offices of the parish clerks of court and registrar of voters" and that it "at all times acted under

the color of state law." [Doc. 1, p. 4, ¶ 6].  In addition, Plaintiff contends that Louisiana Secretary of State Tom Schedler was complicit in the purported violation of Plaintiff's rights because he "heads the Office of Louisiana Secretary of State and is responsible for enforcing the voting requirements of the State of Louisiana, including but not limited to the use of voter picture identification that is mandated by Louisiana Revised Statutes, a task that he and/or his agents and representatives failed to perform with plaintiff in the October 24, 2015, election" and that he also "at all times acted under the color of state law." [Doc. 1, p. 4, ¶ 7].

Additionally, Plaintiff avers that the Secretary of State, through their representatives, failed to explain the picture identification requirements to the Tangipahoa Parish Clerk's Office and their employee, and that the Secretary of State, through their representatives, denied Plaintiff of his constitutional right to vote by rejecting his government-issued picture identification. [Doc. 1, p. 8, ¶ 20].  Plaintiff also accuses the Secretary of State of failing to enforce the provision of La. Rev. Stat. § 18:562 that pertains to the picture identification requirements for voting and of failing to provide Plaintiff and "other similarly situated voters of Louisiana" with an acceptable form of picture voter identification. [Doc. 1, pp. 8-9, ¶ ¶ 21-22].  Plaintiff states, "With all the resources of the Louisiana State Government at their disposal, the Defendants required the use of picture identification in order to vote, yet had provided not [sic] picture identification with the voter registration card." [Doc. 1, p. 10, ¶ 27].

Among the remedies he is seeking, Plaintiff demands that the Secretary of State "[p]rovide each qualified voter with a pictured voter registration card that can be used in all federal, state, and local election [sic]; or…be ordered to include a picture and voter registration information on any and all forms of identification issued by the State of Louisiana or though the State of Louisiana, i.e., driver's license [sic], identification cards, food stamp cards, etc." [Doc.

1, p. 11, ¶ 27(1)].   Plaintiff also demands that the Secretary of State "be made to verify physically the residency and address of each and every citizen who is issued the new picture voter identification card;" or that the Defendants, including the Secretary of State, be ordered to pay Plaintiff "the total sum of one billion dollars ($1,000,000,000.00) for punitive damages, pain, suffering, mental anguish, public embarrassment and humiliation caused…by the defendants' denial of [Plaintiff's] right to vote." [Doc. 1, p. 11, ¶ 27(4-5)].   Plaintiff concludes his argument by indicating that he may be willing to negotiate the monetary amount of damages he is claiming if Defendants "act in good faith" to implement the additional remedies he is seeking.   [Doc. 1, p. 11, n. 3].

In an effort to simplify and better organize Plaintiff's claims, the Secretary of State herein categorizes Plaintiff's claims as follows: [1]

1.   **Claims brought under the Civil Rights Act**

    a.   42 U.S.C. § 1981

    b.   42 U.S.C. § 1983

        i.   Fourteenth Amendment

        ii.   Fifteenth Amendment

    c.   42 U.S.C. § 1985

    d.   42 U.S.C. § 1986

    e.   42 U.S.C. § 1988

2.   **Claims brought under the Voting Rights Act**

3.   **State Law Claims**

---

[1] Plaintiff also notes that he is asserting claims for damages pursuant to 18 U.S.C. § 96, 42 U.S.C. § 207(a), 42 U.S.C. § 407(a), and 42 U.S.C. §1915. [Doc. 1, pp. 1, 2].  For the reasons discussed hereinbelow, Plaintiff has failed to state causes of action under these statutes upon which relief can be granted.

      a.   La. Civ. Code art. 2315

      b.   La. Civ. Code art. 2317

      c.   La. Rev. Stat. § 18:562

    **4.**  **Claim for Injunctive Relief**

## II.   <u>SUMMARY OF ARGUMENT</u>

Plaintiff has failed to state any claims against the Secretary of State upon which relief can be granted because Plaintiff has provided only generalizations and conclusory statements in support of his allegations instead of offering specific facts to substantiate his claims. The majority of Plaintiff's Complaint is based on allegations that the Defendants, including the Secretary of State, acted in a racially discriminatory manner. However, Plaintiff has not alleged that he was not allowed to vote because he is a member of a protected class. Therefore, he has failed to state causes of action under the Civil Rights Act and the Voting Rights Act. In addition, to the extent Plaintiff contends that the Secretary of State defendants were negligent, Plaintiff has failed to provide any facts showing that the Secretary of State breached any duty with which the Secretary of State has been charged. Moreover, Plaintiff's request for injunctive relief should be denied because Plaintiff has not shown that he is in danger of once again experiencing the alleged harm in the immediate future. Furthermore, Plaintiff has failed to show that the Secretary of State violated La. Rev. Stat. § 18:562 because, in order to do so, Plaintiff must first set forth facts establishing that he complied with the requisites of the statute, which he failed to do.

