UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY DUNCAN | CIVIL ACTION NO. 15-5486 |
| **Plaintiff** | SECTION: "B" |
| **VERSUS** | JUDGE: IVAN L.R. LEMELLE |
| **STATE OF LOUISIANA, LOUISIANA SECRETARY OF STATE OFFICE, SECRETARY OF STATE TOM SCHEDLER, TANGIPAHOA PARISH COUNSEL, TANGIPAHOA PARISH CLERK OF COURT OFFICE, CLERK JULIAN DUFRECHE, TANGIPAHOA PARISH REGISTRAR OF VOTERS OFFICE, AND TANGIPAHOA PARISH REGISTRAR OF VOTERS JOHN RUSSELL** | MAG.: SALLY SHUSHAN |
| | TRIAL BY JURY DEMANDED |
| **Defendants** | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

MAY IT PLEASE THE COURT:

Defendant, the State of Louisiana, (the "*State*"), files this memorandum in support of its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The State files its 12(b)(1) Motion in response to the Section 1983 claims asserted against it by Plaintiff, Johnny Duncan, and the State files its 12(b)(6) Motion in response to all of Plaintiff's claims.

**I.     FACTUAL BACKGROUND**

Plaintiff, an African-American, filed a Complaint on October 27, 2015, alleging at least seventeen (17) causes of actions against the named Defendants, the State of Louisiana, Louisiana Secretary of State Office, Secretary of State Tom Schedler, Tangipahoa Parish Council, Tangipahoa Clerk of Court Office, Clerk Julian Dufreche, Tangipahoa Registrar of Voters

1

Office, and Tangipahoa Registrar of Voters John Russell. [Doc. 1].  Plaintiff seeks declaratory and injunctive relief, as well as monetary and punitive damages, in order to "redress the racial harassment and refusal to accept [Plaintiff's] government issued picture identification and demanding a second form of picture identification in order [for Plaintiff] to vote in the Louisiana October 24, 2015 Primary Election."  [Doc. 1, p. 2, ¶ 1].

Specifically, Plaintiff states that on October 24, 2015, he visited his usual polling place at the Amite City Hall.   [Doc. 1, p. 7, ¶ 14].   He states that he presented a "United States Government issued picture identification card," though Plaintiff does not indicate whether the card contained his signature as required pursuant to La. Rev. Stat. § 18:562, nor does he provide any details regarding the quality or condition of the identification he presented. [Doc. 1, p. 8, ¶ 16].   However, an African American female polling commissioner rejected Plaintiff's government-issued picture identification.   [Doc. 1, p. 3, n.1].   Plaintiff also states that he presented a second identification in the form of a "Veterans Department identification card" to verify his identity, but he does not specify whether the card included his signature or his picture. [Doc. 1, p. 8, ¶ 17].  He also notes that he "wore a military jacket to which his name and rank were visibly affixed." [Doc. 1, p. 8, ¶ 18].   Yet, the polling employee again rejected the identification presented by Plaintiff, thus prohibiting him from voting.  [Doc. 1, p. 8, ¶ 19].

Plaintiff alleges that the State of Louisiana was complicit in the alleged violation of Plaintiff's civil and constitutional rights because it "created through legislation the pictured identification requirement for registered voters in order to participate in the electoral process." [Doc. 1, p. 4, ¶ 5].  In addition Plaintiff states, "With all the resources of the Louisiana State Government at their disposal, the Defendants required the use of picture identification in order to

vote, yet had provided not [sic] picture identification with the voter registration card." [Doc. 1, p. 10, ¶ 27].

Among the remedies he is seeking, Plaintiff demands that the State of Louisiana "[p]rovide each qualified voter with a pictured voter registration card that can be used in all federal, state, and local election [sic]; or…be ordered to include a picture and voter registration information on any and all forms of identification issued by the State of Louisiana or though the State of Louisiana, i.e., driver's license [sic], identification cards, food stamp cards, etc." [Doc. 1, p. 11, ¶ 27(1)]. Plaintiff also demands that the State of Louisiana "be made to verify physically the residency and address of each and every citizen who is issued the new picture voter identification card;" or that the Defendants, including the State of Louisiana, be ordered to pay Plaintiff "the total sum of one billion dollars ($1,000,000,000.00) for punitive damages, pain, suffering, mental anguish, public embarrassment and humiliation caused…by the defendants' denial of [Plaintiff's] right to vote." [Doc. 1, p. 11, ¶ 27(4−5)]. Plaintiff concludes his argument by indicating that he may be willing to negotiate the monetary amount of damages he is claiming if Defendants "act in good faith" to implement the additional remedies he is seeking. [Doc. 1, p. 11, n. 3].

