UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JOHNNY DUNCAN**                                              **CIVIL ACTION**

**VERSUS**                                                     **NO. 15-5486**

**LOUISIANA STATE, ET AL.**                                    **SECTION "B"(1)**

ORDER AND REASONS

Before the Court is Defendant Tangipahoa Parish's (hereinafter "Defendant" or "the Parish") motion to dismiss the complaint against it for failure to state a claim upon which relief can be granted. (Rec. Doc. No. 9). Plaintiff, Johnny Duncan (hereinafter "Plaintiff" or "Duncan"), representing himself *pro se*, timely filed an opposition to the motion. For the reasons set forth below,

**IT IS ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case centers upon the fundamental right to vote. Plaintiff alleges that a polling employee of the Tangipahoa Parish Clerk of Court and Clerk Julian DuFreche denied him the right to vote in the primary election occurring on October 24, 2015. (Rec. Doc. No. 1 at 8). This despite the fact that he presented two forms of government-issued identification, including a "picture identification." (Rec. Doc. No. 1 at 8). In total, Duncan asserts claims against eight (8) separate defendants for their alleged

roles in the denial of his voting rights. He seeks $1,000,000,000 in punitive and actual damages plus a court order requiring Louisiana's Registrars to issue photo identification cards to all registered voters for use in federal, state, and local elections. (Rec. Doc. No. 1 at 4-7, 11). Relevant for the purposes of deciding this motion are Duncan's claims against the Parish,[1] the Registrar of Voters Office, and the Registrar of Voters, John Russell.

Among other things, Duncan asserts that the Registrar of Voters is tasked with providing registered voters with an identification card that satisfies the requirements for voting in state and federal elections. (Rec. Doc. No. 1 at 6-7). He further alleges that no such photo identification card was issued to him by the Registrar's Office. (Rec. Doc. No. 1 at 6). As a result, Duncan was forced to present other forms of identification that were allegedly deemed unacceptable by polling employees. (Rec. Doc. No. 1 at 8). Additionally, Duncan claims that the Parish "anointed" the Registrar, that the Parish "controls the purse strings" for the Registrar's Office, and that the Parish "failed to provide the [Registrar] with the resources and oversight to insure that it issued a voter identification card that complied with [La. R.S. § 18:562]." (Rec. Doc. No. 1 at 5). In essence, Duncan's primary claim against the Parish is that it failed to

---

[1] In the Plaintiff's complaint, the Parish is improperly referred to as the "Tangipahoa Parish Counsel."

provide the necessary oversight and funding for its "employee," the Registrar, to issue the required photo identification cards to all registered voters. Finally, his complaint and opposition vaguely refer to a conspiracy by Louisiana's governmental entities to prevent him from voting. (Rec. Doc. No. 1 at 2; Rec. Doc No. 12 at 8).

The Parish has moved to dismiss the claims against it pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Rec. Doc. No. 9). Generally, the movant contends that "[c]laims against the Parish should be dismissed because parish governments do not conduct elections." (Rec. Doc. No. 9-1 at 1). While the motion to dismiss briefly discusses the governmental entities responsible for certain aspects of elections, it neglects Plaintiff's primary argument: that the Parish failed to provide the resources and oversight necessary to ensure that adequate identification cards were issued to voters. Instead, the Parish asserts without support that it "has no authority to supervise the Registrar after initial appointment." (Rec. Doc. No. 9-1 at 3 note 1). Additionally, while ignoring the obvious crux of Plaintiff's claims against it, the Parish asserts that Plaintiff did not allege that "he was denied the right to vote in the October 24 election due to lack of funding." (Rec. Doc. No. 9-1 at 2). The Parish also completely ignores the Plaintiff's conspiracy claim, instead asserting that

"Plaintiff has sued the Parish by mistake." (Rec. Doc. No. 9-1 at 3).

## II. LAW AND ANALYSIS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party can move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such motions are viewed with disfavor and rarely granted. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)). When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 1949 (2009)) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, *pro se* complaints are "construed liberally," *Johnson v. Watkins*, 999 F.2d 99, 100 (5th Cir. 1993), and they are "held to less stringent standards than formal pleadings drafted by

lawyers." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Miller v. Stanmore*, 636 F.2d 986, 987 (5th Cir. 1981)). Nevertheless, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *S. Christian Leadership Conference v. Supreme Court of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001)).

