UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY DUNCAN<br>**Plaintiff** | CIVIL ACTION NO. 15-5486 |
| VERSUS | SECTION: "B" |
| STATE OF LOUISIANA, LOUISIANA SECRETARY OF STATE OFFICE, SECRETARY OF STATE TOM SCHEDLER, TANGIPAHOA PARISH COUNSEL, TANGIPAHOA PARISH CLERK OF COURT OFFICE, CLERK JULIAN DUFRECHE, TANGIPAHOA PARISH REGISTRAR OF VOTERS OFFICE, AND TANGIPAHOA PARISH REGISTRAR OF VOTERS JOHN RUSSELL<br>**Defendants** | JUDGE: IVAN L.R. LEMELLE<br><br>MAG.: SALLY SHUSHAN<br><br>TRIAL BY JURY DEMANDED |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
RULE 12(b)(6) MOTION TO DISMISS COMPLAINT FOR
FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED, RULE 12(f) MOTION TO STRIKE AND RULE 12(b)(1)
<u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

Defendants, Tangipahoa Parish Clerk of the Court Office ("Tangipahoa Clerk of Court") and Tangipahoa Parish Clerk of Court, Julian Dufreche, individually and is his official capacity ("Dufreche"), supplement their prior Memorandum in Support of Motion to Dismiss to address the plaintiff's Amended Complaint (Rec. Doc 50) filed on January 28, 2016. The Amended Complaint still fails to state claims for relief under 42 U.S.C. §1983 for alleged violations of the 14th and 15th Amendment of the U.S. Constitution and 42 U.S.C. §1915, 42 U.S.C. §1981, 42 U.S.C. §1983, 42 U.S.C. §1985, 42 U.S.C. §1986, 42 U.S.C. §1988, the Civil Rights act of 1866 and 1964 and the Voting Rights Act of 1965.

The official capacity claims against Dufreche should also still be dismissed, as they are duplicative of the claims against the Tangipahoa Clerk of Court.

All claims in in the Complaint, as amended, for punitive damages against the Clerk of Court and Dufreche in his official capacity should be struck pursuant to F.R.C.P. 12(f).

Since the Plaintiff's Complaint, as amended, still fails to state claims upon which relief can be granted under any federal laws or constitutional provisions, the state law claims under La. R.S. 18:562, La. Civ. Code Art 2315 and La. Civ. Code Article 2317 should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

A.  **FAILURE TO STATE A CLAIM**

  i)  <u>**Civil Conspiracy Claims – 42 U.S.C. §1985**</u>

On January 28, 2016, plaintiff, Johnny Duncan, filed an Amended Complaint. (Rec. Doc. 50), alleging that some of the 10 defendants in this matter conspired to deprive him of the right to vote in the Louisiana primary election on October 24, 2015 because he is a black male. (Rec. Doc. 50, Preamble and ¶2) The Amended Complaint was filed after the court found that plaintiff's original complaint failed to sufficiently state a claim for a civil conspiracy under 42 U.S.C. §1983. (Court's Order and Reason's dated January 12, 2016, Rec. Doc. 43 pgs. 7-8). In reaching its prior conclusion, the court noted that the plaintiff's Original Complaint i) only referenced a conspiracy in the most general terms, ii) failed to detail any factual allegations supporting the conspiracy claim and iii) did not provide any allegations of specific actions taken by the defendants with the specific intent to deny him the right to vote. The Amended Complaint does not cure the defects which existed in the Original Complaint regarding the civil conspiracy claim. It, thus, still fails to state a civil conspiracy complaint under §1983.

There is still an absence of allegations in the Amended Complaint regarding i) which defendants acted in concert with each other to commit an unlawful act, ii) which defendants agreed amongst themselves to inflict a wrong on Mr. Duncan, iii) what act any defendant engaged in as part of the conspiracy, iv) when the agreement amongst the defendants was reached, v) the terms of the agreement, vi) the reason for the agreement or vii) how the agreement was to be carried out. For these reasons, and the reasons set forth in Dufreche and the Clerk of Court's Memorandum in Support of their Original Motion to Dismiss, the plaintiff's civil conspiracy claims should be dismissed for failure to state a claim upon which relief can be granted.

    **ii)**     <u>**Deprivation of Right to Vote**</u>

    **a) General Allegations**

In addition to asserting a claim for the conspiracy to deprive him of the right to vote, Duncan also alleges in his Amended Complaint that he was deprived of and denied the right to vote because he is a black male. (Rec. Doc. 50, Preamble, pg. 2). Mr. Duncan provides no explanation in his Amended Complaint for how he arrives at the conclusion that what allegedly happened to him on October 24, 2015, happened because he is a black male.

