UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHNNY DUNCAN                                               CIVIL ACTION

VERSUS                                                      NO. 15-5486

LOUISIANA STATE, ET AL.                                     SECTION "B"(1)

ORDER AND REASONS

    Before the Court are numerous motions to dismiss. The State of Louisiana, the Louisiana Secretary of State Office, and Secretary of State Tom Schedler (collectively "the State Defendants") filed motions to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rec. Docs. 52, 53. The Tangipahoa Parish Registrar of Voters Office and Registrar of Voters John Russell (collectively "the Registrar Defendants") also filed motions to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rec. Docs. 27, 28. The Tangipahoa Parish Clerk of Court Office and Clerk of Court Julian Dufreche (collectively "the Clerk of Court Defendants") filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) as well as a motion to strike under Rule 12(f). Rec. Doc. 29. *See also* Rec. Doc. 57. Finally, Tangipahoa Parish ("the Parish") filed a motion to dismiss under Rule 12(b)(6). Rec. Doc. 54. The Court will collectively refer to all of the above-mentioned defendants as "Movants." Plaintiff, Johnny Duncan (hereinafter "Duncan" or "Plaintiff"), representing himself *pro se*, filed oppositions

1

relevant to each motion—all of which present essentially the same arguments and adopt by reference their predecessors.[1] For the reasons outlined below,

**IT IS ORDERED** that the Parish's motion to dismiss (Rec. Doc. 54) is **GRANTED.**

**IT IS FURTHER ORDERED** that the State Defendants' motion to dismiss under Rule 12(b)(6) (Rec. Doc. 53) is **GRANTED,** and their motion to dismiss under Rule 12(b)(1) (Rec. Doc. 52) is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that the Registrar Defendants' motion to dismiss under Rule 12(b)(6) (Rec. Doc. 28) is **GRANTED,** and their motion to dismiss under Rule 12(b)(1) (Rec. Doc. 27) is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that the Clerk of Court Defendants' motion (Rec. Doc. 29) is **GRANTED** in part and **DISMISSED AS MOOT** in part, granted in all parts except for the motion to strike which is now moot.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As this Court addressed previously, the above-captioned matter arises out of Plaintiff allegedly being denied the right to vote in a Louisiana primary election in October 2015. *See* Rec.

---

[1] According to Plaintiff, the "gravamen of the issue is that the law was '*clearly established*' and '*well-settled*' enough on October 24, 2015 that Voting Commissioner Patricia Hughes-Sims knew or should have known that it was illegal for her to deny plaintiff the right to vote." Rec. Doc. 58 at 5. *See also* Rec. Docs. 41, 46, 60, and 59.

Doc. 43. In a prior Order and Reasons, this Court granted in part and denied in part Tangipahoa Parish's motion to dismiss, dismissing some of Plaintiff's claim while giving him the opportunity to amend his complaint to more adequately plead his allegations. Rec. Doc. 43 at 8-9. Prior to the issuance of that Order and Reasons, and while the Parish's original motion to dismiss was under consideration, the above-listed defendants also filed motions to dismiss. Plaintiff then filed an amended complaint on January 28, 2016. Following Plaintiff's filing of the amended complaint, the Court issued an Order permitting the other defendants to file supplemental memoranda, if necessary, to address the amended complaint in the context of their pending motions to dismiss.

Plaintiff's amended complaint provides a few additional facts pointing out the relationships between the named defendants and explaining their roles in implementing Louisiana Revised Statute § 18:562. *See* Rec. Doc. 50. However, Plaintiff failed to heed this Court's advice by identifying the factual underpinnings of the vaguely alleged conspiracy to deny him of his rights on account of his race. *See* Rec. Doc. 50. In addition to the above-mentioned changes, Plaintiff also added two defendants—the Tangipahoa Parish Board of Election Supervisors and Voting Commissioner Patricia Hughes-Sims. Rec. Doc. 50 at 7. The Court will analyze all of the pending motions to dismiss in light of this amended complaint. *See*

3

*King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

## II.  LAW AND ANALYSIS

Plaintiff begins his amended complaint, as he did his original complaint, by listing thirteen federal and state laws and constitutional provisions that he believes provide him causes of action and justify damages in the amount of $1,000,000,000.00. Rec. Doc. 50 at 1, 10. He goes on to assert factual allegations regarding each defendant without clearly connecting them to the different causes of action.[2]

The different defendants rely on numerous grounds for dismissing the claims against them. However, each defendant primarily relies upon Rule 12(b)(6) of the Federal Rules of Civil procedure.[3] Due to the number of defendants seeking dismissal and for simplicity's sake, the Court will walk through each of Plaintiff's alleged grounds for relief, discussing as needed how

---

[2] One defendant claims that the Court should not consider the amended complaint because it was filed two days after the Court-imposed deadline. Rec. Doc. 54-1 at 3. However, as Plaintiff is a *pro se* litigant without access to the electronic filing system, the Court will consider the amended complaint.

