# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNNY DUNCAN** | **CIVIL ACTION NO. 15-05486-ILRL-SS** |
| **VERSUS** | **SECTION B (1)** |
| **STATE OF LOUISIANA, ET. AL.** | **JUDGE IVAN L.R. LEMELLE** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF THE DEFENDANTS' MOTIONS TO DISMISS FILED PURSUANT TO RULE 12(b)(1) and RULE 12(b)(6)

MAY IT PLEASE THE COURT:

NOW INTO COURT, through undersigned counsel, come the Defendants, the Tangipahoa Parish Board of Election Supervisors and Patricia Hughes, in her capacity as Commissioner for the Tangipahoa Parish Board of Election Supervisors, who respectfully move this Honorable Court to dismiss the Plaintiff's complaints pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) for the reasons explained below.[1]

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff sued numerous Defendants for allegedly denying him the right to vote in a Louisiana primary election held on October 24, 2015.  Rec. Doc. 43.  Among other claims, the Plaintiff alleged a conspiracy.  Plaintiff filed an Amended Complaint in which he added the Tangipahoa Parish Board of Election Supervisors and the Commissioner as additional Defendants.  Rec. Doc. 50 at p. 7.  Plaintiff claimed that an African American female worker rejected his identification card. Rec. Doc. 1, p. 3, no. 1.

As noted by this Court "Plaintiff failed to heed this Court's advice by identifying the factual underpinnings of the vaguely alleged conspiracy to deny him his rights on account of

---

[1] An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

race." Rec. Doc. 67 at p. 3 of 15; See also Rec. Doc. 50.    In his Amended Complaint, Plaintiff lists thirteen federal and state laws and constitutional provisions that he claims provide him a cause of action against the Defendants, and he requests damages in the amount of $1,000,000,000.00.  Plaintiff makes no allegations against Defendant Tangipahoa Parish Board of Election Supervisors other than that Defendant met seven times and voted to select and appoint voting commissioners, including Commissioner Patricia Hughes-Sims.  Doc. 50, ¶ 14. He alleges that Commissioner Patricia Hughes denied him his right to vote; however, he does not plead any facts to determine how he was denied the right to vote, whether the alleged action was intentional, due to negligence or simply because she was following a Louisiana law.  He makes no factual allegations showing how he complied with La. R.S. 18:562.    Plaintiff makes general claims that his right to vote was denied in violation of the Fourteenth Amendment, Fifteenth Amendment, Civil Rights Act (1866), Civil Rights Act (1964), Voting Rights Act (1965) and La. R.S. 18:562.  Doc. 50, ¶ 2.

On April 13, 2016, this Honorable Court issued a ruling, dismissing all of the Defendants that had motions to dismiss pending with the Court.  Rec. Doc. 67.  Plaintiff only recently served the Tangipahoa Parish Board of Election Supervisors and the Commissioner with the amended complaint; therefore, responsive pleadings had not been filed by the underlying Defendants at the time of the Court's order and ruling.

This Honorable Court dismissed all of Plaintiff's federal claims, stating "[f]or all of the reasons discussed throughout the proceeding sections, Plaintiff has not stated any federal claims upon which relief can be granted." Doc. 50 at p. 12-13.  The only allegation that this Honorable Court afforded any weight to was '[t]he only intentional conduct by a state actor referenced in the complaint is voting commissioner Patricia Hughes-Sims's allegedly intentional decision to

refuse plaintiff's two forms of identification because of his "skin-color and/or gender and race." Doc. 67. at p. 10.  The Court also noted that the Plaintiff contradicted his original conclusion by suggesting uncertainty as to reason for his inability to vote.  Rec. Doc. 67 at p. 7 of 15.

## II.    LAW AND ARGUMENT - Rule 12(b)(1)

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1).  "Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-69, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997).  Therefore, sovereign immunity is an issue properly brought in a motion under Fed. R. Civ. P. 12(b)(1).