Finally, the Secretary of State, in his individual capacity, is entitled to qualified immunity due to the fact that the Secretary of State's conduct did not violate any clearly established statutory or constitutional rights of Plaintiff of which a reasonable person would have known.

III.    <u>**ARGUMENT**</u>

At the outset, Secretary of State Tom Schedler notes that he is simultaneously filing a Motion to Dismiss Plaintiff's Section 1983 claims against the Secretary of State, in his official capacity, as well as Plaintiff's claims against the Louisiana Secretary of State Office on the grounds that pursuant to Fed. R. Civ. P. 12(b)(1), Plaintiff's Section 1983 claims are barred by the Secretary of State's Eleventh Amendment immunity.   However, the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is applicable to and is also herein filed on behalf of (1) Secretary Schedler, in his official capacity; (2) Secretary Schedler, in his individual capacity; and (3) the Louisiana Secretary of State Office.

A motion under Rule 12(b)(6) tests the legal sufficiency of the claims stated in the complaint and must be evaluated on the sole basis of the pleadings. *Garrett v. Celanese Corp.*, No. 3:02-CV-1485-K, 2003 WL 22234917 (N.D. Tex. Aug. 28, 2003), aff'd, 102 F. App'x 387 (5th Cir. 2004).  The ultimate question is whether the complaint states a valid cause of action when it is viewed in a light most favorable to the plaintiff, with every doubt resolved in favor of the plaintiff.   *Garrett*, 2003 WL 22234917, at *1. The court must "liberally construe the complaint in favor of the plaintiff and assume the truth of all pleaded facts." *Id.*

**A. Plaintiff has failed to set forth the requisite elements in order to support his claims against the Secretary of State.**

To avoid dismissal, a plaintiff must plead specific facts, not mere conclusory allegations. *Id.*  A complaint containing mere conclusory allegations or unwarranted deductions of fact will not survive a motion to dismiss.  *Id.*  Furthermore, dismissal is appropriate where the complaint contains no allegation regarding a required element of the claim asserted.  *Id.*

**i.  *Claims brought under the Civil Rights Act***

**a.  <u>42 U.S.C. § 1983</u>**

Plaintiff claims that the Secretary of State violated Plaintiff's civil and constitutional rights by (1) failing to explain the picture identification requirements to the Tangipahoa Parish Clerk's Office and their employee [Doc. 1, p. 8, ¶ 20]; (2) through their representatives, denying Plaintiff his constitutional right to vote by rejecting his government-issued picture identification [Doc. 1, p. 8, ¶ 20]; (3) failing to enforce the provision of La. Rev. Stat. § 18:562 that pertains to the picture identification requirements for voting [Doc. 1, pp. 8-9, ¶ 21]; and (4) failing to provide Plaintiff and "other similarly situated voters of Louisiana" with an acceptable form of picture voter identification. [Doc. 1, p. 9, ¶ 22].  However, "to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003).   Thus, to the extent Plaintiff attempts to argue that his claims under La. Civ. Code art. 2315, La. Civ. Code art. 2317, and La. Rev. Stat. § 18:562 resulted in a violation of his Section 1983 civil rights, said claims must fail. Accordingly, in order to state a viable claim under Section 1983, Plaintiff must establish a violation of his rights under federal law, such as the United States Constitution, which, as discussed hereinbelow, he is unable to do.

Plaintiff does not expressly state how any of the Secretary of State's alleged actions resulted in a violation of his rights under any of the clauses of the Fourteenth Amendment, including the Equal Protection Clause, the Due Process Clause, and the Privileges and Immunities Clauses.  Nevertheless, out of an abundance of caution, the Secretary of State sets forth herein that Plaintiff is unable to establish claims under any of the clauses.

### 1)  Fourteenth Amendment Equal Protection Claim

Under federal law, the Equal Protection Clause of the Fourteenth Amendment essentially directs that all persons similarly situated be treated alike.  *Wheeler v. Miller*, 168 F.3d 241, 252

(5th Cir. 1999).  To establish a Fourteenth Amendment equal-protection claim, a Plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *McFaul v. Valenzuela*, 684 F.3d 564, 577 (5th Cir. 2012), citing *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).  Moreover, the Fifth Circuit has noted that a plaintiff's conclusory allegations that others similarly situated have been treated differently, without any specific factual support for his assertions, is insufficient to support his claims.  *Kyles v. Garrett*, 222 F. App'x 427, 429 (5th Cir. 2007).  In affirming the trial court's dismissal of the suit, the Fifth Circuit in *Kyles* explained that even if there were others who were treated differently, the plaintiff failed to allege any facts to indicate that such different treatment had no rational basis or was motivated by any ill will or illegitimate animus. *Kyles*, 222 F. App'x at 429.