In an effort to simplify and better organize Plaintiff's claims, which consist mostly of mere generalizations and conclusory allegations, the State of Louisiana herein categorizes Plaintiff's claims as follows: [1]

---

[1] Plaintiff also notes that he is asserting claims for damages pursuant to
- 18 U.S.C. § 96, which is not a statute that has been enacted;
- 42 U.S.C. § 207(a), which pertains to the grades and ranks that are given to certain commissioned officers;
- 42 U.S.C. § 407(a), which pertains to the assignment of social security benefits; and
- 42 U.S.C. §1915, which is not a statute that has been enacted. [Doc. 1, pp. 1, 2].

1. **Claims brought under the Civil Rights Act**

    a. 42 U.S.C. § 1981

    b. 42 U.S.C. § 1983

        i. Fourteenth Amendment

        ii. Fifteenth Amendment

    c. 42 U.S.C. § 1985

    d. 42 U.S.C. § 1986

    e. 42 U.S.C. § 1988

2. **Claims brought under the Voting Rights Act**

3. **State Law Claims**

    a. La. Civ. Code art. 2315

    b. La. Civ. Code art. 2317

    c. La. Rev. Stat. § 18:562

4. **Claim for Injunctive Relief**

## II.   SUMMARY OF ARGUMENT

This Court lacks jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 against the State of Louisiana.  Because the State has not waived its Eleventh Amendment right to sovereign immunity, Plaintiff's Section 1983 claims against the State are barred by the Eleventh Amendment, and thus, they should be dismissed in accordance with Fed. R. Civ. P. 12(b)(1).

In addition, Plaintiff's claims against the State of Louisiana should all be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff has failed to state any claims against the State upon which relief can be granted because Plaintiff has provided only generalizations and conclusory statements in support of his allegations instead of offering specific facts to

substantiate his claims.   The majority of Plaintiff's Complaint is based on allegations that the Defendants, including the State, acted in a racially discriminatory manner.   However, Plaintiff has not alleged that he was not allowed to vote because he is a member of a protected class. Therefore, he has failed to state causes of action under the Civil Rights Act and the Voting Rights Act.   In addition, to the extent Plaintiff contends that the State was negligent, Plaintiff has failed to provide any facts showing that the State breached any duty with which the State has been charged.   Moreover, Plaintiff's request for injunctive relief should be denied because Plaintiff has not shown that he is in danger of once again experiencing the alleged harm in the immediate future.   Furthermore, Plaintiff has failed to show that the State violated La. Rev. Stat. § 18:562 because, in order to do so, Plaintiff must first set forth facts establishing that he complied with the requisites of the statute, which he failed to do.

## III.   ARGUMENT IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of a lawsuit on the basis that the court in which the suit is filed lacks subject matter jurisdiction.   In the instant matter, Plaintiff has alleged claims against the State of Louisiana.   The Eleventh Amendment of the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. amend. XI.   This language expressly encompasses not only suits brought against a state by citizens another state, but also suits against a state by citizens of that same state. *See Hall v. Louisiana*, 974 F. Supp. 2d 978, 986−87 (M.D. La. 2013), reconsideration denied, No. CIV.A. 12-00657-BAJ, 2014 WL 1248161 (M.D. La. Mar. 25, 2014), citing *Hans v. Louisiana,* 134 U.S. 1 (1890); *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Pennhurst State Sch.*

5

& *Hosp. v. Halderman,* 465 U.S. 89, 98, (1984); and *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). "A state's Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the state." *Hall*, 974 F. Supp. 2d at 987, quoting *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). In general, therefore, a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. *Hall*, 974 F. Supp. 2d at 987, citing *Lewis v. Univ. of Texas Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011); *Pennhurst State School & Hosp.*, 465 U.S. at 100. This jurisdictional bar applies regardless of the nature of the relief sought. *Id.*