### a. Plaintiff's Voter Identification Card Claim

Duncan has not cited, and we do not find, relevant authority requiring the Registrar of Voters to issue photo identification cards to all registered voters for use in federal and state elections. Louisiana's election laws contain a few references to "voter identification cards," such as the requirement that the registrar "mail a new voter identification card to the voter" after address changes are made in the registration system. LA. STAT. ANN. § 18:192(A)(1)(b). That same statute also requires the "parish governing authority" to "provide to the registrar of voters the funding necessary for the mailing of new voter identification cards in the conduct of [a] canvass." LA. STAT. ANN. § 18:192(B). However, there is no mandate that the voter identification cards contain photographs of voters.

Additionally, the statute covering "prerequisites to voting" lists the forms of identification that voters may use to identify themselves, and it does not include any reference to voter

identification cards issued by the registrar, further indicating that no such requirement exists. LA. STAT. ANN. § 18:562(A)(2). Section 18:562 also does not *require* a photo identification card to vote. Importantly, an individual who does not have the type of identification listed in the statute would still be entitled to vote by signing an affidavit to that effect. LA. STAT. ANN. § 18:562(A)(2). Thus, there is no reason that the Registrar would need to provide photo identification cards to registered voters because photo identification is not an absolute requirement for voting.

In fact, Plaintiff seems to concede that this requirement does not currently exist by asking this Court to issue such a mandate in his prayer for relief. (Rec. Doc. No. 1 at 11). While this Court can understand Plaintiff's motivation, the question of whether or not such a requirement should exist is a political one. If Plaintiff truly desires that this duty be imposed upon Louisiana's Registrars, then he must seek such relief through the political process.

Despite the overall inadequacy of the Parish's motion to dismiss and memorandum in support, this Court cannot permit Plaintiff to maintain this claim because the duty he claims the Parish breached does not actually exist. The primary issues in this litigation are what did and did not occur at Plaintiff's polling place on the day in question, not why the State failed to

provide photo identification to Plaintiff. Plaintiff does not specifically allege that the Parish played any role in the alleged rejections of Plaintiff's identification on election day. Rather, he alleges in conclusory fashion a vast conspiracy involving the Parish and others.

### b. Plaintiff's Conspiracy Claim

"The elements of civil conspiracy [under § 1983] are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v.* Lyford, 171 F.3d 330, 340 (5th Cir. 1999), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). To defeat a motion to dismiss, Plaintiff's complaint only need plead facts that, taken as true, satisfy each element.

Here, Plaintiff's complaint only references a conspiracy in the most general terms, claiming that the basis for his claim is a "conspiracy to deprive African American male plaintiff of the Right to vote." (Rec. Doc. No. 1 at 1). His memorandum in opposition to the present motion then devotes two paragraphs to the alleged conspiracy without detailing any factual allegations. (Rec. Doc. No. 12 at 7-8). In particular, Plaintiff fails to meet the second element of the standard by not providing allegations of specific actions taken by the defendants with the specific intent

to deny him the right to vote. Plaintiff only provides this Court with legal conclusions masquerading as factual allegations.

Nevertheless, "court[s] should freely give a complainant, especially a *pro se* complainant, leave to amend defective allegations in a pleading." *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995). The appropriate remedy in this situation is to "grant the *pro se* litigant an opportunity to amend the complaint before it is dismissed." *Shiell v. Rowan*, 2015 WL 750705, No. 14-214, at *7 (E.D. La. Feb. 20, 2015) (citing *Brewster v. Dretke*, 587 F.3d 764, 767-78 (5th Cir. 2009)). In this case, Plaintiff could potentially amend his complaint in two ways: (1) to sufficiently plead a § 1983 civil conspiracy claim; and/or (2) to specifically plead facts demonstrating that the Parish played a role in the rejection of his two forms of identification (and the refusal to permit him to utilize the affidavit option) at the polling location.

### III. CONCLUSION

In light of the foregoing,

**IT IS ORDERED** that the motion is **GRANTED** in part and **DENIED** in part. Plaintiff's claims against the Defendant based upon the Registrar's failure to provide a photo identification card for use in state and federal elections are **DISMISSED**. However, with respect to all other claims raised by Plaintiff, the motion to dismiss is **DENIED WITHOUT PREJUDICE** to reurge.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file an amended complaint in accordance with the discussion above. Plaintiff shall file the amended complaint no later than fourteen (14) days after the date of this order. **FAILURE TO TIMELY AND EFFECTIVELY COMPLY WITH THIS ORDER WILL RESULT IN FINAL DISMISSAL WITHOUT NEED OF FURTHER NOTICE.**

New Orleans, Louisiana, this 11th day of January, 2016.

UNITED STATES DISTRICT JUDGE