In his Amended Complaint, Mr. Duncan alleges that when he went to vote on October 24, 2015, he presented voting commissioner Patricia Hughes-Sims with a U.S. Government issued picture identification card which bore his printed name and his signature. (Rec. Doc 50 ¶18). Mr. Duncan alleges that the printed name and signature on the government issued identification were legible. (Rec. Doc. 50 ¶18). He does not allege that the picture on the government was legible. Mr. Duncan also claims that he presented Ms. Hughes with a Veterans Department identification card with his printed name and

signature. There is no allegation that the Veterans Department card had a picture on it. (Rec. Doc ¶19). Mr. Duncan does not allege that the government issued identification and the Veterans Department card met the identification requirements set forth in LSA-R.S. 18:562 and, hence, he does not allege compliance with that state law.

In the Amended Complaint, there is no allegation regarding what Commissioner Hughes did or said after being presented with the two aforementioned identifications. Instead there is only the factual allegation that Ms. Hughes did not read Mr. Duncan's name and then the conclusion that she "denied [him] the right to vote because of his skin-color and/or gender and race. (Rec. Doc. 50 ¶21). Mr. Duncan's Amended Complaint jumps from the allegation that he gave Commissioner Hughes two forms of identification to the conclusion that Commissioner Hughes denied Duncan the right to vote because he is a black male. There are no facts supporting forth the basis for that leap.

There is a complete lack of alleged facts to support the conclusion that Duncan was denied the right to vote because he was black or because he was a male. There is nothing more than an allegation that Duncan was a black male, that he was deprived of the right to vote and that what happened to him was either because he was black or a male. There have to be allegations linking these independent facts to the asserted conclusion. Those facts cannot simply be assumed. In addition to being black male, Duncan was a number of other things, including a military veteran, disabled, an author, and a poet. It is no more appropriate to assume that he was denied the right to vote because he was those things, than it is to blindly assume he was denied the right because he was black.

Mr. Duncan does not allege that he was treated differently than other similarly situated voters. He does not allege that he was required to provide more than non-black

voters were required to provide, or that a non-black voters who presented the identical forms of identification that he provided were allowed to vote.

In regards to Dufreche and the Clerk of Court, the question is what do the allegations against voting commissioner Hughes, who allegedly deprived Duncan of the right to vote, have to do with Dufreche or the Clerk of Court. The answer is nothing.

### b) Allegations against Dufreche and Clerk of Court

In regards to Dufreche and the Clerk of Court, Duncan alleges that:

1. The Clerk of Court was delegated authority to oversee and enforce voting requirements in Tangipahoa Parish; (Rec. Doc. 50 ¶10)
2. The Clerk of Court's place of business was used to train voting commissioners; (Rec. Doc. 50 ¶10)
3. The Clerk of Court's place of business was used to convene meetings of the Tangipahoa Parish Board of Election Supervisors; (Rec. Doc. 50 ¶ 10)
4. The Clerk of Court handles the day-to-day business of the Board of Election Supervisors; (Rec. Doc. 50 ¶10)
5. Dufreche is mandated to supervise the conduct of elections in Tangipahoa Parish; (Rec. Doc. 50 ¶11)
6. Dufreche appoints a member of the Board of Election Supervisors (Rec. Doc. 50 ¶11);
7. Dufreche chairs the Board of Election Supervisors (Rec. Doc. 50 ¶ 11)
8. Dufreche participated in meetings of the Board of Election Supervisors in September and October 2015 (Rec. Doc. ¶11)

9. Dufreche attended training sessions for voting commissioners on September 16 and 17, 2015 (Rec. Doc. ¶11).

Duncan does not allege that Commissioner Hughes was an employee of Dufreche or the Clerk of Court. Instead, he alleges in his Amended Complaint that the Voting Commissioner was an employee of the State of Louisiana. (Rec. Doc. 50, ¶6, pg. 3). Even if Hughes was an employee of Dufreche or the Clerk of Court, which he was not, there is no vicarious liability for 42 U.S.C. §1983 claims. *Hardesty v. Waterworks District No 4 of Ward Four* 954 F.Supp. 2d. 461 (W.D. La. 2013). *Connick v. Thompson* 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L.Ed. 2d 417 (2011).

There is no allegation that Dufreche, or, for that matter, any employee or representative of the Clerk of Court's office, was at the voting location in question, when Duncan went to vote on October 24, 2015. There is no allegation that Dufreche, participated in the alleged denial of Duncan's right to vote at the polling location on October 24, 2015.

In order to assert a valid §1983 claim against Dufreche in his individual capacity, a claimant must establish that the Dufreche was either personally involved in the constitutional deprivation or that his wrongful actions were causally connected to the deprivation. *Jones v. Lowndes County Miss.*, 678 F.3d 349 (5th Cir. 2012). There are no such alleged wrongful actions on the part of Dufreche. Further, qualified immunity protects Dufreche for liability in his individual capacity unless his individual conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. In his Amended Complaint, Mr. Duncan does not allege any specific conduct

on the part of Dufreche that violated clearly established statutory or constitutional rights of anyone.