[3] Five of the defendants also rely upon Eleventh Amendment sovereign immunity grounds to dismiss some or all of the claims against them. *See* Rec. Docs. 27, 52. Five also rely on lack of subject matter jurisdiction over pendent state law claims after arguing for dismissal of all federal law claims. *See* Rec. Docs. 53 at 10; 57 at 12.

4

each ground applies generally, and then, if necessary, how each applies to the relevant defendants.

### a. Rule 12(b)(6) Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party can move to dismiss a complaint for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 1949 (2009)) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

However, *pro se* complaints are "construed liberally," *Johnson v. Watkins*, 999 F.2d 99, 100 (5th Cir. 1993), and they are "held to less stringent standards than formal pleadings drafted by lawyers." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Miller v. Stanmore*, 636 F.2d 986, 987 (5th Cir. 1981)). Nevertheless, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to prevent a motion to dismiss." *Id.* (quoting *S. Christian Leadership Conference v. Supreme Court of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001)).

### b. Federal Law Claims

The initial paragraph of Duncan's amended complaint generally invokes several federal laws and constitutional provisions, which the Court will use as a guide for navigating Plaintiff's claims. Rec. Doc. 50 at 1.

#### 1. 42 U.S.C. § 1915

Section 1915 of Title 42 is no longer part of the United States Code. In all likelihood, Plaintiff meant to cite 28 U.S.C. § 1915, which addresses litigants proceeding in forma pauperis. Nevertheless, that statute does not provide Plaintiff a right of action. Accordingly, any claims under either statute against the Movants are hereby dismissed.

#### 2. 42 U.S.C. § 1981[4]

Section 1981 guarantees all persons in every State the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws." "To establish a claim under § 1981, a plaintiff must allege facts in support of

---

[4] The Court will not individually address Plaintiff's claim under the Civil Rights Act of 1866 because the substantive rights portion of that Act is now codified at 42 U.S.C. §§ 1981-1982. *Sanders v. Dobbs Houses, Inc.*, 431 F.2d 1097, 1098 (5th Cir. 1970). As Plaintiff explicitly invokes § 1981 and not § 1982, this Court's discussion of § 1981 proves sufficient to address Plaintiff's claims under the 1866 Act.

6

the following elements: (1) that the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994). Here, with respect to all Movants, Plaintiff's amended complaint does not meet this burden.

Plaintiff meets the first element by alleging that he is an African-American male. However, his complaint fails with respect to the second element. Duncan proclaims that the defendants engaged in a conspiracy to deprive him of the right to vote because of "his skin color, race and gender." Rec. Doc. 50 at 2. He also claims that the defendants' actions constituted "racial harassment." Rec. Doc. 50 at 2. However, Plaintiff pleads no other facts to support these conclusory allegations. Later, Duncan contradicts his original conclusion by suggesting uncertainty as to the reason for his inability to vote: "Whether denial of plaintiff's right to vote was because of his race, age, skin-color, gender, ethnicity or whatever god-forsaken reason is irrelevant."[5] Rec. Doc. 50 at 10. In fact, it is relevant, and

---

[5] One of Duncan's oppositions also claims that "plaintiff knows only that he was denied the right to vote . . . Voting Commissioner Patricia Hughes-Sims and the other defendant [sic] must provide their reason for denying plaintiff the right to vote," which further demonstrates Plaintiff's failure to properly plead intent to discriminate.

7

Plaintiff's failure to support his conclusory allegations requires dismissal of all claims against the Movants under § 1981.

### 3. 42 U.S.C. §§ 1985-1986

Section 1985 provides a right of action for individuals injured by a conspiracy to interfere with their civil rights. 42 U.S.C. § 1985. "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). This Court previously afforded Plaintiff the opportunity to amend his complaint to plead sufficient facts to support a conspiracy claim. Rec. Doc. 43 Plaintiff filed an amended complaint but the additional allegations do not shed any light on the alleged conspiracy.