"The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6)" except that the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in considering its subject matter jurisdiction over the cause(s) in the suit.  *Williams v. Wynne,* 533 F.3d 360, 364-65 n. 2 (5th Cir. 2008)) (*citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (stating that a court may dismiss for lack of subject matter jurisdiction based on either "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.")).

Rule 8 of the Federal Rules of Civil Procedure requires a pleading contain "a short and plain statement" of the Court's jurisdiction and "of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(A)(1), (A)(2).  To satisfy Rule 8, Plaintiff must plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "Factual allegations must be enough to raise a

right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . ." *Id.* at 555 (citing 5C. Wright & Miller, Federal Practice and Procedure, § 1216, pp. 235-236 (3d. ed. 2004). Conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (quoting *Taylor v. Books A Million*, 296 F.3d 376, 378 (5th Cir. 2002).)

> As the Court held in *Twombly,* the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Twombly* 550 U.S. 544, 127 S.Ct. 1955) (additional internal citations omitted).

Similarly, if the Plaintiff conclusorily avers jurisdiction but the pleaded facts show jurisdiction is absent, the case must be dismissed. *Gibbs v. Buck*, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939) and *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir.1990). "A patently insubstantial complaint may be dismissed, for example, for want of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) . . . [F]ederal courts lack power to entertain claims that are so attenuated and unsubstantial as to be absolutely devoid of merit. . . ." *Neitzke v. Williams*, 490 U.S. 319, 327 n. 6, 109 S.Ct. 1827, 1832 n.2, 104 L. Ed. 2d 338 (1989) (internal quotations and citations omitted).

A.    <u>The Eleventh Amendment bars suit against the State of Louisiana</u>

Accepting all well-pleaded factual allegations as true, this Court lacks subject matter jurisdiction to hear and decide Plaintiff's claims because the Tangipahoa Parish Board of Election Supervisors is entitled to sovereign immunity as a political subdivision of the State of

4

Louisiana.  This extends to Commissioner Patricia Hughes as she is an agent of the Tangipahoa Parish Board of Election Supervisors.  Political subdivisions in Louisiana enjoy immunity from federal suit under La. R.S. 13:5106(A).[2]  The Tangipahoa Parish Board of Election Supervisors is a political subdivision of Louisiana as it was created by state statute under La. R.S. 18:423.  Additionally, each parish board of election supervisors consist of one appointment from the governor of Louisiana.  La. R.S. 18:423(C).  This further provides that local parish boards of election supervisors function as an arm of the state.  Furthermore, each parish board of election supervisors elections within each parish. La. R.S. 18:423(B).

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

This language has been interpreted to encompass not only suits brought against a state by citizens of another state, but suits against a state by its own citizens.  *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).  Furthermore, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873 (1985) and *Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S.Ct. 3099, 3104–3105, 87 L.Ed.2d 114 (1985)) (additional citations omitted).

The Eleventh Amendment bars a suit against the State in federal court unless the state has waived its immunity.  *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F. 3d 273 (5th Cir. 2002).  In *Cozzo*, the United States Court of Appeals for the Fifth Circuit

---

[2] This immunity is extended to Patricia Hughes under the definition of "state agency" in La. R.S. 13:5102(A).

recognized that, by statute, Louisiana refused any waiver of its Eleventh Amendment immunity from suits in federal court. *Id.* (citing La. R.S. 13:5106(A)).[3]  Additionally, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power.