In the instant matter, Plaintiff has not alleged that black voters are treated differently from white voters.  While Plaintiff makes a vague reference to "other similarly situated voters," he makes no mention of how "similarly situated" non-black voters were treated differently from black voters. [Doc. 1, pp. 8-9, ¶¶ 21-22].  Plaintiff's Complaint does not contain any indication that a non-black voter presented the same type of identification that Plaintiff presented but was allowed to vote in the October 24, 2015, election.  The only mention Plaintiff makes of another individual's race is his statement that an "African American female worker rejected plaintiff's government issued picture ID." [Doc. 1, p. 3, n.1].  The fact that a black individual rejected the identification presented by Plaintiff certainly does not establish a violation of Plaintiff's right to equal protection under the Fourteenth Amendment.  Plaintiff cannot show that he received treatment different from the treatment received by similarly situated individuals, and thus, he

cannot show that the unequal treatment stemmed from a discriminatory intent.   Therefore, Plaintiff has failed to establish a violation of his constitutional right to equal protection.

### 2)  Fourteenth Amendment Due Process Claim

"In a section 1983 cause of action asserting a due process violation, a plaintiff must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." *Davis v. Young*, No. 14-31242, 2015 WL 5131669, at *3 (5th Cir. Sept. 2, 2015), citing *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995).   That is, a plaintiff must demonstrate that he had a "legitimate claim of entitlement" to a life, liberty, or property interest.  *Montez v. S. San Antonio Indep. Sch. Dist.*, 817 F.2d 1124, 1125 (5th Cir. 1987), citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577–78 (1972).  "Protected property interests are created and defined by 'state statutes or rules entitling citizens to certain benefits.'" *Goss v. Lopez*, 419 U.S. 565, 572-73 (1975), quoting *Board of Regents of State Colleges*, 408 U.S. at 577.

As with all the other claims presented in his Complaint, Plaintiff has failed to articulate the specific liberty or property interest of which he has been deprived.  Without a protected liberty or property interest, Plaintiff does not have a claim for violation of due process.  Even if Plaintiff were to contend that his right to vote is the property interest of which he was deprived, Plaintiff has not demonstrated that he complied with the specified voter identification requirements of La. Rev. Stat. § 18:562.   Again, "Protected property interests are created and defined by 'state statutes or rules entitling citizens to certain benefits.'" *Id.*  In his Complaint, Plaintiff has not verified that he complied with all the requirements of La. Rev. Stat. § 18:562, the state statute that sets forth the acceptable identification that entitles one to vote.  Therefore,

Plaintiff cannot establish that he was deprived of a property interest, thus subjecting him to a violation of his due process rights under the Fourteenth Amendment.

### 3) Fourteenth Amendment Privileges and Immunities Clause Claim

The Privileges and Immunities Clause of the Fourteenth Amendment guarantees certain privileges to citizens against infringement by state government. *Saenz v. Roe*, 526 U.S. 489, 503 n. 15, 119 S. Ct. 1518, 143 L. Ed. 2d 689 (1999).  Article IV provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several states." U.S. Const. art. IV, § 2.  This clause precludes a state from discriminating against nonresidents. *Austin v. New Hampshire*, 420 U.S. 656, 660-61 (1975).  However, the Privileges and Immunities Clause does not apply to situations in which citizens are challenging the actions of their own state. *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 65 (1988); *United Bldg. & Const. Trades Council of Camden Cty. & Vicinity v. Mayor & Council of City of Camden*, 465 U.S. 208, 217 (1984).  In the instant matter, Plaintiff has admitted that he is a citizen of Louisiana.  Given that Plaintiff has not asserted a cause of action against a state of which he is not a resident, Plaintiff has no cause of action under the Privileges and Immunities Clause.

### 4)  Fifteenth Amendment Claim

The Fifteenth Amendment provides, "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." U.S. Const. amend. XV, § 1.  The Amendment is not designed to punish for the past; its purpose is to ensure a better future. *Shelby Cty., Ala. v. Holder*, 133 S. Ct. 2612, 2629 (2013), citing *Rice v. Cayetano*, 528 U.S. 495, 512 (2000) ("Consistent with the design of the Constitution, the [Fifteenth] Amendment is cast in fundamental terms, terms transcending the particular controversy which was the immediate impetus for its enactment.").

As discussed below, Congress passed the Voting Rights Act for the purpose of enforcing the Fifteenth Amendment.  Thus, Plaintiff's inability to prove he was denied his right to vote "on account of race, color, or previous condition of servitude" is discussed in greater detail below.