While a state may expressly waive this Eleventh Amendment sovereign immunity, the State of Louisiana has not done so. *Harris v. City of Hammond*, No. CIV.A. 07-3890, 2008 WL 4469112, at *3 (E.D. La. Sept. 30, 2008), citing *Edelman*, 415 U.S. at 673; *Welch v. State Dep't of Highways & Pub. Transp.*, 780 F.2d 1268, 1271−73 (5th Cir. 1986), aff'd sub nom., *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468 (1987). To the contrary, La. Rev. Stat. § 13:5106(a) provides that "no suit against the state ... shall be instituted in any court other than a Louisiana state court." However, Congress has abrogated the states' sovereign immunity for claims arising under the Voting Rights Act. *Hall*, 974 F. Supp. at 988, citing *Mixon v. State of Ohio*, 193 F.3d 389, 398–99 (6th Cir. 1999); *Reaves v. U.S. Dep't of Justice*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005); *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997). On the other hand, Congress has not abrogated the states sovereign immunity for claims arising under 42 U.S.C. § 1983. *Hall*, 974 F. Supp. 2d at 988, citing *Inyo County, Cal. v. Paiute–Shoshone Indians of the Bishop Community of the Bishop Colony,* 538 U.S. 701, 709 (2003).

In the instant matter, Plaintiff has accused the State of Louisiana of violating his civil rights under Section 1983 on the grounds that the State "created through legislation the pictured

identification requirement for registered voters in order to participate in the electoral process."
[Doc. 1, p. 4, ¶ 5].   Because Plaintiff has accused the State of violations under Section 1983 and
given the fact that Congress has not abrogated the State's Eleventh Amendment immunity, this
Court should dismiss Plaintiff's Section 1983 claims with prejudice and at his cost.

IV.   <u>ARGUMENT IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R.
CIV. P. 12(B)(6)</u>

A motion under Rule 12(b)(6) tests the legal sufficiency of the claims stated in the
complaint and must be evaluated on the sole basis of the pleadings. *Garrett v. Celanese Corp.*,
No. 3:02-CV-1485-K, 2003 WL 22234917 (N.D. Tex. Aug. 28, 2003), aff'd, 102 F. App'x 387
(5th Cir. 2004).   The ultimate question is whether the complaint states a valid cause of action
when it is viewed in a light most favorable to the plaintiff, with every doubt resolved in favor of
the plaintiff.   *Garrett*, 2003 WL 22234917, at *1. The court must "liberally construe the
complaint in favor of the plaintiff and assume the truth of all pleaded facts." *Id.*

**A. Plaintiff has failed to set forth the requisite elements in order to support his
claims against the State.**

To avoid dismissal, a plaintiff must plead specific facts, not mere conclusory allegations.
*Id.*  A complaint containing mere conclusory allegations or unwarranted deductions of fact will
not survive a motion to dismiss.   *Id.*  Furthermore, dismissal is appropriate where the complaint
contains no allegation regarding a required element of the claim asserted.  *Id.*

**i.  *Claims brought under the Civil Rights Act***

**a.  <u>42 U.S.C. § 1983</u>**

Plaintiff claims that the State violated Plaintiff's civil and constitutional rights by
"created[ing] through legislation the pictured identification requirement for registered voters in
order to participate in the electoral process." [Doc. 1, p. 4, ¶ 5].  However, "to proceed under 42

U.S.C. § 1983, such a claim must rest upon a denial of rights secured under federal and not state law." *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003).   Thus, to the extent Plaintiff attempts to argue that his claims under La. Civ. Code art. 2315, La. Civ. Code art. 2317, and La. Rev. Stat. § 18:562 resulted in a violation of his Section 1983 civil rights, said claims must fail. Accordingly, in order to state a viable claim under Section 1983, Plaintiff must establish a violation of his rights under federal law, such as the United States Constitution, which, as discussed hereinbelow, he is unable to do.