Duncan alleges that Dufreche and the Clerk of Court are mandated to supervise the conduct of elections in Tangipahoa Parish. That is not a factual allegation, but rather the assertion of an erroneous legal conclusion. LSA R.S. 18:423 created the Board of Election Supervisors for Tangipahoa Parish and specified that it is that Board, which is charged with responsibility for supervising the preparation for and conduction of all elections held in Tangipahoa Parish. *La. Op. Atty. Gen* No. 97-53, 4/9/97 (Parish board of Election Supervisors is authorized by law to oversee all parish elections). Moreover, a supervisor is not personally liable for actions of a subordinate in which he had no involvement. *Jones . Lowndes County*, supra at 350.

Regardless of which entity is responsible for supervising and conducting elections in the Parish, there is no allegation that entity breached any obligations or duties in connection with that role. In other words, even if we accept Mr. Duncan's erroneous legal conclusion (i.e. that the Clerk of Court was mandated to supervise the conduct of elections in Tangipahoa Parish), there is no allegation that the Clerk of Court breached its duty in that regard.

Similarly, Mr. Duncan fails to link the allegation that voting commissioners were trained in the Clerk of Court's place of business to the alleged deprivation of his civil rights. He also makes no connection between the convening of Election Board of Supervisors meetings in the Clerk of Court's place of business to the claims he has asserted in this matter.

By state law, Dufreche is one of the members of the Election Board of Supervisors. That fact alone does not render him liable §1983 claims arising out of the alleged acts of a voting commissioner. See LSA-R.S. 18:423 (specifying that the Board shall be composed of the Registrar of Voters, the clerk of court, the chairman of the parish executive committee of each recognized political party and a person appointed by the governor). As noted above, there is no vicarious liability for §1983 claims.

There is no allegation that Commissioner Hughes did not meet the requirements to be an appointed voting commissioner as set forth in LSA-R.S 18:425. There is no allegation that Mr. Dufreche did anything inappropriate in his role as a member of the Election Board of Supervisors. There is no allegation that the Board of Election supervisors did anything wrong in appointing Ms. Hughes.

There is an allegation that Dufreche attended meetings of the Parish Board of Election Supervisors. Of course he did, as that was his obligation as a member of that board. Attendance at meetings of the Board of Election Supervisors, as required by state law, does not establish a cause of action against Dufreche. Plaintiff does not allege that Dufreche did anything inappropriate while attending such meetings, or that he failed to do anything that he was supposed to do in his capacity as a member of the Board of Election Supervisors.

According to Louisiana law, a clerk of court's responsibility with regard to polling commissioners such as Ms. Hughes is to conduct a general course of instruction for commissioners. LSA-R.S. 18:431. In his Amended Complaint, Duncan does not allege that Dufreche failed to fulfill that responsibility. Indeed, he alleges just the opposite by asserting that Dufreche "personally attended training sessions for the voting commissioners on September 16 and September 17, 2015." (Rec. Doc. 50 pg. 6,¶11). There is no alleged

connection between Dufreche's attendance at training sessions for voting commissioners and the subsequent alleged actions of Commissioner Hughes.

Towards the end of his Amended Complaint, Duncan makes the conclusory allegation that Dufreche and the Clerk of Court had a contractual relationship with Duncan. (Rec. Doc. ¶24, pg. 9). There are no facts alleged to support that conclusion and, hence, no claim has been stated for breach of contract.

### c) 42 U.S.C. § 1981

For an Equal Protection claim, a plaintiff must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *McFaul v. Valenzuela* 684 F. 3d 564, 577 (5th Cir 2012). There must be allegations of purposeful discrimination based on race. *Blair v. Philadelphia Housing Authority* 609 F.Supp. 276 (E.D. Penn 1985). There are no allegations in the Amended Complaint that Dufreche and the Clerk of Court purposefully discriminated against Duncan because he was black. There is the conclusory allegation of discrimination by a voting commissioner, but no facts even supporting that conclusion.

### d) 42 U.S.C. §1983 – General

As pointed out by the State in its briefing, a claim under 42 U.S.C. §1983 must rest upon a denial of rights secured under Federal law, not state law. See *Casteallno v. Fragazo*, 352 F.3d 939, 942 (5th Cir 2003.) As such, claims under Louisiana Civil code Article 2315 and 2317 do not support Mr. Duncan's §1983 claims.  Similarly, even if there were allegations of breach of the voter identification law in Louisiana (LSA-R.S. 18:562) in the state election at issue, that does not support §1983 claims.