The only time Duncan gets close to elucidating his conspiracy claim is in his oppositions where he claims that "Tangipahoa Parish Registrar of Voters John Russell and Tangipahoa Parish Registrar of Voters Office did conspire to participate in meetings and discussions and did participate in meetings and discussions in which voter identification was discussed or should have been discussed." Rec. Docs. 41 at 6, 46-1 at 6. Even in these instances, however, Plaintiff does not allege facts supporting a claim that defendants conspired to violate his civil rights. Instead, he alleges that two of the defendants conspired to hold a meeting at

which they either discussed or should have discussed voter identification policy. Accordingly, Plaintiffs conspiracy claims against all Movants must fail.

Section 1986 provides for third party liability based on knowledge of violations of section 1985. 42 U.S.C. § 1986. As Plaintiff has failed to allege facts to support a claim under § 1985, he has also necessarily failed to allege facts to support a claim under § 1986.

### 4. 42 U.S.C. § 1983

Section 1983 establishes a private right of action for "any party deprived of a constitutional right under color of state law." *Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996). While section 1983 creates a remedy, it does not create any substantive rights. Rather, Plaintiff must demonstrate that (1) a person acting under color of state law (2) deprived him of a right guaranteed by the Constitution or laws of the United States. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50. (1999). Furthermore, Plaintiff must support his claim with "specific facts demonstrating a constitutional deprivation and may not rely on conclusory allegations." *Brown v. Bd. of Trs. Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 596 (S.D. Tex. 2012) (citing *Schuelta v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)). The constitutional deprivation must also result from intentional conduct, not mere

negligence. *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Defendant repeatedly asserts that the Defendants in this matter were acting under color of state law, and it is clear from the face of his complaint that he seeks relief for actions taken by defendants acting in their official capacities rather than as private citizens. *See* Rec. Doc. 50. Thus, the first element is met. With respect to the second element, Plaintiff seemingly relies on violations of the 14th and 15th Amendments as the bases for his § 1983 claim. *See* Rec. Doc. 50 at 1. However, the Court need not reach those claims today because Plaintiff's allegations do not meet the intentional conduct requirement with respect to the Movants. The only intentional conduct by a state actor referenced in the complaint is voting commissioner Patricia Hughes-Sims's allegedly intentional decision to refuse plaintiff's two forms of identification because of his "skin-color and/or gender and race."[6] Rec. Doc. 50 at 9. However, Hughes-Sims has no motion before this Court and has yet to file an answer. Moreover, the factual allegations against the Movants all sound in negligence.[7] *See* Rec.

---

[6] Again, Plaintiff's amended complaint mentions a conspiracy, which qualifies as intentional conduct. Rec. Doc. 50 at 2. However, for the reasons discussed above, that conspiracy claim is not adequately supported by the pleadings. *See supra* section II.b.3.

[7] Duncan implies that the State of Louisiana negligently hired Hughes-Sims. He insinuates that the Secretary of State's Office and Secretary of State Tom Schedler negligently trained others as they were responsible for providing training and training materials. He intimates that Tangipahoa Parish negligently appointed Registrar of Voters John Russel who in turn negligently appointed a member of the Board of Election Supervisors who in turn

Doc. 50 at 9. As such, Plaintiff fails to adequately make out a § 1983 claim against any of the movants.

### 5. 42 U.S.C. § 1988

Section 1988 permits plaintiffs who prevail under §§ 1981, 1983, 1985, or 1986 (among others statutes not cited by Plaintiff) to seek attorney's fees. As discussed above, Plaintiff has not adequately plead any claims under those statutes, meaning he is not entitled to relief under § 1988.

### 6. The Voting Rights Act of 1965

Plaintiff generally invokes the Voting Rights Act ("VRA") of 1965 without specifying an applicable provision. Nonetheless, it appears most likely that Plaintiff aims to rely upon section two of the VRA, which prohibits voting qualifications or prerequisites to voting as well as standards, practices, or procedures that result in a denial or abridgment of the right to vote on account of race or color. 52 U.S.C. § 10301. Here, as best this Court can surmise, Plaintiff alleges that Louisiana Revised Statute § 18:562, which requires certain forms of picture identification or a signed affidavit to vote, resulted in the denial of his right to vote on account of his race. A plaintiff may demonstrate a

---

negligently appointed Hughes-Sims. Finally, he implies that the Clerk of Court's Office negligently trained voting commissioners and that Clerk Julian Dufreche negligently chaired the Board of Election Supervisors that appointed Hughes-Sims. *See* Rec. Doc. 50 at 3-7. While saying that these allegations sound in negligence and thus cannot support a § 1983 claim, this Court is by no means addressing the sufficiency of any negligence claim against any of the defendants.