### B .  Defendant Has Not Waived Sovereign Immunity

"State sovereign immunity is a fundamental aspect of the sovereignty that the states enjoyed before the ratification of the Constitution and the Eleventh Amendment, and it was preserved intact by the Constitution." *Myers v. State of Texas*, 410 F.3d 236, 240 (5th Cir. 2005 (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)).  The presupposition or concept of state sovereign immunity has two parts:  "first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable the suit of an individual without its consent."  *Id.*  (citing *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 634, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) (quoting *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).  The Defendant urges the Court to note that the Complaint fails to allege any other jurisdictional basis over the Tangipahoa Parish Board of Election Supervisors.   It is well-established law within the United States Court of Appeals for the Fifth Circuit that the State of Louisiana has not waived its immunity from suit in federal court. *See, e.g., Cozzo v. Tangipahoa Parish Council-President Government,* 279 F. 3d at 282; *Patterson v. Stalder,* 2007 WL 2479830 (W.D.La. Aug. 27, 2007)) *(*not reported in F.Supp.2d), citing *Usry v. Louisiana Department of Highways,* 459 F.Supp. 56, 63-64 (E.D.La.1978); *Kiper v. Louisiana State Bd. of Elementary and Secondary Education,* 592 F.Supp. 1343 (M.D.La.), aff'd 778 F.2d 789 (5th Cir.1985).  This lack of waiver

---

[3] In *Griffith v. Louisiana*, 808 F.Supp.2d 926 (E.D. LA 2011), the court recognized that Louisiana has not waived its sovereign immunity for claims arising under 42 U.S.C. § 1983.

naturally extends to the political subdivisions of the State and therefore includes the Tangipahoa Parish Board of Election Supervisors and the Commissioner.

In *Cozzo v. Tangipahoa Parish Council-President Government*, the United States Court of Appeals for the Fifth Circuit noted that by statute, Louisiana has refused any such waiver of its Eleventh Amendment governing immunity regarding suits in federal court. Louisiana Revised Statute 13:5106(a) expressly provides that "no suit against…a political subdivision shall be instituted in any court other than a Louisiana state court."  Because Louisiana has not waived its sovereign immunity, this Court lacks jurisdiction to entertain the Plaintiff's claims and, accordingly, his claims should be dismissed per Fed. R. Civ. P. 12(b)(1).  Although the Complaint fails to allege any other exceptions to Eleventh Amendment immunity, the State will advance these arguments out of an abundance of caution.

### C.  <u>The Ex Parte Young doctrine is not applicable</u>

A very narrow exception to Eleventh Amendment immunity, the *Ex Parte Young* doctrine exists.  This narrow exception does not apply to the Tangipahoa Parish Board of Election Supervisors in this case because the Plaintiff cannot meet the requirements of the exception. In *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)*,* the Supreme Court recognized a narrow exception to the states' sovereign immunity.  A state official in his or her official capacity may be sued for prospective injunctive relief to prevent or cure an ongoing violation of the Constitution or federal law.  This Court correctly acknowledged that Plaintiff has not claimed that the questioned law, La. R.S. 18:562, somehow creates unequal opportunities for black or other minority voters.  Rec. Doc. 67 at p. 12 or 15.  At most, Duncan claims that he was denied the right to vote on one occasion.  He is not requesting prospective relief, and there is no alleged ongoing violation of the Constitution or federal law.

"[W]e held that [i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Virginia Office for Prot. & Advocacy v. Stewart*, -- U.S. --, 131 S.Ct. 1632, 1639, 179 L.Ed.2d 675 (2011) (internal quotations and citations omitted).

Furthermore, a plaintiff can only sue a state official if he has a sufficient connection to enforcement of the challenged act that he could actually implement any court-ordered relief.

> For a duty found in the general laws to constitute a sufficient connection, it must "include[ ] the right *and the power* to enforce the statutes of the state, including, of course, the act in question ..." *Id.* at 161, 28 S.Ct. 441 (emphasis added). Thus, any probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute. *Okpalobi v. Foster*, 244 F.3d 405, 416-17 (5th Cir. 2001) (emphasis in original).

The Court in *Okpalobi* expressly found these general allegations to be insufficient to show the requisite connection.[4]

This Honorable Court lacks jurisdiction over the Tangipahoa Parish Board of Election Supervisors and Commissioner Patricia Hughes, and Defendants should be dismissed from this suit. The *Ex Parte Young* exception is also inapplicable here because there is no specific or general act or law that Plaintiff is challenging.   Plaintiff has not alleged harm that has occurred on an ongoing basis, and he has set forth no facts or arguments explaining why the current prerequisites under La. R.S. 18:562 are insufficient. Therefore, the Motion to Dismiss pursuant to Rule 12(b)(1) should be granted.