In any event, the Secretary of State maintains that Plaintiff has not alleged that he was denied his right to vote because he is a black man; rather, Plaintiff simply emphasizes that he was a black man who was allegedly denied the right to vote.  Moreover, in addition to Plaintiff making no reference to other black individuals being denied the right to vote, Plaintiff acknowledges that he had been voting at the Amite City Hall without incident for twenty years. [Doc. 1, p. 7, ¶ 14].   If this Court were to rule that the Secretary of State violated Plaintiff's Fifteenth Amendment rights, such a ruling would not achieve the Fifteenth Amendment's intended purpose of ensuring a better future rather than inflicting punishment for a past action.

### b. <u>42 U.S.C. § 1981</u>

In his Complaint, Plaintiff indicates that he is also seeking damages pursuant to 42 U.S.C. § 1981, which provides,

> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment

11

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute. *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994), citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). While Plaintiff has stated that he is a member of a racial minority, he has not alleged anywhere in his Complaint that the Secretary of State had the intent to discriminate against him based on his race.   Moreover, even if Plaintiff were able to show an intent to discriminate, said discrimination would not have involved any of the activities enumerated in Section 1981.  These activities essentially pertain to contractual freedoms – not to situations where one is not allowed to vote because he fails to present adequate identification.  Accordingly, Plaintiff has not stated a cause of action under 42 U.S.C. § 1981 upon which relief may be granted.

### c.   42 U.S.C. §§ 1985 and 1986

In addition, Plaintiff's §§ 1985 and 1986 claims against the Secretary of State must be dismissed because in the Fifth Circuit, § 1985 claims alleging a conspiracy to violate a person's constitutional rights requires "an allegation of a race-based conspiracy." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000), citing *Newberry v. E. Texas State Univ.*, 161 F.3d 276, 281 n. 2 (5th Cir. 1998).  To state a successful cause of action under the statute, there must have been a conspiracy for the purpose of depriving a person or class of persons of the equal protection of the laws, and there must have been an action in furtherance of that conspiracy by which the person or class was injured or deprived of exercising any right or privilege of a citizen of the United States.  *Earnest v. Lowentritt*, 690 F.2d 1198, 1202 (5th Cir. 1982), citing

*Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Courts have required that the act in furtherance of the conspiracy be independently illegal and that the conspirators' actions be motivated by a class or racially-based animus. *Earnest*, 690 F.2d at 1202, citing *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) and *Scott v. Moore*, 640 F.2d 708 (5th Cir. 1981), rehearing en banc, 680 F.2d 979 (5th Cir. 1982). "The language requiring intent to deprive of equal protection of equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Earnest*, 690 F.2d at 1203, citing *Griffin*, 403 U.S. at 102.

As discussed hereinabove, Plaintiff has not made one single allegation in his Complaint that any actions allegedly taken by the Secretary of State were motivated by a racially-based animus. That is, while Plaintiff clearly states that he is a black man who was not allowed to vote [Doc. 1, p. 3, ¶ 4; p. 8, ¶ 19], he does not provide a single statement accusing the Secretary of State of engaging in actions motivated by the Secretary of State's hostility towards black persons. Again, the only other individual whose race is mentioned by Plaintiff in the Complaint is the African American female polling commissioner who allegedly informed Plaintiff that he would not be allowed to vote based on the insufficient identification he presented to her. [Doc. 1, p. 3, n.1]. Given that Plaintiff has not alleged that the Secretary of State engaged in discriminatory actions while motivated by a racially-based animus, Plaintiff cannot show that the Secretary of State engaged in a race-based conspiracy. Furthermore, Plaintiff provides no specific details as to which Defendants participated in which actions. Instead, Plaintiff relies on conclusory allegations to establish his claims, which is insufficient for establishing a claim under Section 1985. *Arsenaux v. Roberts*, 726 F.2d 1022 (5th Cir. 1982). Therefore, Plaintiff has failed to state a claim under 42 U.S.C. § 1985 upon which relief may be grated, and his claim

must be dismissed.   Moreover, because a violation of 42 U.S.C. § 1986 is premised on a violation of 42 U.S.C. § 1985, the Section 1986 claims must be dismissed as well.   *Mississippi Women's Med. Clinic v. McMillan*, 866 F.2d 788, 795 (5th Cir. 1989).

### d.  42 U.S.C. § 1988

Under 42 U.S.C. § 1988, a plaintiff who prevails in an action brought under §§ 1981, 1983, 1985 or 1986, *inter alia,* may be awarded attorneys' fees. 42 U.S.C. § 1988.   Because Plaintiff has failed to establish any claims against the Secretary of State under §§ 1981, 1983, 1985 and 1986, he has accordingly failed to establish a Section 1988 claim.   Therefore, this Court should dismiss Plaintiff's Section 1988 claim.