Plaintiff does not expressly state how any of the State's alleged actions resulted in a violation of his rights under any of the clauses of the Fourteenth Amendment, including the Equal Protection Clause, the Due Process Clause, and the Privileges and Immunities Clauses. Nevertheless, out of an abundance of caution, the State sets forth herein that Plaintiff is unable to establish claims under any of the clauses, and thus, his lawsuit should be dismissed.

### 1) Fourteenth Amendment Equal Protection Claim

Under federal law, the Equal Protection Clause of the Fourteenth Amendment essentially directs that all persons similarly situated be treated alike. *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999). To establish a Fourteenth Amendment equal-protection claim, a Plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *McFaul v. Valenzuela*, 684 F.3d 564, 577 (5th Cir. 2012), citing *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). Moreover, the Fifth Circuit has noted that a plaintiff's conclusory allegations that others similarly situated have been treated differently, without any specific factual support for his assertions, is insufficient to support his claims. *Kyles v. Garrett*, 222 F. App'x 427, 429 (5th Cir. 2007). In affirming the trial court's dismissal of the suit, the Fifth Circuit in *Kyles* explained that

even if there were others who were treated differently, the plaintiff failed to allege any facts to indicate that such different treatment had no rational basis or was motivated by any ill will or illegitimate animus. *Kyles*, 222 F. App'x at 429.

In the instant matter, Plaintiff has not alleged that black voters are treated differently from white voters.  While Plaintiff makes a vague reference to "other similarly situated voters," he makes no mention of how "similarly situated" non-black voters were treated differently from black voters. [Doc. 1, pp. 8-9, ¶ ¶ 21-22].  Plaintiff's Complaint does not contain any indication that a non-black voter presented the same type of identification that Plaintiff presented but was allowed to vote in the October 24, 2015, election.  The only mention Plaintiff makes of another individual's race is his statement that an "African American female worker rejected plaintiff's government issued picture ID." [Doc. 1, p. 3, n.1].  The fact that a black individual rejected the identification presented by Plaintiff certainly does not establish a violation of Plaintiff's right to equal protection under the Fourteenth Amendment.  Plaintiff cannot show that he received treatment different from the treatment received by similarly situated individuals, and thus, he cannot show that the unequal treatment stemmed from a discriminatory intent.  Therefore, Plaintiff has failed to establish a violation of his constitutional right to equal protection, thus warranting dismissal of his lawsuit.

### 2)  Fourteenth Amendment Due Process Claim

"In a section 1983 cause of action asserting a due process violation, a plaintiff must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." *Davis v. Young*, No. 14-31242, 2015 WL 5131669, at *3 (5th Cir. Sept. 2, 2015), citing *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995).   That is, a plaintiff must demonstrate that he had a "legitimate

claim of entitlement" to a life, liberty, or property interest.  *Montez v. S. San Antonio Indep. Sch. Dist.*, 817 F.2d 1124, 1125 (5th Cir. 1987), citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577–78 (1972).  "Protected property interests are created and defined by 'state statutes or rules entitling citizens to certain benefits.'" *Goss v. Lopez*, 419 U.S. 565, 572-73 (1975), quoting *Board of Regents of State Colleges*, 408 U.S. at 577.

    As with all the other claims presented in his Complaint, Plaintiff has failed to articulate the specific liberty or property interest of which he has been deprived.  Without a protected liberty or property interest, Plaintiff does not have a claim for violation of due process.  Even if Plaintiff were to contend that his right to vote is the property interest of which he was deprived, Plaintiff has not demonstrated that he complied with the specified voter identification requirements of La. Rev. Stat. § 18:562.   Again, "Protected property interests are created and defined by 'state statutes or rules entitling citizens to certain benefits.'" *Id.*   In his Complaint, Plaintiff has not verified that he complied with all the requirements of La. Rev. Stat. § 18:562, the state statute that sets forth the acceptable identification that entitles one to vote.  Therefore, Plaintiff cannot establish that he was deprived of a property interest, thus subjecting him to a violation of his due process rights under the Fourteenth Amendment.  Accordingly, Plaintiff's lawsuit should be dismissed.