### e) 42 U.S.C. §1983 – Due Process

For a Fourteenth Amendment Substantive Due Process Claim against Dufreche or the Clerk of Court, Duncan has to assert that those defendants deprived him of a constitutionally protected life, liberty or property. In his Amended Complaint, Duncan has not alleged that Dufreche or the Clerk of Court undertook action to deprive Mr. Duncan of anything. For a procedural due process claim, Duncan has to assert a property interest that was arbitrarily terminated or terminated without a hearing and an opportunity to be heard. Plaintiff has not made an allegation that Dufreche or the Office of Clerk of Court deprived him of a property right without due process.

### f) 42 U.S.C. §1983 – Privileges and Immunities

Duncan has not validly asserted a valid privileges and immunities claims. The election at issue was a state election for state officers. The right to vote for state officers is a right or privilege of state citizenship, not of national citizenship, which alone is not protected by the Privileges and Immunities Clause. *Mitchell v. Beaumont Independent School Dist.* 1:05-cv 195, 2006 W.L. 2092585 at *15-16, 2006 U.S. Dist. Lexus 55862 at *48-49 (E.D. Tx. 7/24/2006).

### g) Fifteenth Amendment of the U.S. Constitution

The Fifteenth Amendment of the U.S. constitution provides that the rights of citizens of the United States shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition or servitude. There are insufficient allegations in the Amended Complaint to establish that Dufreche or the Clerk of Court denied Duncan the right to vote because of his race.

### h) Voting Rights Act

The Voting Rights Act protects the right to vote guaranteed by the Fifteenth Amendment of the Unites States Constitution. The Voting Rights Act prohibits any practice or procedure which, either by design or effect, operates to deny or impair the right to vote in any election, federal or state, solely because of an otherwise qualified elector's race, color or previous condition of servitude. *Gremillion v. Rinaudo* 325 F.Supp. 375 (W.D. La. 1971). As explained above, Mr. Duncan's has alleged that he was denied the right to vote either because he was a black or because he was a male. Mr. Duncan provides no facts in support of his conclusions. His Complaint, as amended, does not state a claim for relief under the Voting Rights Act.

### B. OFFICIAL CAPACITY CLAIMS ARE DUPPLICATIVE OF CLAIMS AGAINST CLERK OF COURT

Since a suit against a governmental official in his official capacity is simply another way of alleging liability of the office he holds, claims against such individuals in their official capacities are redundant and should be dismissed.

### C. PUNITIVE DAMAGE CLAIM AGAINST CLERK OF COURT AND DUFRECHE IN HIS OFFICIAL CAPACITY SHOULD BE STRUCK

Punitive damages are not recoverable from the Clerk of Court or from Dufreche in his official capacity. In the Amended Complaint, Mr. Duncan seems to abandon his prayer for punitive damages as he prays for only compensatory damages, pain, suffering, mental anguish and public embarrassment and humiliation. (Rec. Doc., Prayer for Relief, pg. 10). Out of an abundance of caution, Dufreche, in his official capacity, and the Clerk of Court, request that any claim in the Amended Complaint for punitive damages be struck.

### D. LACK OF SUBJECT MATTER JURISDICTION

Since plaintiff's Complaint, as amended, still fails to properly state a claim for relief under the U.S. Constitution or any federal laws, all of plaintiff's federal claims should be dismissed. Once those claims are dismissed, there will be no basis for jurisdiction over the state law claims, so those claims should be dismissed as well.

### CONCLUSION

Since the Complaint, as amended, still fails to state claims for which relief can be granted, it should be dismissed. Additionally, the claims against Dufreche in his official capacity should be struck since those claims are duplicative of the claims against the office that he holds (i.e. Clerk of Court). Punitive damages are not recoverable against Dufreche in his official capacity or against the Clerk of Court, so those claims should also be struck. Finally, since the Complaint fails to state claims under any federal statute or constitutional provision, the remaining state claims should be dismissed for lack of subject matter jurisdiction.

HUVAL VEAZEY FELDER & RENEGAR, LLC

/S/ THOMAS H. HUVAL
**THOMAS H. HUVAL (#21725)**
Stefini W. Salles (#25857)
532 East Boston Street
Covington, Louisiana 70433
Telephone:  (985) 809-3800
Facsimile:  (985) 809-3801
Email:  thuval@hvfr-law.com

**Attorneys for Tangipahoa Parish Clerk of the Court Office and Tangipahoa Parish Clerk of Court, Julian Dufreche**

**CERTIFICATE OF SERVICE CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing pleading was electronically filed with the Clerk of Court by using the CM/ECF system. A Notice of this electronic filing will be sent by the Court to all counsel of record who have consented to email notification and electronic service and will be sent to Johnny Duncan, *pro se,* via United States mail, properly addressed and stamped. This document is available for viewing and downloading from the Court's ECF system.

      Covington, Louisiana this 23rd day of February, 2016.

                                        /S/ *Thomas H. Huval*
                                        THOMAS H. HUVAL