11

violation of section two of the VRA by proving either a discriminatory purpose or a discriminatory effect. *Thornburg v. Gingles*, 478 U.S. 30, 35 (1986).

As discussed in more detail above, Plaintiff has not adequately alleged any discriminatory intent by Movants. Instead, his claims against them sound in negligence, meaning his only possibility for success here is under a discriminatory effect theory. "The essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Id*. at 47. Here, Duncan does not claim that the questioned law creates unequal opportunities for black or other minority voters.[8] Rather, he claims that he was denied the right to vote on this one occasion, and he believes that it may be a result of his race. A single incident is insufficient to demonstrate the discriminatory effect of a state voting prerequisite. Thus, all claims against Movants brought under the VRA are dismissed with prejudice.

For all of the reasons discussed throughout the proceeding sections, Plaintiff has not stated any federal claims upon which

---

[8] This same pleading deficiency defeats any claim Plaintiff may have under the Civil Rights Act of 1964. Plaintiff also generally invokes that Act. This Court's best guess is that Plaintiff seeks to cite Title I of the Act, which prohibits race, color, or previous conditions from affecting one's right to vote. 52 U.S.C. § 10101. As Plaintiff has not pointed to a pattern or practice of discrimination, no such claim can succeed here. *See U.S. v. Lynd*, 349 F.2d 785, 786 (5th Cir. 1965).

relief can be granted. All he has presented this Court with are conclusory allegations of racial discrimination with no factual foundation. While leave to amend is typically given freely in these situations, *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995), this Court already provided Plaintiff one opportunity to amend his complaint. That resulted in an amended complaint with more inadequate support for the deficient claims. Thus, providing a second opportunity would prove to be a futile endeavor. Accordingly, all of Plaintiff's claims under federal law against the Movants are dismissed with prejudice.

### c. State Law Claims

With all of Plaintiff's federal law claims against the Movants dismissed, that leaves only states law claims over which this Court does not have original jurisdiction. Nevertheless, 28 U.S.C. § 1367(a) provides for supplemental jurisdiction over pendent state law claims that are sufficiently related to claims over which the Court has original jurisdiction. Yet, district courts may use their discretion to decline to exercise supplemental jurisdiction over such claims if, among other reasons, the state law claims substantially predominate over the claims with original jurisdiction or the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c). Here, Plaintiffs remaining claims against Movants consist of state law negligence claims as well as other vague claims regarding the implementation

of Louisiana Revised Statute § 18:562 by state officials. Moreover, the crux of Plaintiff's complaint appears to be the voter identification procedures used generally by the State and those applied to him in this one instance. These claims evidently predominate over any and all federal law claims pending against the two remaining defendants. Accordingly, Plaintiff's state law claims against all Movants, to the extent that there are some remaining, are dismissed without prejudice to bring in state court.[9]

### III. CONCLUSION

In light of the foregoing,

**IT IS ORDERED** that the Parish's motion to dismiss (Rec. Doc. 54) is **GRANTED.**

**IT IS FURTHER ORDERED** that the State Defendants' motion to dismiss under Rule 12(b)(6) (Rec. Doc. 53) is **GRANTED** and their motion to dismiss under Rule 12(b)(1) (Rec. Doc. 52) is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that the Registrar Defendants' motion to dismiss under Rule 12(b)(6) (Rec. Doc. 28) is **GRANTED** and their motion to dismiss under Rule 12(b)(1) (Rec. Doc. 27) is **DISMISSED AS MOOT.**

---

[9] As all claims have been resolved, the Court need not reach the sovereign immunity issue raised by several defendants.

**IT IS FURTHER ORDERED** that the Clerk of Court Defendants' motion (Rec. Doc. 29) is **GRANTED** in part and **DISMISSED AS MOOT** in part. The motion is granted in all parts except for the motion to strike, which is now moot.

New Orleans, Louisiana, this 13th day of April, 2016.

_____
UNITED STATES DISTRICT JUDGE