---

[4] The Fifth Circuit's analysis in *Okpalobi* was in a plurality opinion.  While it is not binding, the plurality comments are helpful, and are echoed in the case literature.  See *Robicheaux v. Caldwell*, 986 F.Supp.2d 749, 752.

### III.   LAW AND ARGUMENT - Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss for failure of the complaint to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 1949 (2009) (internal quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

Pro se complaints are "construed liberally," *Johnson v. Watkins*, 999 F.2d 99, 100 (5th Cir. 1993), and they are "held to less stringent standards than formal pleadings drafted by lawyers." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Miller v. Stanmore*, 636 F.2d 986, 987 (5th Cir. 1981)).  Nevertheless, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.,* 336 F.3d 375, 379 (5th Cir. 2003).  See also *S. Christian Leadership Conference v. Supreme Court of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001)).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 127 S.Ct. 1955 (2007).

The complaint must contain enough factual material to let the court draw the reasonable inference that the defendant is liable based on the misconduct alleged.

Conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.,* 336 F.3d 375, 379 (5th Cir. 2003).

A.       <u>**Immunity**</u>

The Defendants are entitled to qualified immunity.  Qualified immunity protects individuals performing discretionary duties.  Government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[5]  The protection afforded by qualified immunity is immunity "from suit, not simply immunity from liability".[6] Consequently, the immunity issue must be resolved at the earliest possible stage since it entails an entitlement to immunity from suit and not merely a defense to liability.[7]

Qualified immunity frees officials to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law."[8]  An official is immune if reasonable public officials could differ on the lawfulness of the actions.[9]  Officials are not expected to determine the manner in which the law's gray areas might be clarified or defined.[10]

The bifurcated test for qualified immunity is quite familiar: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the

---

[5] *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).
[6] *Babb*, 33 F.3d at 477.
[7] *See Hunter v. Bryant*, 502 U.S. 524, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

[8] *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).
[9] *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1079 (5th Cir. 1995).
[10] *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 3019-20, 82 L.Ed.2c 139 (1984).

official's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident.[11]

The first step is to determine whether the Plaintiff alleged a "violation of a clearly established constitutional right".[12]   This is a "purely legal question" to be determined by the Court.[13]   The Court uses "currently applicable constitutional standards to make this assessment."[14]   The Plaintiff bears the burden of pleading such a violation of clearly established law.[15]

The second step of the qualified immunity test is better understood as two (2) separate inquiries:  (i) whether the allegedly-violated constitutional rights were clearly established at the time of the incident; and, if so, (ii) whether the Defendants' conduct was objectively unreasonable in the light of clearly established law.[16]   Objective reasonableness is a question of law for the Court.[17]   The conduct's reasonableness must be assessed in light of the law as it existed at the time of the conduct in question.[18]   The law is clearly established if the contours of the right asserted are sufficiently clear that a reasonable official would understand that what he is doing violated that right; that is, if in the light of the pre-existing law, the unlawfulness of the act

---

[11]  *Hare v. City of Corinth, Miss*., 135 F.3d 320, 325 (5th Cir.1998).

[12]  *Hare*, 135 F.3d at 325-26.

[13]  *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

[14]  *Hare*, 135 F.3d at 326.

[15]   *See Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir.1994).

[16]  *Hare*, 135 F.3d at 326.

[17]  *Hare*, 135 F.3d at 328.