### ii.  *Claims brought under the Voting Rights Act*

The preamble to the Voting Rights Act of 1965 establishes that the central purpose of the Act is "[t]o enforce the fifteenth amendment to the Constitution of the United States."   *Chisom v. Roemer*, 501 U.S. 380, 383, citing Pub.L. 89–110, 79 Stat. 437, 42 U.S.C. § 1973 *et seq.* (1964 ed., Supp. I).   Section 2 of the Voting Rights Act proscribes any "voting qualification or prerequisite to voting or standard, practice, or procedure ... which results in a denial or abridgement of the right of any citizen ... to vote on account of race or color."   52 U.S.C. § 10301(a).   Unlike discrimination claims brought pursuant to the Fourteenth Amendment, Congress has clarified that violations of Section 2(a) can "be proved by showing discriminatory effect alone." *Veasey v. Abbott*, 796 F.3d 487, 504 (5th Cir. 2015), citing *Thornburg v. Gingles*, 478 U.S. 30, 35 (1986); 52 U.S.C. § 10301(b).   To satisfy this "results test," Plaintiffs must show not only that the challenged law imposes a burden on minorities, but also that "a certain electoral law, practice, or structure interacts with social and historical conditions *to cause* an inequality in

the opportunities enjoyed by black and white voters to elect their preferred representatives." *Veasey*, 796 F.3d at 504, citing *Thornburg*, 478 U.S. at 47 (emphasis added).

As discussed hereinabove, Plaintiff has made no allegation that the Secretary of State interfered with Plaintiff's right to vote on account of his race or color.   While Plaintiff emphasizes that he is a black man, his accusations against the Defendants, including the Secretary of State, are based entirely on the Defendants' alleged negligence in failing to properly implement La. Rev. Stat. § 18:562.  Furthermore, Plaintiff has not alleged (nor can he show) that the Secretary of State engaged in any activities that "interact[] with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Veasey*, 796 F.3d at 504, citing *Thornburg*, 478 U.S. at 47. Simply put, in attempting to establish that he was discriminated against on account of his race or color, Plaintiff relies solely on the fact that he is black.   Because he has not set forth any allegations establishing that the Secretary of State engaged in actions prohibited by the Voting Rights Act, Plaintiff has failed to state a cause of action under the Voting Rights Act upon which relief may be granted.

### iii.   *State Law Claims*

In his Complaint, Plaintiff has failed to invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear his state law claims. Regardless, under subsection 1367(c)(3), a court may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it has original jurisdiction.   Because Plaintiff has failed to establish claims under federal law upon which relief may be granted, this Court should decline to exercise jurisdiction over Plaintiff's remaining state law claims.   In the event this Court decides to retain jurisdiction over Plaintiff's state law claims, the Secretary of State maintains that

Plaintiff has failed to state a cause of action under state law upon which relief may be granted, as more thoroughly discussed hereinbelow.

### a.   La. Civ. Code art. 2315

La. Civ. Code art. 2315, a tort statute, provides, in pertinent part, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  In order to prove a prima facie case in an action for damages allegedly caused by the tortious conduct of a defendant, the plaintiff must prove three things: fault, causation, and damages. *Zimmerman v. Progressive Sec. Ins. Co.*, 49,982 (La. App. 2 Cir. 8/12/15), 174 So.3d 1230, 1235, reh'g denied (Sept. 24, 2015), citing *Pinkins v. Cabes,* 1998–1803 (La.App. 4 Cir. 01/27/99), 728 So.2d 523, *writ denied,* 1999–1242 (La. 07/18/99), 745 So.2d 32.

As stated hereinabove, Plaintiff has accused the Secretary of State of violating his civil rights under Section 1983 on the grounds that the Secretary of State violated their responsibility to "promulgate[] and enforce[] the picture identification law and other voting and election requirement [sic] for the State of Louisiana through its agents and representatives in the offices of the parish clerks of court and registrar of voters." [Doc. 1, p. 4, ¶ 6].  Plaintiff also contends and that the Secretary of State "was complicit in the purported violation of Plaintiff's rights because he heads the Office of Louisiana Secretary of State and is responsible for enforcing the voting requirements of the State of Louisiana, including but not limited to the use of voter picture identification that is mandated by [La. Rev. Stat. § 18:562]."  [Doc. 1, p. 4, ¶ 7]. Moreover, Plaintiff alleges that the Secretary of State, through their representatives, "failed to explain the picture identification requirements to the Tangipahoa Parish Clerk's Office and its employee" and "denied Plaintiff of his constitutional right to vote by rejecting his government-issued picture identification."  [Doc. 1, p. 8, ¶ 20].  Finally, Plaintiff asserts that the Secretary of

State violated his rights, along with the rights of "other similarly situated voters of Louisiana," by "failing to enforce the provision of La. Rev. Stat. § 18:562, pertaining to the picture identification requirements for voting" and by "failing to provide Plaintiff with an acceptable form of picture voter identification." [Doc. 1, pp. 8-9, ¶¶ 21-22].