### 3) Fourteenth Amendment Privileges and Immunities Clause Claim

    The Privileges and Immunities Clause of the Fourteenth Amendment guarantees certain privileges to citizens against infringement by state government. *Saenz v. Roe*, 526 U.S. 489, 503 n. 15 (1999).  Article IV provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several states." U.S. Const. art. IV, § 2.  This clause precludes a state from discriminating against nonresidents. *Austin v. New Hampshire*, 420 U.S. 656, 660-61

(1975).  However, the Privileges and Immunities Clause does not apply to situations in which citizens are challenging the actions of their own state. *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 65 (1988); *United Bldg. & Const. Trades Council of Camden Cty. & Vicinity v. Mayor & Council of City of Camden*, 465 U.S. 208, 217 (1984).  In the instant matter, Plaintiff has admitted that he is a citizen of Louisiana.  Given that Plaintiff has not asserted a cause of action against a state of which he is not a resident, Plaintiff has no cause of action under the Privileges and Immunities Clause.  Therefore, Plaintiff's lawsuit should be dismissed.

### 4)  Fifteenth Amendment Claim

The Fifteenth Amendment provides, "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." U.S. Const. amend. XV, § 1.  The Amendment is not designed to punish for the past; its purpose is to ensure a better future. *Shelby Cty., Ala. v. Holder*, 133 S. Ct. 2612, 2629 (2013), citing *Rice v. Cayetano*, 528 U.S. 495, 512 (2000) ("Consistent with the design of the Constitution, the [Fifteenth] Amendment is cast in fundamental terms, terms transcending the particular controversy which was the immediate impetus for its enactment."). As discussed below, Congress passed the Voting Rights Act for the purpose of enforcing the Fifteenth Amendment.  Thus, Plaintiff's inability to prove he was denied his right to vote "on account of race, color, or previous condition of servitude" is discussed in greater detail below.

In any event, the State maintains that Plaintiff has not alleged that he was denied his right to vote because he is a black man; rather, Plaintiff simply emphasizes that he was a black man who was allegedly denied the right to vote.  Moreover, in addition to Plaintiff making no reference to other black individuals being denied the right to vote, Plaintiff acknowledges that he had been voting at the Amite City Hall without incident for twenty years. [Doc. 1, p. 7, ¶ 14].  If

this Court were to rule that the State violated Plaintiff's Fifteenth Amendment rights, such a ruling would not achieve the Fifteenth Amendment's intended purpose of ensuring a better future rather than inflicting punishment for a past action. Accordingly, this Court should dismiss Plaintiff's lawsuit.

### b. **42 U.S.C. § 1981**

In his Complaint, Plaintiff indicates that he is also seeking damages pursuant to 42 U.S.C. § 1981, which provides,

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute. *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994), citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). While Plaintiff has stated that he is a member of a racial minority, he has not alleged anywhere

in his Complaint that the State had the intent to discriminate against him based on his race. Moreover, even if Plaintiff were able to show an intent to discriminate, said discrimination would not have involved any of the activities enumerated in Section 1981. These activities essentially pertain to contractual freedoms – not to situations where one is not allowed to vote because he fails to present adequate identification. Accordingly, Plaintiff has not stated a cause of action under 42 U.S.C. § 1981 upon which relief may be granted, and this, his lawsuit should be dismissed.

### c.  42 U.S.C. §§ 1985 and 1986

In addition, Plaintiff's §§ 1985 and 1986 claims against the State must be dismissed because in the Fifth Circuit, § 1985 claims alleging a conspiracy to violate a person's constitutional rights requires "an allegation of a race-based conspiracy." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000), citing *Newberry v. E. Texas State Univ.*, 161 F.3d 276, 281 n. 2 (5th Cir. 1998). To state a successful cause of action under the statute, there must have been a conspiracy for the purpose of depriving a person or class of persons of the equal protection of the laws, and there must have been an action in furtherance of that conspiracy by which the person or class was injured or deprived of exercising any right or privilege of a citizen of the United States. *Earnest v. Lowentritt*, 690 F.2d 1198, 1202 (5th Cir. 1982), citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Courts have required that the act in furtherance of the conspiracy be independently illegal and that the conspirators' actions be motivated by a class or racially-based animus. *Earnest*, 690 F.2d at 1202, citing *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) and *Scott v. Moore*, 640 F.2d 708 (5th Cir. 1981), rehearing en banc, 680 F.2d 979 (5th Cir. 1982). "The language requiring intent to deprive of equal protection of equal privileges and immunities, means that there must be some

racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Earnest*, 690 F.2d at 1203, citing *Griffin*, 403 U.S. at 102.