[18]  *Harper*, 21 F.3d at 601; *see also Ganther v. Ingle*, 75 F.3d 207, 210-11 (5th Cir.1996).

is apparent.[19]  The Court must determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate his or her actions would violate that right.[20]

 While it is not necessary that the very action in question has previously been held unlawful, the facts of the previous case need to be materially similar in order for the defendant to be denied qualified immunity.[21]  For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the official did violated federal law in the circumstances.[22]

 In order to impose personal liability on a Defendant under 42 U.S.C. § 1983, the Plaintiff must establish the Defendant's actions somehow caused the deprivation of the Plaintiff's constitutional rights.[23]  Only the direct acts or omissions of governmental officials will give rise to individually liability under 42 U.S.C. § 1983.[24]  Supervisors and/or employers cannot be held liable under 42 U.S.C. § 1983 for a subordinate's and/or an employee's actions on any theory of vicarious liability.[25]  Thus, vicarious liability and *respondeat superior* have no application in a

---

[19] *Texas Faculty Association v. University of Texas at Dallas*, 946 F.2d 379, 389-90 (5th Cir.1991), citing *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 (1987).

[20] *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 (1987); *Davis v. Scherer*, 104 S.Ct. at 3019-20.

[21] *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir.1997).

[22] *Sorenson v. Ferrie*, 134 F.3d 325, 330 (5th Cir.1998), citing Pierce, 117 F.3d at 882 (5th Cir.1997).

[23] *See generally Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir.1999).

[24] *See Coleman v. Houston Independent School District*, 113 F.3d 528, 534 (5th Cir.1997).

[25] *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2036-38, 56 L.Ed.2d 611 (1978); *Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir.1999); *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984) (*en banc*).

42 U.S.C. § 1983 case.[26]   And once a Defendant raises the defense of qualified immunity, the "heightened pleading" requirement enumerated in the _Schultea_ decision "requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury."[27] Here, Plaintiff can neither show a violation of a clearly established right nor that the Defendant's conduct was objectively unreasonable under the circumstances.   Therefore, qualified immunity is applicable.

Defendants likewise assert their entitlement to discretionary immunity under La. R. S. 9:2798.1, which provides:

> A.  As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
>
> B.  Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

Thus, the statute provides immunity for both individuals and agencies, in contrast to qualified immunity, which is only afforded to individuals.  Immunity from suit was upheld on the part of the State agency and its agents pursuant to this provision, in _Lewis v. 38th Judicial District Court_.[28] The Louisiana Supreme Court discussed this provision in _Phyllisa Jackson et al. v. State, through Dept. of Corrections, et al._[29]  As pointed out by the Court in its discussion, this provision of the law does the same thing for state government agencies and officials as does the

---

[26]  _See Alton_, 168 F.3d 196 at 200; _Monel_, 98 S.Ct. at 2036-38.
[27]  _Reyes v. Sazan_, 168 F.3d 158, 161 (5th Cir.1999), referring to _Schultea v. Woods_, 47 F.3d 1427 (5th Cir.1995) (_en banc_).

[28] _Id. at 349_.
[29] 785 So. 2d 803 (La. 5/15/01).

Federal Tort Claims Act (FTCA) for the federal government agencies and federal officials.  The two-step analysis employed to examine immunity under this statute and the FTCA are precisely the same:  (1) whether a statute, regulation, or policy specifically proscribes a course of action; and (2) whether the challenged action is grounded in political, economic or social policy.

Our state's highest court addressed this provision in *Gregor v. Argenot Great Central Insurance Company*.[30] While rejecting the analysis of some of its own earlier cases in a manner not relevant to this discussion, the Court added the observation that the Louisiana statute "does not make a distinction between *operational acts* and *ministerial or policymaking acts*." The obvious conclusion is that discretionary immunity may be extended under this statute to acts of officials that are operational as well as ministerial or policymaking.

In the instant case, the action of the Commissioner was operational, as well as discretionary. Therefore, these actions are within the scope of protection offered. As a result, the Defendants should be entitled to discretionary immunity under La. R.S. 9: 2798.1.

**B.**   **42 U.S.C. § 1915**

Section 1915 is no longer part of the United States Code.  Even if the Defendants were to infer that the Plaintiff meant to cite to 28 U.S.C. § 1915, which addresses litigants proceeding in forma pauperis, the statute does not provide Plaintiff a right of action.  Any claims under these statutes should be dismissed.  See Rec. Doc. 67 at p. 6 of 15.