In essence, Plaintiff has asserted that the Secretary of State was negligent in their promulgation and enforcement of La. Rev. Stat. § 18:562, in their supervision over the polling commissioner who informed him that the identification he presented was unacceptable, and in their failure to provide Plaintiff with an acceptable form of picture voter identification.  First of all, although the Secretary of State is responsible for promulgating and publishing all laws enacted by the legislature (see La. Const. art. IV, § 7), the Secretary of State is not authorized to author legislation, nor does the Secretary of State vote on or pass legislation into law.  Louisiana Constitution article III, section 1(A) expressly states, in pertinent part, that "[t]he legislative power of the state is vested in a legislature, consisting of a Senate and a House of Representatives."  The Secretary of State has no legislative power, and thus, all he is allowed to do is administer the election laws passed by the Legislature and signed into law by the governor.

Regardless, Plaintiff has set forth no facts in his Complaint to establish that the Secretary of State was negligent in their promulgation of the statute.  While Plaintiff notes that the polling commissioner rejected both forms of identification that Plaintiff presented to her, Plaintiff has not established that the identification he presented conformed to the specific requirements of La. Rev. Stat. § 18:562.  For example, Plaintiff has not alleged that either of the forms of identification he presented contained his signature, as is required by La. Rev. Stat. § 18:562(A)(2), nor has he claimed that he presented any of the forms of identification allowed by the statute (i.e., a Louisiana driver's license, a Louisiana special identification card, or other

generally recognized picture identification card that contains the name and signature of the applicant ). Additionally, Plaintiff has not alleged that the form of identification presented to the polling commissioner consisted of "generally recognized picture identification." That is, Plaintiff has not established that the condition of the photo on the identification was sufficient to allow a polling commissioner to identify Plaintiff as the person in the photo.

In addition, Plaintiff is mistaken in his assertion that the Secretary of State has any responsibilities regarding the enforcement of La. Rev. Stat. § 18:562. The statute provides, in pertinent part,

> A. Identification of voters.
>
> (1) A person who desires to vote in a primary or general election shall give his name and address ***to a commissioner***, who shall announce the applicant's name and address to the persons at the polling place.
>
> (2) Each applicant shall identify himself, in the presence and view of the bystanders, and ***present to the commissioners*** a Louisiana driver's license, a Louisiana special identification card issued pursuant to R.S. 40:1321, or other generally recognized picture identification card that contains the name and signature of the applicant. If the applicant does not have a Louisiana driver's license, a Louisiana special identification card, or other generally recognized picture identification card that contains the name and signature of the applicant, the applicant shall complete and sign an affidavit, which is supplied by the secretary of state, to that effect ***before the commissioners***, which affidavit shall include the applicant's date of birth and mother's maiden name. If the applicant is unable to read or write or is otherwise unable to complete the affidavit due to disability, the applicant may receive assistance in completing the affidavit and ***the commissioner*** shall make a notation on the affidavit. The applicant may receive the assistance of any person of his choice, ***including a commissioner***, except a candidate, ***commissioner-in-charge***, the applicant's employer or employer's agent, or the applicant's union agent. The commissioners shall place the affidavit in the envelope marked "Registrar of Voters" and attach the envelope to the precinct register. However, an applicant who is allowed to vote without the picture identification required by this Paragraph is subject to challenge as provided in R.S. 18:565.
>
> ***

C.  Handwritten signature of the applicant.  If the applicant is able to sign his name, he shall sign his handwritten signature in ink in the space for his signature on the precinct register.  When the applicant has submitted picture identification to the commissioners, the applicant's signature shall be compared to his signature on the picture identification.  If the applicant is unable to sign his name, he shall make his mark in ink in the proper space on the precinct register.

D.  Procedure after identification.  If satisfied that the applicant has identified himself as the voter named on the precinct register and that he is qualified to vote, ***a commissioner*** shall initial the precinct register opposite the voter's signature or mark.  The voter then shall be allowed to vote. (Emphases added).

The plain language of the statute clearly indicates that it is the commissioner, ***not*** the Secretary of State, that is responsible for enforcing La. Rev. Stat. § 18:562.  Indeed, La. Rev. Stat. § 18:425(C)(1) expressly states, "The ***commissioners*** shall conduct primary and general elections at each polling place, ***shall enforce the election laws***, and shall maintain order at the polling place during the election and the counting and tabulation of votes." (Emphasis added). Therefore, the Secretary of State had no duty or authority to enforce the statute.