As discussed hereinabove, Plaintiff has not made one single allegation in his Complaint that any actions allegedly taken by the State were motivated by a racially-based animus. That is, while Plaintiff clearly states that he is a black man who was not allowed to vote [Doc. 1, p. 3, ¶ 4; p. 8, ¶ 19], he does not provide a single statement accusing the State of engaging in actions motivated by the State's hostility towards black persons. Again, the only other individual whose race is mentioned by Plaintiff in the Complaint is the African American female polling commissioner who allegedly informed Plaintiff that he would not be allowed to vote based on the insufficient identification he presented to her. [Doc. 1, p. 3, n.1]. Given that Plaintiff has not alleged that the State engaged in discriminatory actions while motivated by a racially-based animus, Plaintiff cannot show that the State engaged in a race-based conspiracy. Furthermore, Plaintiff provides no specific details as to which Defendants participated in which actions. Instead, Plaintiff relies on conclusory allegations to establish his claims, which is insufficient for establishing a claim under Section 1985. *Arsenaux v. Roberts*, 726 F.2d 1022 (5th Cir. 1982). Therefore, Plaintiff has failed to state a claim under 42 U.S.C. § 1985 upon which relief may be granted, and his claim must be dismissed. Moreover, because a violation of 42 U.S.C. § 1986 is premised on a violation of 42 U.S.C. § 1985, the Section 1986 claims must be dismissed as well. *Mississippi Women's Med. Clinic v. McMillan*, 866 F.2d 788, 795 (5th Cir. 1989).

### d.  42 U.S.C. § 1988

Under 42 U.S.C. § 1988, a plaintiff who prevails in an action brought under §§ 1981, 1983, 1985 or 1986, *inter alia,* may be awarded attorneys' fees. 42 U.S.C. § 1988. Because Plaintiff has failed to establish any claims against the State under §§ 1981, 1983, 1985 and 1986,

he has accordingly failed to establish a Section 1988 claim.  Therefore, this Court should dismiss Plaintiff's Section 1988 claim.

### ii.   *Claims brought under the Voting Rights Act*

The preamble to the Voting Rights Act of 1965 establishes that the central purpose of the Act is "[t]o enforce the fifteenth amendment to the Constitution of the United States."  *Chisom v. Roemer*, 501 U.S. 380, 383, citing Pub.L. 89–110, 79 Stat. 437, 42 U.S.C. § 1973 *et seq.* (1964 ed., Supp. I).   Section 2 of the Voting Rights Act proscribes any "voting qualification or prerequisite to voting or standard, practice, or procedure ... which results in a denial or abridgement of the right of any citizen ... to vote on account of race or color."  52 U.S.C. § 10301(a).   Unlike discrimination claims brought pursuant to the Fourteenth Amendment, Congress has clarified that violations of Section 2(a) can "be proved by showing discriminatory effect alone." *Veasey v. Abbott*, 796 F.3d 487, 504 (5th Cir. 2015), citing *Thornburg v. Gingles*, 478 U.S. 30, 35 (1986); 52 U.S.C. § 10301(b).  To satisfy this "results test," Plaintiffs must show not only that the challenged law imposes a burden on minorities, but also that "a certain electoral law, practice, or structure interacts with social and historical conditions *to cause* an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Veasey*, 796 F.3d at 504, citing *Thornburg*, 478 U.S. at 47 (emphasis added).

As discussed hereinabove, Plaintiff has made no allegation that the State interfered with Plaintiff's right to vote on account of his race or color.  While Plaintiff emphasizes that he is a black man, his accusations against the Defendants, including the State, are based entirely on the Defendants' alleged negligence in failing to properly implement La. Rev. Stat. § 18:562. Furthermore, Plaintiff has not alleged (nor can he show) that the State engaged in any activities that "interact[] with social and historical conditions to cause an inequality in the opportunities

enjoyed by black and white voters to elect their preferred representatives." *Veasey*, 796 F.3d at 504, citing *Thornburg*, 478 U.S. at 47.   Simply put, in attempting to establish that he was discriminated against on account of his race or color, Plaintiff relies solely on the fact that he is black.   Because he has not set forth any allegations establishing that the State engaged in actions prohibited by the Voting Rights Act, Plaintiff has failed to state a cause of action under the Voting Rights Act upon which relief may be granted.