**C.**   **42 U.S.C. § 1981**

To establish a claim under §1981, a plaintiff must allege facts in support of the following:

1.   The plaintiff  is a member of a racial minority;

2.   An intent to discriminate on the basis of race of the defendant;

3.   The discrimination concerns one or more of the activities enumerated in the statute.

---

[30] 851 So.2d 959 (La. 5/20/03).

*Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994).

This Court correctly concluded that the Plaintiff only met the first element by alleging

that he is an African-American male.  See Rec. Doc. 67 at p. 7 of 15.

> Duncan proclaims that the defendants engaged in a conspiracy to deprive him of
> the right to vote because of "his skin color, race and gender." …He also claims
> that the defendants' actions constituted "racial discrimination". . . However,
> Plaintiff pleads no other facts to support these conclusory allegations.  Later,
> Duncan contradicts his original conclusion by suggesting uncertainty as to reason
> for his inability to vote:  "Whether denial of plaintiff's right to vote was because
> of his race, age, skin-color, gender, ethnicity or whatever god-forsaken reason is
> irrelevant."

Rec. Doc. 67 at p. 7 of 15.

On the face of the Plaintiffs' Complaint, he admits that he does not know why he was denied the

right to vote…age, skin-color, gender, ethnicity or whatever god-forsaken reason. *Id*.  It is

relevant and necessary for the Plaintiff to allege the grounds for why he was denied the right to

vote. Plaintiff's failure to support his conclusory allegations requires dismissal of the claims that

were brought under § 1981 against the Defendants.

**D.**     **42 U.S.C. §§ 1985-1986**

Section 1985 provides a right of action for individuals injured by a conspiracy to interfere

with their civil rights.  42 U.S.C. § 1985.  This Court afforded Plaintiff the opportunity to amend

his complaint to plead sufficient facts to support a conspiracy claim.  Rec. Doc. 43.  Plaintiff

filed an Amended Complaint; however, the additional allegations are insufficient to sustain the

claim of an alleged conspiracy.

"Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative

facts upon which their claim is based.  Bald allegations that a conspiracy existed are

insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987).

Likewise, the Plaintiff failed to allege facts to support a claim under § 1986, which provides for third party liability based on knowledge of violations of Section 1985.

**E.** **42 U.S.C. § 1983**

The Court noted that in order to successfully bring a claim under 42 U.S.C. § 1983, "[t]he constitutional deprivation must also result from intentional conduct, not mere negligence." Doc. 67 at p. 9.  This is consistent with *Brown v. Bd. of Trs. Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 596 (S.D. Tex. 2012), holding that for a plaintiff to recover, "she must show that Defendants deprived her of a right guaranteed by the Constitution or the laws of the United States.  She must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence."

Plaintiff failed to state a claim for conspiracy.  A Plaintiff who asserts conspiracy claims under civil rights statutes must plead operative facts upon which their claim is based in order to prevail on a § 1983 claim.  Here, Plaintiff failed to particularize the conspiracy claim.  *See Lynch, et al. v. Cannatella, Jr., et al.*, 810 F.2d 1363 (5th Cir. 1987).

Plaintiff failed to state a claim under the Fourteenth Amendment.  Plaintiff does not expressly state how any of the Defendants' actions resulted in a violation of his rights under any of the clauses of the Fourteenth Amendment, including the Equal Protection Clause, and the Privileges and Immunities Clauses.