Moreover, the Secretary of State does not participate in the selection or supervision of polling commissioners.  La. Rev. Stat. § 18:434 states that the commissioners are selected by each respective Parish Board of Election Supervisors, which, pursuant to La. Rev. Stat. § 18:423(C)(1), consists of each parish's registrar of voters and clerk of court, along with the chairman of the parish executive committee of the Democratic and Republican parties (or their designees) and one member appointed by the governor.  Furthermore, La. Rev. Stat. § 425(B)(3) provides, "A person shall not serve as a commissioner, except pursuant to R.S. 18:434(D), unless ***he has attended a course of instruction for commissioners, has received a certificate of instruction during the term of office of the clerk who conducted the school***, and has provided his correct party affiliation to the clerk." (Emphasis added).   The Secretary of State does not

19

serve as a member of the Parish Board of Election Supervisors and, accordingly, plays no role in the selection or supervision of polling commissioners, who are solely responsible for enforcing La. Rev. Stat. § 18:562.

Finally, the Secretary of State does not have any power or authority to provide voters with an acceptable form of picture voter identification.  The Secretary of State's powers are limited to those specifically authorized under Louisiana law.  Plaintiff has not pointed to any provision of Louisiana law that mandates or permits the Secretary of State to provide certain types of identification to voters.  Rather, La. Const. art. IV, § 7 provides,

> The secretary of state shall head the department and shall be the chief election officer of the state. He shall prepare and certify the ballots for all elections, promulgate all election returns, and administer the election laws, except those relating to voter registration and custody of voting machines. He shall administer the state corporation and trademark laws; serve as keeper of the Great Seal of the State of Louisiana and attest therewith all official laws, documents, proclamations, and commissions; administer and preserve the official archives of the state; promulgate and publish all laws enacted by the legislature and retain the originals thereof; and countersign and keep an official registry of all commissions. He may administer oaths, and shall have other powers and perform other duties authorized by this constitution or provided by law.

No provision of the Louisiana Constitution, nor of any set of laws, requires or authorizes the Secretary of State to actually provide voters with identification.  As discussed above, the Legislature has set forth the laws indicating the types of voter identification that are acceptable, and the Secretary of State has fulfilled their duty of promulgating and publishing those laws. The Secretary of State does not issue the acceptable forms of voter identification, nor could he do so without legislative authorization.  Therefore, Plaintiff has failed to establish that the Secretary of State has a duty or authority to provide voters with photo identification. Accordingly, Plaintiff has failed to state a cause of action under La. Civ. Code art. 2315 upon which relief may be granted.

### b.  **La. Civ. Code art. 2317**

La. Civ. Code. art. 2317 provides, in pertinent part, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."  Plaintiff has not set forth any allegations that the Secretary of State was "answerable" for any of the persons who allegedly participated in denying Plaintiff the ability to vote in the October 24, 2015, election.  The Parish Board of Election Supervisors is charged with selecting commissioners, and La. Rev. Stat. §§ 18:433 and 434 set forth the procedures by which the Board may select, remove, and disqualify commissioners.  Again, the Secretary of State does not serve as a member of the Parish Board of Election Supervisors; therefore, he plays no role in the selection or supervision of polling commissioners, who are responsible for enforcing La. Rev. Stat. § 18:562.   Thus, Plaintiff has failed to state a cause of action under La. Civ. Code art. 2317 upon which relief may be granted.

### c.  **La. Rev. Stat. § 18:562**

As discussed hereinabove, Plaintiff has not alleged that he presented to the polling commissioner "a Louisiana driver's license, a Louisiana special identification card issued pursuant to R.S. 40:1321, or other generally recognized picture identification card that contains the name and signature of the applicant."   Again, while Plaintiff notes that the polling commissioner rejected both forms of identification that he presented to her, he has not established that the identification he presented conformed to the specific requirements of La. Rev. Stat. § 18:562.   For example, Plaintiff has not alleged that either of the forms of identification he presented contained his signature, as is required by La. Rev. Stat. § 18:562(A)(2), nor has he claimed that he presented any of the forms of identification allowed by the statute.  In addition, Plaintiff has not alleged that the form of identification presented to the

21

polling commissioner consisted of "generally recognized picture identification." That is, Plaintiff has not established that the condition of the photo on the identification was sufficient to allow a polling commissioner to identify Plaintiff as the person in the photo. Moreover, Plaintiff has not indicated that he attempted to or was not offered the opportunity to "complete and sign an affidavit," which he is allowed to do pursuant to La. Rev. Stat. § 18:562 (A)(2) in lieu of presenting identification. Accordingly, Plaintiff has failed to state a cause of action under La. Rev. Stat. § 18:562 upon which relief may be granted.

Moreover, in his Complaint, Plaintiff specifically accuses Secretary of State Tom Schelder of "fail[ing] to explain the picture identification requirements to the Tangipahoa Parish Clerk's Office and their employee…" and of "denying Plaintiff of his constitutional right to vote by rejecting his government-issued picture identification." [Doc. 1, p. 8, ¶ 20]. Plaintiff also accuses Secretary of State Schedler of failing to enforce the provision of La. Rev. Stat. § 18:562 that pertains to the picture identification requirements for voting and of failing to provide Plaintiff and "other similarly situated voters of Louisiana" with an acceptable form of picture voter identification. [Doc. 1, pp. 8-9, ¶ ¶ 21-22]. For all the reasons discussed hereinabove, just as Plaintiff has failed to set forth any legitimate claim against the Louisiana Secretary of State Office, Plaintiff has also failed to state any cause of action against Secretary of State Schedler, in both his official and individual capacities.