### iii.   *State Law Claims*

In his Complaint, Plaintiff has failed to invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear his state law claims. Regardless, under subsection 1367(c)(3), a court may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it has original jurisdiction.   Because Plaintiff has failed to establish claims under federal law upon which relief may be granted, this Court should decline to exercise jurisdiction over Plaintiff's remaining state law claims.   In the event this Court decides to retain jurisdiction over Plaintiff's state law claims, the State maintains that Plaintiff has failed to state a cause of action under state law upon which relief may be granted, as more thoroughly discussed hereinbelow.

### a.   <u>La. Civ. Code art. 2315</u>

La. Civ. Code art. 2315, a tort statute, provides, in pertinent part, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."   In order to prove a prima facie case in an action for damages allegedly caused by the tortious conduct of a defendant, the plaintiff must prove three things: fault, causation, and damages. *Zimmerman v. Progressive Sec. Ins. Co.*, 49,982 (La. App. 2 Cir. 8/12/15), 174 So.3d 1230, 1235, reh'g denied

16

(Sept. 24, 2015), citing *Pinkins v. Cabes,* 1998–1803 (La.App. 4 Cir. 01/27/99), 728 So.2d 523, *writ denied,* 1999–1242 (La. 07/18/99), 745 So.2d 32.

As stated hereinabove, Plaintiff has accused the State of violating his civil rights under Section 1983 on the grounds that the State "created through legislation the pictured identification requirement for registered voters in order to participate in the electoral process." [Doc. 1, p. 4, ¶ 5].  In essence, Plaintiff has asserted that the State was negligent in its creation of La. Rev. Stat. § 18:562.  Yet, Plaintiff provides no details as to how the creation of the legislation contributed to the violation of his civil rights.  To the extent Plaintiff is suggesting that the State is at fault for creating an unconstitutional statute, Plaintiff has set forth no facts establishing that the statute's application results in any violation of his constitutional rights.  Moreover, while Plaintiff notes that the polling commissioner rejected both forms of identification that Plaintiff presented to her, Plaintiff has not established that the identification he presented conformed to the specific requirements of La. Rev. Stat. § 18:562.  For example, Plaintiff has not alleged that either of the forms of identification he presented contained his signature, as is required by La. Rev. Stat. § 18:562(A)(2), nor has he claimed that he presented any of the forms of identification allowed by the statute (i.e., a Louisiana driver's license, a Louisiana special identification card, or other generally recognized picture identification card that contains the name and signature of the applicant).  Additionally, Plaintiff has not alleged that the form of identification presented to the polling commissioner consisted of "generally recognized picture identification."  That is, Plaintiff has not established that the condition of the photo on the identification was sufficient to allow a polling commissioner to identify Plaintiff as the person in the photo.

Finally,  Plaintiff complains that Defendants, including the State, required the use of picture identification in order to vote but failed to provide him with such identification. [Doc. 1,

p. 10, ¶ 27].  However, Plaintiffs has not alleged that he requested that the State provide him with additional identification and, again, Plaintiff has not set forth the he complied with the requirements of La. R.S. 18:562.  Therefore, Plaintiff has failed to establish that the State has a duty or authority to provide voters with photo identification.  Accordingly, Plaintiff has failed to state a cause of action under La. Civ. Code art. 2315 upon which relief may be granted, thus warranting dismissal of his lawsuit.

### b.  La. Civ. Code art. 2317

La. Civ. Code. art. 2317 provides, in pertinent part, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."  Plaintiff has not set forth any allegations that the State was "answerable" for any of the persons who allegedly participated in denying Plaintiff the ability to vote in the October 24, 2015, election.  The Parish Board of Election Supervisors is charged with selecting commissioners, and La. Rev. Stat. §§ 18:433 and 434 set forth the procedures by which the Board may select, remove, and disqualify commissioners.  The State plays no role in the selection or supervision of polling commissioners, who are responsible for enforcing La. Rev. Stat. § 18:562.   Thus, Plaintiff has failed to state a cause of action under La. Civ. Code art. 2317 upon which relief may be granted, and his lawsuit should be dismissed.