In considering the Equal Protection Clause, Plaintiff does not allege that he received treatment different from that received by a similarly situated individual and that the unequal treatment stemmed from a discriminatory intent.  *See McFaul v. Valenzuela*, 684 F.3d 564, 577 (5th Cir. 2012) (citing for standard for Fourteenth Amendment Equal Protection Clause) Moreover, the Fifth Circuit noted that a Plaintiff's conclusory allegations that other similary

situated have been treated differently, without any specific factual support for his assertions is insufficient to support his claims. *Kyles v. Garrett*, 222 F.App.'x 427, 429 (5th Cir. 2007). Plaintiff failed to allege any facts or indicate that different treatment had no rational basis or was motivated by any ill will or illegitimate animus. *Kyles*, 222 F.App.x at 429.  Plaintiff makes no reference at all to other similarly situated voters.  Plaintiff cannot show that a non-black voter presented the same type of identification and was allowed to vote.  Plaintiff cannot show that he received treatment different from the treatment received by similarly situated individuals, and thus he cannot show that the unequal treatment stemmed from a discriminatory intent. Therefore, Plaintiff failed to allege a violation of his constitutional right to equal protection.

In considering the Due Process Clause of the Fourteenth Amendment, the Plaintiff failed to allege that he met the requirements of La. R.S. 18:562.  Plaintiff alleged that he presented a U.S. Government issued picture identification and then presented a second ID in the form of a Veterans Department identification card.  However, Plaintiff fails to allege whether these cards constitute a "generally recognized picture identification card" as required by La. R.S. 18:562. Any allegation by Plaintiff that the Commissioner failed to use his voter registration card is without merit, as the Commissioner was not requited to do so pursuant to La. R.S. 18:562.  The Plaintiff's conclusory statement that the Commissioner did not follow alternate voting procedure is not sufficient to state a claim upon which relief can be granted.  Plaintiff does not allege any facts about what was done/or how what was done failed to comply with La. R.S. 18:562.

The Privileges and Immunities Clause of the Fourteenth Amendment is not applicable to a situation in which a citizen is challenging the actions of their own state. *Virginia v. Friedman*, 487 U.S. 59, 65 (1988).  Plaintiff alleges that he is a citizen of the State of Louisiana.  Given that

17

the Plaintiff has failed to allege a cause of action against a state of which he is not a resident, Plaintiff has no cause of action under the Privileges and Immunities Clause.

Likewise, Plaintiff failed to state a cause of action that would satisfy a claim under the Fifteenth Amendment of the Constitution.  The Fifteenth Amendment provides that "the right of the citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."  U.S. Const. amend. XV, § 1.

Here, Plaintiff acknowledges that he has been voting at Amite City Hall without incident for twenty years.  Rec. Doc. 50, 16.  If this Court were to rule that the Defendants violated the Plaintiff's Fifteenth Amendment rights such a ruling would not achieve the Fifteenth Amendment's intended purpose of ensuring a better future rathn than inflicting punishment for a past action.  *Shelby Cnty., Ala. v. Holder*, 133 S.Ct. 2612, 2629 (2013) (citing *Rice v. Cayetano*, 528 U.S. 495, 512 (2000) for position that Fifteenth Amendment is not designed to punish for the past; its purpose is to ensure a better future.)

Plaintiff complains of a Commissioner following a law that was enacted by the Louisiana Legislature. Plaintiff has not stated a sufficient claim that his right to vote was denied or abridged.  If Plaintiff did not vote on October 24, 2015, it was a result of his own failure to comply with Louisiana election laws.  Plaintiff has not contested the constitutionality of these Louisiana election laws.  As a result, Plaintiff has failed to state a cause of action under the Fifteenth Amendment.

Plaintiff has not alleged that Patricia Hughes had any intentional or deliberate indifference in denying Plaintiff the right to vote. Plaintiff makes no allegations that the

Commissioner failed to follow the procedure outlined by La. R.S. 18:562.   Without any intentional conduct, Plaintiff's claim will be unsuccessful and is without merit.

      **F.**       **42 U.S.C. § 1988**

Plaintiff failed to plead any claims that would entitle him to relief under § 1988**.**

      **G.**       **The Voting Rights Act of 1965**

Plaintiff failed to specify what provision of the Voting Rights Act ("VRA") he claims has been violated.   The Court, in its previously issued ruling, inferred that Plaintiff was relying on Section 2 of the Voting Rights Act.   The Court went on to infer that "this Court can surmise, Plaintiff alleges that Louisiana Revised Statute 18:562, which requires forms of picture identification or a signed affidavit to vote, resulted in the denial of his right to vote on account of his race."  Rec. Doc. 67 at p. 11 of 15.