### iv. *Claim for Injunctive Relief*

A plaintiff seeking injunctive relief based on an alleged past wrong must show that there is a real or immediate threat that he will be wronged again. *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997), citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). First of all, for all the reasons discussed hereinabove, Plaintiff has failed to prove the

existence of a "past wrong" (i.e., cause of action) that could form the basis for the injunctive relief Plaintiff is seeking.  Moreover, Plaintiff has not set forth any facts showing that he is in danger of suffering another alleged violation of his right to vote in the immediate future.  For example, Plaintiff has not indicated that in the imminent future, an election will take place during which he may be subjected to the same actions that form the basis of the instant lawsuit.  Because Plaintiff has provided absolutely no facts to establish his claim for injunctive relief, this Court should dismiss that claim.

### v.  *Remaining Claims*

Plaintiff's remaining claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for the following reasons:

- 18 U.S.C. § 96 is not a statute that has been enacted;

- 42 U.S.C. § 207(a) pertains to the grades and ranks that are given to certain commissioned officers and is entirely irrelevant to the instant matter;

- 42 U.S.C. § 407(a) pertains to the assignment of social security benefits and is entirely irrelevant to the instant matter; and

- 42 U.S.C. §1915 is not a statute that has been enacted.

### B. The Secretary of State, in his individual capacity, is entitled to qualified immunity from the claims asserted against him by Plaintiff.

In the event the Court determines that Plaintiff has stated a cause of action upon which relief can be granted and that this Court has jurisdiction over some or all of Plaintiff's claims, then this Court should rule that the Secretary of State is entitled to qualified immunity for the claims asserted against him in his individual capacity.   The affirmative defense of qualified immunity may provide officials with two types of protection.   *Cassels v. Stalder*, 342 F. Supp. 2d 555, 562 (M.D. La. 2004).   First, it functions as a defense to liability when the actions

allegedly taken by officials did not violate clearly established law. *Id.*, citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If the law was not clearly established when officials acted, qualified immunity bars an award of damages. *Id.* In order for qualified immunity to be surrendered, pre-existing law must dictate the conclusion for every similarly situated, reasonable government agent that what he or she is doing violates federal law in the circumstances. *Cassels*, 342 F. Supp. 2d at 562, citing *Sorenson v. Ferrie*, 134 F.3d 325, 330 (5th Cir. 1998). Second, qualified immunity may provide officials with an immunity from suit by relieving them from the burdens of both discovery and a trial. *Cassels*, 342 F. Supp. 2d at 562, citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "The bifurcated test for qualified immunity is quite familiar: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." *Cassels*, 342 F. Supp. 2d at 562, citing *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998). To be "clearly established," the contours of the [constitutional] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The question of whether the right was clearly established requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident. *Conroe Creosoting Co. v. Montgomery Cty., Tex.*, 249 F.3d 337, 340 (5th Cir. 2001).

A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. *Id.* Therefore, before engaging in the inquiry into whether the official unreasonably violated clearly established law, courts should first determine whether the challenged conduct, viewed in the light most favorable

to the plaintiff, would actually amount to a violation of federal law in the first place. *Id.* For all the reasons set forth hereinabove, Plaintiff has failed to state any cause of action against the Secretary of State. Therefore, the Secretary of State, in his individual capacity, is entitled to qualified immunity.

IV.  **CONCLUSION**

For all the aforementioned reasons, Louisiana Secretary of State Office and Secretary of State Tom Schedler, in both his official and his individual capacities, pray that their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be granted and that this Court dismiss all of Plaintiff's claims against the Secretary of State with prejudice at Plaintiff's cost.

**SHOWS, CALI & WALSH, L.L.P.**

 */s/ Grant J. Guillot*
E. Wade Shows, La. Bar Roll No. 7637
John C. Walsh, La. Bar Roll No. 24903
Grant J. Guillot, La. Bar Roll No. 32484
Kathryn A. Dufrene, La. Bar Roll No. 35759
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, Louisiana 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-1467
*Attorneys for Defendants, Louisiana Secretary of State Office and Secretaryof State Tom Schedler*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 4th day of January, 2016, a copy of the foregoing has this date been served upon all parties through their respective counsel of record by operation of the Court's electronic filing system and has been filed electronically with the Clerk of Court using the CM/ECF system. A copy of the foregoing has been mailed to the following:

Johnny Duncan
P.O. Box 723
Amite, LA 70422

 *s/ Grant J. Guillot*
GRANT J. GUILLOT