### c.  La. Rev. Stat. § 18:562

As discussed hereinabove, Plaintiff has not alleged that he presented to the polling commissioner "a Louisiana driver's license, a Louisiana special identification card issued pursuant to R.S. 40:1321, or other generally recognized picture identification card that contains the name and signature of the applicant," as is required under La. Rev. Stat. § 18:562.  Again,

while Plaintiff notes that the polling commissioner rejected both forms of identification that he presented to her, he has not established that the identification he presented conformed to the specific requirements of La. Rev. Stat. § 18:562.  For example, Plaintiff has not alleged that either of the forms of identification he presented contained his signature, as is required by La. Rev. Stat. § 18:562(A)(2), nor has he claimed that he presented any of the forms of identification allowed by the statute.   In addition, Plaintiff has not alleged that the form of identification presented to the polling commissioner consisted of "generally recognized picture identification." That is, Plaintiff has not established that the condition of the photo on the identification was sufficient to allow a polling commissioner to identify Plaintiff as the person in the photo. Moreover, Plaintiff has not indicated that he attempted to or was not offered the opportunity to "complete and sign an affidavit," which he is allowed to do pursuant to La. Rev. Stat. § 18:562 (A)(2) in lieu of presenting identification.   Accordingly, Plaintiff has failed to state a cause of action under La. Rev. Stat. § 18:562 upon which relief may be granted, and his lawsuit should be dismissed.

### iv.  *Claim for Injunctive Relief*

A plaintiff seeking injunctive relief based on an alleged past wrong must show that there is a real or immediate threat that he will be wronged again.  *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997), citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  First of all, for all the reasons discussed hereinabove, Plaintiff has failed to prove the existence of a "past wrong" (i.e., cause of action) that could form the basis for the injunctive relief Plaintiff is seeking.  Moreover, Plaintiff has not set forth any facts showing that he is in danger of suffering another alleged violation of his right to vote in the immediate future.  For example, Plaintiff has not indicated that in the imminent future, an election will take place during

which he may be subjected to the same actions that form the basis of the instant lawsuit. Because Plaintiff has provided absolutely no facts to establish his claim for injunctive relief, this Court should dismiss that claim.

### v. *Remaining Claims*

Plaintiff's remaining claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for the following reasons:

- 18 U.S.C. § 96 is not a statute that has been enacted;

- 42 U.S.C. § 207(a) pertains to the grades and ranks that are given to certain commissioned officers and is entirely irrelevant to the instant matter;

- 42 U.S.C. § 407(a) pertains to the assignment of social security benefits and is entirely irrelevant to the instant matter; and

- 42 U.S.C. §1915 is not a statute that has been enacted.

## V.   <u>CONCLUSION</u>

The State of Louisiana prays that its Motion to Dismiss pursuant Fed. R. Civ. P. 12(b)(1) and 12(b)(6) be granted and that this Court dismiss Plaintiff's claims against the State with prejudice at Plaintiff's cost.

**SHOWS, CALI & WALSH, L.L.P.**

 */s/ Grant J. Guillot*
E. Wade Shows, La. Bar Roll No. 7637
John C. Walsh, La. Bar Roll No. 24903
Grant J. Guillot, La. Bar Roll No. 32484
Kathryn A. Dufrene, La. Bar Roll No. 35759
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, Louisiana 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-1467
*Attorneys for Defendant, the State of Louisiana*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 7$^h$ day of January, 2016, a copy of the foregoing has this date been served upon all parties through their respective counsel of record by operation of the Court's electronic filing system and has been filed electronically with the Clerk of Court using the CM/ECF system.  A copy of the foregoing has been mailed to the following:

Johnny Duncan
P.O. Box 723
Amite, LA 70422

<u>    *s/ Grant J. Guillot*    </u>
GRANT J. GUILLOT