Neither of the Defendants is responsible for enacting La. R.S. 18:562.   Here, Duncan does not claim that the questioned law creates unequal opportunities for black or minority voters. He claims he was denied the right to vote on one occasion, and he contradicts himself by claiming that he is not sure if it was due to age, race, skin-color, gender or ethnicity.   A single incident is insufficient to demonstrate the discriminatory effect of a state voting prerequisite. Therefore, the Plaintiffs claims against the Defendants under the VRA should be dismissed with Prejudice.

      **H.**       **State Law Claims**

Plaintiff failed to invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367(c) (3).  In the event that the Court decides to retain jurisdiction over Plaintiff's state law claims, the Defendants maintain that the Plaintiff has failed to state a cause of action upon which relief may be granted.

IV.   **CONCLUSION**

Plaintiff does not so much as state a cause of action against the Defendants.  While he alleges that the Defendant Tangipahoa Parish Board of Election Supervisors met to appoint the voting commissioner, he does not say how that action harmed him.  Nor does he claim that act was illegal or violated the law in any way.  Indeed, Defendant complied with Louisiana state law by selecting a voting commissioner.  The parish board of election supervisors is required to meet and select voting commissioners under La. R.S. 18:433.   Furthermore, the selection of commissioners is completely at random.   Names are randomly chosen from a list in an established procedure as further defined in La. R.S. 18:433(B).

With regard to Defendant Commissioner Patricia Hughes, Plaintiff simply states that she denied him the right to vote because of his skin-color and/or gender and race. Doc. 50, ¶ 21. However, he goes on to contradict himself any claims that he does not know why he was not allowed to vote.  He does not allege any facts to show that he followed any type of process at the polls, appealed this decision at the polls, sought a supervisor, or requested any alternative to allow him to vote.  He also does not state whether Defendant offered him an alternative way to prove his identity, which is allowed in Louisiana law.[31]

Plaintiff has failed to say how this action has injured him.  Furthermore, Plaintiff has failed to state how Defendant has violated any law or how Defendant has injured him.  Instead, Plaintiff makes broad general claims that his right to vote was denied.  In no way does Plaintiff's Amended Complaint state a cause of action against Defendants.

---

[31] La. R.S. 18:562 provides: "[i]f the applicant does not have a Louisiana driver's license, a Louisiana special identification card, or other generally recognized picture identification card that contains the name and signature of the applicant, the applicant shall complete and sign an affidavit, which is supplied by the secretary of state, to that effect before the commissioners, which affidavit shall include the applicant's date of birth and mother's maiden name."  If the individual is a registered voter, they shall be allowed to vote pursuant to La. R.S. 18:562(D).

**WHEREFORE,** the Defendants pray that the motion to dismiss be GRANTED, and they be awarded all other relief which they are entitled.

RESPECTFULLY SUBMITTED,

**JEFF LANDRY**
ATTORNEY GENERAL

/s/ Angelique Duhon Freel
Angelique Duhon Freel (La. Bar Roll No. 28561)
Assistant Attorney General
Louisiana Department of Justice
Civil Division
P. O. BOX 94005
Baton Rouge, Louisiana 70804-9005
Telephone:  (225) 326-6040
Facsimile:   (225) 326-6099
Email: freela@ag.state.la.us

**Counsel for the Defendants, Tangipahoa Parish Board of Election Supervisors and Patricia Hughes, in her capacity as Commissioner for the Tangipahoa Parish Board of Election Supervisors**

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 2nd day of May 2016, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system which gives notice of filing to all counsel of record. I further certify that any non CM/ECF participant will be provided notice by first class United States Mail, properly addressed and postage prepaid.

Johnny Duncan
P.O. Box 723
Amite, LA 70422

Johnny Duncan
309 South Third St.
Amite, LA 70422

/s/ Angelique Duhon Freel
Angelique Duhon Freel